ORAL ARGUMENT NOT YET SCHEDULED

No. 14-7067

# United States Court of Appeals for the D.C. Circuit

————————

COUNCIL OF THE DISTRICT OF COLUMBIA,

*Plaintiff-Appellant*,

v.

VINCENT C. GRAY, in his official capacity as Mayor of the District of Columbia, and JEFFREY S. DEWITT, in his official capacity as Chief Financial Officer for the District of Columbia,

*Defendants-Appellees*.

————————

## STATUTORY ADDENDUM TO
## BRIEF FOR PLAINTIFF-APPELLANT
## COUNCIL OF THE DISTRICT OF COLUMBIA

————————

On Appeal from the U.S. District Court for the District of Columbia, No. 14-cv-655
(Emmet G. Sullivan, District Judge)

————————

Karen L. Dunn
Alexander I. Platt
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
(202) 237-2727

Brian D. Netter
Breanne A. Gilpatrick
Matthew A. Waring[*]
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000

[*]Admitted only in Virginia

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

## TAB 1—U.S. Code

28 U.S.C. § 1331 ................................................................SA1

28 U.S.C. § 1366 ................................................................SA2

28 U.S.C. § 1441 ................................................................SA3

31 U.S.C. § 1341 ................................................................SA5

## TAB 2—Home Rule Act of 1973

Home Rule Act of 1973,
    Pub. L. No. 93-198, 87 Stat. 774 ................................SA6

## TAB 3—Relevant Amendments to Home Rule Act

Initiative, Referendum, and Recall Charter Amendments Act of 1977,
    D.C. Law 2-46, 24 D.C. Reg. 199 ............................... SA69

Continuing Appropriations Act, 1985, Pub. L. No. 98-473,
    98 Stat. 1974 (1984) ................................................ SA77

Local Budget Autonomy Act of 2012,
    D.C. Law 19-321, 60 D.C. Reg. 1724 ................................. SA78

USCA Case #14-7067    Document #1500321    Filed: 07/01/2014    Page 3 of 83

Changes were made in arrangement and phraseology.

## AMENDMENTS

1980—Pub. L. 96–486 struck out "; amount in controversy; costs" in section catchline, struck out minimum amount in controversy requirement of $10,000 for original jurisdiction in federal question cases which necessitated striking the exception to such required minimum amount that authorized original jurisdiction in actions brought against the United States, any agency thereof, or any officer or employee thereof in an official capacity, struck out provision authorizing the district court except where express provision therefore was made in a federal statute to deny costs to a plaintiff and in fact impose such costs upon such plaintiff where plaintiff was adjudged to be entitled to recover less than the required amount in controversy, computed without regard to set-off or counterclaim and exclusive of interests and costs, and struck out existing subsection designations.

1976—Subsec. (a). Pub. L. 94–574 struck out $10,000 jurisdictional amount where action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

1958—Pub. L. 85–554 included costs in section catchline, designated existing provisions as subsec. (a), substituted "$10,000" for "$3,000", and added subsec. (b).

### EFFECTIVE DATE OF 1980 AMENDMENT; APPLICABILITY

Pub. L. 96–486, §4, Dec. 1, 1980, 94 Stat. 2370, provided: "This Act [amending this section and section 2072 of Title 15, Commerce and Trade, and enacting provisions set out as a note under section 1 of this title] shall apply to any civil action pending on the date of enactment of this Act [Dec. 1, 1980]."

### EFFECTIVE DATE OF 1958 AMENDMENT

Pub. L. 85–554, §3, July 25, 1958, 72 Stat. 415, provided that: "This Act [amending this section and sections 1332 and 1345 of this title] shall apply only in the case of actions commenced after the date of the enactment of this Act [July 25, 1958]."

## §1331. Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

(June 25, 1948, ch. 646, 62 Stat. 930; Pub. L. 85–554, §1, July 25, 1958, 72 Stat. 415; Pub. L. 94–574, §2, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 96–486, §2(a), Dec. 1, 1980, 94 Stat. 2369.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §41(1) (Mar. 3, 1911, ch. 231, §24, par. 1, 36 Stat. 1091; May 14, 1934, ch. 283, §1, 48 Stat. 775; Aug. 21, 1937, ch. 726, §1, 50 Stat. 738; Apr. 20, 1940, ch. 117, 54 Stat. 143).

Jurisdiction of federal questions arising under other sections of this chapter is not dependent upon the amount in controversy. (See annotations under former section 41 of title 28, U.S.C.A., and 35 C.J.S., p. 833 et seq., §§30–43. See, also, reviser's note under section 1332 of this title.)

Words "wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs," were added to conform to rulings of the Supreme Court. See construction of provision relating to jurisdictional amount requirement in cases involving a Federal question in *United States v. Sayward*, 16 S.Ct. 371, 160 U.S. 493, 40 L.Ed. 508; *Fishback v. Western Union Tel. Co.*, 16 S.Ct. 506, 161 U.S. 96, 40 L.Ed. 630; and *Halt v. Indiana Manufacturing Co.*, 1900, 20 S.Ct. 272, 176 U.S. 68, 44 L.Ed. 374.

Words "all civil actions" were substituted for "all suits of a civil nature, at common law or in equity" to conform with Rule 2 of the Federal Rules of Civil Procedure.

Words "or treaties" were substituted for "or treaties made, or which shall be made under their authority," for purposes of brevity.

The remaining provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1332, 1341, 1342, 1345, 1354, and 1359 of this title.

### § 1366. Construction of references to laws of the United States or Acts of Congress

For the purposes of this chapter, references to laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia.

(Added Pub. L. 91–358, title I, § 172(c)(1), July 29, 1970, 84 Stat. 590, § 1363; renumbered § 1364, Pub. L. 95–572, § 6(b)(1), Nov. 2, 1978, 92 Stat. 2456; renumbered § 1366, Pub. L. 99–336, § 6(a)(1)(C), June 19, 1986, 100 Stat. 639.)

§ 1441. Removal of civil actions

(a) GENERALLY.—Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) REMOVAL BASED ON DIVERSITY OF CITIZENSHIP.—(1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.

(2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) JOINDER OF FEDERAL LAW CLAIMS AND STATE LAW CLAIMS.—(1) If a civil action includes—

(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

(d) ACTIONS AGAINST FOREIGN STATES.—Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

(e) MULTIPARTY, MULTIFORUM JURISDICTION.—(1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if—

(A) the action could have been brought in a United States district court under section 1369 of this title; or

(B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title, except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1369 in a United States district court that arises from the same accident as the action in State court, or at a later time with leave of the district court.

(2) Whenever an action is removed under this subsection and the district court to which it is removed or transferred under section 1407(j) has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it had been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

(3) Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand the removed action for the determination of damages. An appeal with respect to the liability determination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination shall not be subject to further review by appeal or otherwise.

(4) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

(5) An action removed under this subsection shall be deemed to be an action under section 1369 and an action in which jurisdiction is based on section 1369 of this title for purposes of this section and sections 1407, 1697, and 1785 of this title.

(6) Nothing in this subsection shall restrict the authority of the district court to transfer or dismiss an action on the ground of inconvenient forum.

(f) DERIVATIVE REMOVAL JURISDICTION.—The court to which a civil action is removed under this section is not precluded from hearing and

determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

(June 25, 1948, ch. 646, 62 Stat. 937; Pub. L. 94–583, §6, Oct. 21, 1976, 90 Stat. 2898; Pub. L. 99–336, §3(a), June 19, 1986, 100 Stat. 637; Pub. L. 100–702, title X, §1016(a), Nov. 19, 1988, 102 Stat. 4669; Pub. L. 101–650, title III, §312, Dec. 1, 1990, 104 Stat. 5114; Pub. L. 102–198, §4, Dec. 9, 1991, 105 Stat. 1623; Pub. L. 107–273, div. C, title I, §11020(b)(3), Nov. 2, 2002, 116 Stat. 1827; Pub. L. 112–63, title I, §103(a), Dec. 7, 2011, 125 Stat. 759.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§71, 114 (Mar. 3, 1911, ch. 231, §§28, 53, 36 Stat. 1094, 1101; Jan. 20, 1914, ch. 11, 38 Stat. 278; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54).

Section consolidates removal provisions of sections 71 and 114 of title 28, U.S.C., 1940 ed., and is intended to resolve ambiguities and conflicts of decisions.

Phrases such as "in suits of a civil nature, at law or in equity," the words "case," "cause," "suit," and the like have been omitted and the words "civil action" substituted in harmony with Rules 2 and 81(c) of the Federal Rules of Civil Procedure.

Ambiguous phrases such as "the District Court of the United States for the proper district" have been clarified by the substitution of the phrase "the district and division embracing the place where such action is being." (See *General Investment Co.* v. *Lake Shore & M.S. Ry. Co.*, 1922, 43 S.Ct. 107, 112, 260 U.S. 261, 67 L.Ed. 244 and cases cited therein.)

All the provisions with reference to removal of controversies between citizens of different States because of inability, from prejudice or local influence, to obtain justice, have been discarded. These provisions, born of the bitter sectional feelings engendered by the Civil War and the Reconstruction period, have no place in the jurisprudence of a nation since united by three wars against foreign powers. Indeed, the practice of removal for prejudice or local influence has not been employed much in recent years.

Subsection (c) has been substituted for the provision in section 71 of title 28, U.S.C., 1940 ed., "and when in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States."

This quoted language has occasioned much confusion. The courts have attempted to distinguish between separate and separable controversies, a distinction which is sound in theory but illusory in substance. (See 41 Harv. L. Rev. 1048; 35 Ill. L. Rev. 576.)

Subsection (c) permits the removal of a separate cause of action but not of a separable controversy unless it constitutes a separate and independent claim or cause of action within the original jurisdiction of United States District Courts. In this respect it will somewhat decrease the volume of Federal litigation.

Rules 18, 20, and 23 of the Federal Rules of Civil Procedure permit the most liberal joinder of parties, claims, and remedies in civil actions. Therefore there will be no procedural difficulty occasioned by the removal of the entire action. Conversely, if the court so desires, it may remand to the State court all nonremovable matters.

The provisions of section 71 of title 28, U.S.C., 1940 ed., with respect to removal of actions under the Federal Employer's Liability Act (U.S.C., 1940 ed., title 45, Railroads, §§51–60) and actions against a carrier for loss, damage, or delay to shipments under section 20 of title 49, U.S.C., 1940 ed., Transportation, are incorporated in section 1445 of this title.

### AMENDMENTS

2011—Pub. L. 112–63, §103(a)(1), substituted "Removal of civil actions" for "Actions removable generally" in section catchline.

Subsec. (a). Pub. L. 112–63, §103(a)(2), inserted heading and in text struck out at end "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

Subsec. (b). Pub. L. 112–63, §103(a)(3), amended subsec. (b) generally. Prior to amendment, text read as follows: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Subsec. (c). Pub. L. 112–63, §103(a)(4), amended subsec. (c) generally. Prior to amendment, text read as follows: "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

Subsec. (d). Pub. L. 112–63, §103(a)(5), inserted heading.

Subsec. (e). Pub. L. 112–63, §103(a)(6), inserted heading.

Subsec. (f). Pub. L. 112–63, §103(a)(7), inserted heading.

2002—Subsecs. (e), (f). Pub. L. 107–273 added subsec. (e), redesignated former subsec. (e) as (f), and substituted "The court to which a civil action is removed under this section" for "The court to which such civil action is removed."

1991—Subsec. (c). Pub. L. 102–198 struck out comma after "title" and substituted "may" for "may may" before "remand".

1990—Subsec. (c). Pub. L. 101–650 substituted "within the jurisdiction conferred by section 1331 of this title'' for ", which would be removable if sued upon alone" and "may remand all matters in which State law predominates" for "remand all matters not otherwise within its original jurisdiction."

1988—Subsec. (a). Pub. L. 100–702 inserted at end "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

1986—Subsec. (e). Pub. L. 99–336 added subsec. (e).

1976—Subsec. (d). Pub. L. 94–583 added subsec. (d).

### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–63 effective upon the expiration of the 30-day period beginning on Dec. 7, 2011, and applicable to any action or prosecution commenced on or after such effective date, with provisions for treatment of cases removed to Federal court, see section 105 of Pub. L. 112–63, set out as a note under section 1332 of this title.

### EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by Pub. L. 107–273 applicable to a civil action if the accident giving rise to the cause of action occurred on or after the 90th day after Nov. 2, 2002, see section 11020(c) of Pub. L. 107–273, set out as an Effective Date note under section 1369 of this title.

### EFFECTIVE DATE OF 1986 AMENDMENT

Pub. L. 99–336, §3(b), June 19, 1986, 100 Stat. 637, provided that: "The amendment made by this section [amending this section] shall apply with respect to claims in civil actions commenced in State courts on or after the date of the enactment of this section [June 19, 1986]."

### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by Pub. L. 94–583 effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as an Effective Date note under section 1602 of this title.

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 1341(a) ..... | 31:665(a), (d)(2)(last sentence related to spending and obligations). | R.S. §3679(a), (d)(2)(last sentence related to spending and obligations); Mar. 3, 1905, ch. 1484, §4(1st par.), 33 Stat. 1257; Feb. 27, 1906, ch. 510, §3, 34 Stat. 48; restated Sept. 6, 1950, ch. 896, §1211, 64 Stat. 765. |
| 1341(b) ..... | 31:669(words after semicolon). | Aug. 23, 1912, ch. 350, §6(words after semicolon), 37 Stat. 414. |

In subsection (b), the words "another amount available for obligation" are substituted for "any other fund" for consistency in the revised title.

REFERENCES IN TEXT

Section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985, referred to in subsec. (a)(1)(C), (D), is classified to section 902 of Title 2, The Congress.

AMENDMENTS

1990—Subsec. (a)(1)(C), (D). Pub. L. 101–508 added subpars. (C) and (D).

## § 1341. Limitations on expending and obligating amounts

(a)(1) An officer or employee of the United States Government or of the District of Columbia government may not—

(A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation;

(B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law;

(C) make or authorize an expenditure or obligation of funds required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985; or

(D) involve either government in a contract or obligation for the payment of money required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985.

(2) This subsection does not apply to a corporation getting amounts to make loans (except paid in capital amounts) without legal liability of the United States Government.

(b) An article to be used by an executive department in the District of Columbia that could be bought out of an appropriation made to a regular contingent fund of the department may not be bought out of another amount available for obligation.

(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 923; Pub. L. 101–508, title XIII, §13213(a), Nov. 5, 1990, 104 Stat. 1388–621.)

Public Law 93-198

AN ACT

December 24, 1973
[S. 1435]

To reorganize the governmental structure of the District of Columbia, to provide a charter for local government in the District of Columbia subject to acceptance by a majority of the registered qualified electors in the District of Columbia, to delegate certain legislative powers to the local government, to implement certain recommendations of the Commission on the Organization of the Government of the District of Columbia, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

District of
Columbia Self-
Government and
Governmental Re-
organization Act.

# TABLE OF CONTENTS

## TITLE I—SHORT TITLE, PURPOSES, AND DEFINITIONS

Sec. 101. Short title.
Sec. 102. Statement of purposes.
Sec. 103. Definitions.

## TITLE II—GOVERNMENTAL REORGANIZATION

Sec. 201. Redevelopment Land Agency.
Sec. 202. National Capital Housing Authority.
Sec. 203. National Capital Planning Commission and municipal planning.
Sec. 204. District of Columbia Manpower Administration.

## TITLE III—DISTRICT CHARTER PREAMBLE, LEGISLATIVE POWER, AND CHARTER AMENDING PROCEDURE

Sec. 301. District Charter preamble.
Sec. 302. Legislative power.
Sec. 303. Charter amending procedure.

## TITLE IV—THE DISTRICT CHARTER

### PART A—THE COUNCIL

#### Subpart 1—Creation of the Council

Sec. 401. Creation and membership.
Sec. 402. Qualifications for holding office.
Sec. 403. Compensation.
Sec. 404. Powers of the Council.

#### Subpart 2—Organization and Procedure of the Council

Sec. 411. The Chairman.
Sec. 412. Acts, resolutions, and requirements for quorum.
Sec. 413. Investigations by the Council.

### PART B—THE MAYOR

Sec. 421. Election, qualifications, vacancy and compensation.
Sec. 422. Powers and duties.
Sec. 423. Municipal planning.

### PART C—THE JUDICIARY

Sec. 431. Judicial powers.
Sec. 432. Removal, suspension, and involuntary retirement.
Sec. 433. Nomination and appointment of judges.
Sec. 434. District of Columbia Judicial Nomination Commission.

TABLE OF CONTENTS— Continued

Part D—District Budget and Financial Management

Subpart 1—Budget and Financial Management

Sec. 441. Fiscal year.
Sec. 442. Submission of annual budget.
Sec. 443. Multiyear plan.
Sec. 444. Multiyear capital improvements plan.
Sec. 445. District of Columbia courts' budget.
Sec. 446. Enactment of appropriations by Congress.
Sec. 447. Consistency of budget, accounting, and personnel systems.
Sec. 448. Financial duties of the Mayor.
Sec. 449. Accounting supervision and control.
Sec. 450. General and special funds.
Sec. 451. Contracts extending beyond one year.
Sec. 452. Annual budget for the Board of Education.

Subpart 2—Audit

Sec. 455. District of Columbia Auditor.

Part E—Borrowing

Subpart 1—Borrowing

Sec. 461. District's authority to issue and redeem general obligation bonds for capital projects.
Sec. 462. Contents of borrowing legislation.
Sec. 463. Publication of borrowing legislation.
Sec. 464. Short period of limitation.
Sec. 465. Acts for issuance of general obligation bonds.
Sec. 466. Public sale.

Subpart 2—Short-Term Borrowing

Sec. 471. Borrowing to meet appropriations.
Sec. 472. Borrowing in anticipation of revenues.
Sec. 473. Notes redeemable prior to maturity.
Sec. 474. Sales of notes.

Subpart 3—Payments of Bonds and Notes

Sec. 481. Special tax.

Subpart 4—Tax Exemption; Legal Investment; Water Pollution; Reservoirs; Metro Contributions; and Revenue Bonds

Sec. 485. Tax exemption.
Sec. 486. Legal investment.
Sec. 487. Water pollution.
Sec. 488. Cost of reservoirs on Potomac River.
Sec. 489. District's contributions to the Washington Metropolitan Area Transit Authority.
Sec. 490. Revenue bonds and other obligations.

Part F—Independent Agencies

Sec. 491. Board of Elections.
Sec. 492. Zoning Commission.
Sec. 493. Public Service Commission.
Sec. 494. Armory Board.
Sec. 495. Board of Education.

TITLE V—FEDERAL PAYMENT

Sec. 501. Duties of the Mayor, Council, and Federal Office of Management and Budget.
Sec. 502. Authorization of appropriations.

TITLE VI—RESERVATION OF CONGRESSIONAL AUTHORITY

Sec. 601. Retention of constitutional authority.
Sec. 602. Limitations on the Council.
Sec. 603. Budget process; limitations on borrowing and spending.
Sec. 604. Congressional action on certain District matters.

## TABLE OF CONTENTS—Continued

TITLE VII—REFERENDUM; SUCCESSION IN GOVERNMENT; TEMPORARY PROVISIONS; MISCELLANEOUS; AMENDMENTS TO DISTRICT OF COLUMBIA ELECTION ACT; RULES OF CONSTRUCTION; AND EFFECTIVE DATES

PART A—CHARTER REFERENDUM

Sec. 701. Referendum.
Sec. 702. Board of Elections authority.
Sec. 703. Referendum ballot and notice of voting.
Sec. 704. Acceptance or nonacceptance of Charter.

PART B—SUCCESSION IN GOVERNMENT

Sec. 711. Abolishment of existing government and transfer of functions.
Sec. 712. Certain delegated functions and functions of certain agencies.
Sec. 713. Transfer of personnel, property, and funds.
Sec. 714. Existing statutes, regulations, and other actions.
Sec. 715. Pending actions and proceedings.
Sec. 716. Vacancies resulting from abolishment of offices of Commissioner and Assistant to the Commissioner.
Sec. 717. Status of the District.
Sec. 718. Continuation of District of Columbia court system.
Sec. 719. Continuation of the Board of Education.

PART C—TEMPORARY PROVISIONS

Sec. 721. Powers of the President during transitional period.
Sec. 722. Reimbursable appropriations for the District.
Sec. 723. Interim loan authority.

PART D—MISCELLANEOUS

Sec. 731. Agreements with United States.
Sec. 732. Personal interest in contracts or transactions.
Sec. 733. Compensation from more than one source.
Sec. 734. Assistance of the United States Civil Service Commission in development of District merit system.
Sec. 735. Revenue sharing restrictions.
Ses. 736. Independent audit.
Sec. 737. Adjustments.
Sec. 738. Advisory neighborhood councils.
Sec. 739. National Capital Service Area.
Sec. 740. Emergency control of police.
Sec. 741. Holding office in the District.
Sec. 742. Open meetings.
Sec. 743. Termination of the District's authority to borrow from the Treasury.

PART E—AMENDMENTS TO THE DISTRICT OF COLUMBIA ELECTION ACT

Sec. 751. Amendments.
Sec. 752. District Council authority over elections.

PART F—RULES OF CONSTRUCTION

Sec. 761. Construction.

PART G—EFFECTIVE DATES

Sec. 771. Effective dates.

# TITLE I—SHORT TITLE, PURPOSES, AND DEFINITIONS

### SHORT TITLE

SEC. 101. This Act may be cited as the "District of Columbia Self-Government and Governmental Reorganization Act".

## STATEMENT OF PURPOSES

SEC. 102. (a) Subject to the retention by Congress of the ultimate legislative authority over the Nation's Capital granted by article I, section 8, of the Constitution, the intent of Congress is to delegate certain legislative powers to the government of the District of Columbia: authorize the election of certain local officials by the registered qualified electors in the District of Columbia: grant to the inhabitants of the District of Columbia powers of local self-government: to modernize, reorganize, and otherwise improve the governmental structure of the District of Columbia; and, to the greatest extent possible, consistent with the constitutional mandate, relieve Congress of the burden of legislating upon essentially local District matters.

USC prec. title 1.

(b) Congress further intends to implement certain recommendations of the Commission on the Organization of the Government of the District of Columbia and take certain other actions irrespective of whether the charter for greater self-government provided for in title IV of this Act is accepted or rejected by the registered qualified electors of the District of Columbia.

## DEFINITIONS

SEC. 103. For the purposes of this Act—

(1) The term "District" means the District of Columbia.

(2) The term "Council" means the Council of the District of Columbia provided for by part A of title IV.

(3) The term "Commissioner" means the Commissioner of the District of Columbia established under Reorganization Plan Numbered 3 of 1967.

(4) The term "District of Columbia Council" means the Council of the District of Columbia established under Reorganization Plan Numbered 3 of 1967.

(5) The term "Chairman" means, unless otherwise provided in this Act, the Chairman of the Council provided for by part A of title IV.

81 Stat. 948.
5 USC app. II.
D.C. Code 1-app.

(6) The term "Mayor" means the Mayor provided for by part B of title IV.

(7) The term "act" includes any legislation passed by the Council, except where the term "Act" is used to refer to this Act or other Acts of Congress herein specified.

(8) The term "capital project" means (A) any physical public betterment or improvement and any preliminary studies and surveys relative thereto; (B) the acquisition of property of a permanent nature; or (C) the purchase of equipment for any public betterment or improvement when first erected or acquired.

(9) The term "pending", when applied to any capital project, means authorized but not yet completed.

(10) The term "District revenues" means all funds derived from taxes, fees, charges, and miscellaneous receipts, including all annual Federal payments to the District authorized by law, and from the sale of bonds.

(11) The term "election", unless the context otherwise provides, means an election held pursuant to the provisions of this Act.

(12) The terms "publish" and "publication", unless otherwise specifically provided herein, mean publication in a newspaper of general circulation in the District.

(13) The term "District of Columbia courts" means the Superior Court of the District of Columbia and the District of Columbia Court of Appeals.

(14) The term "resources" means revenues, balances, revolving funds, funds realized from borrowing, and the District share of Federal grant programs.

(15) The term "budget" means the entire request for appropriations and loan or spending authority for all activities of all agencies of the District financed from all existing or proposed resources and shall include both operating and capital expenditures.

## TITLE II—GOVERNMENTAL REORGANIZATION

### REDEVELOPMENT LAND AGENCY

SEC. 201. The District of Columbia Redevelopment Act of 1945 (D.C. Code, secs. 5–701—5–719) is amended as follows:

60 Stat. 793.

(a) Subsection (a) of section 4 of such Act (D.C. Code, sec. 5–703 (a)) is amended to read as follows:

"(a) The District of Columbia Redevelopment Land Agency is hereby established as an instrumentality of the District of Columbia government, and shall be composed of five members appointed by the Commissioner of the District of Columbia (hereinafter referred to as the 'Commissioner'), with the advice and consent of the Council of the District of Columbia (hereinafter referred to as the 'Council'). The Commissioner shall name one member as chairman. No more than two members may be officers of the District of Columbia government. Each member shall serve for a term of five years except that of the members first appointed under this section, one shall serve for a term of one year, one shall serve for a term of two years, one shall serve for a term of three years, one shall serve for a term of four years, and one shall serve for a term of five years, as designated by the Commissioner. The terms of the members first appointed under this section shall begin on or after January 2, 1975. Should any member who is an officer of the District of Columbia government cease to be such an officer, then his term as a member shall end on the day he ceases to be such an officer. Any person appointed to fill a vacancy in the Agency shall be appointed to serve for the remainder of the term during which such vacancy arose. Any member who holds no other salaried public position shall receive compensation at the rate of $100 for each day such member is engaged in the actual performance of duties vested in the agency."

D.C. government authority.

(b) Subsection (b) of section 4 of such Act (D.C. Code, sec. 5–703 (b)) is amended—

(1) by inserting after "forth" at the end of the first sentence of such section ", except that nothing in this section shall prohibit the District of Columbia government from dissolving the corporation, eliminating the board of directors, or taking such other action with respect to the powers and duties of such Agency, including those actions specified in subsection (c), as is deemed necessary and appropriate", and

(2) by striking out in the second sentence "including the selection of its chairman and other officers," and inserting in lieu thereof "including the selection of officers other than its chairman,".

(c) Section 4 of such Act is amended by adding at the end thereof the following new subsection:

Factfinding board.

"(c) The Council is authorized, by act, to adopt legislation—

"(1) establishing, for the purpose of assuring uniform procedures relating to the disposition of complaints and other claims involving the Redevelopment Land Agency (or its successor) and other administrative units of the District of Columbia govern-

ment, a factfinding board to receive, hear, and act on such complaints and claims arising out of or in connection with administrative and other actions of such Agency or units in carrying out their powers and functions;

"(2) providing that all planning, designing, construction, and supervision of public facilities which are to be contributed to any redevelopment area as the local non-cash grant-in-aid to the project under title I of the Housing Act of 1949, shall, to the extent practicable, be carried out by an appropriate District of Columbia department or agency on the basis of a contractual or other arrangement with the Redevelopment Land Agency or its successor;

68 Stat. 622.
42 USC 1450.

"(3) providing that any occupied rental property owned by the Agency shall be maintained by such Agency (or its successor) in a safe and sanitary condition; or

"(4) providing that the Commissioner shall have authority to waive all or any part of any special assessments levied against abutting property owners for the cost of sewers, streets, curbs, gutters, sidewalks, utilities, and other supporting facilities or project improvements where the costs therefor to the District of Columbia can be applied as a non-cash local grant-in-aid, as defined by the Secretary of the Department of Housing and Urban Development.".

(d) The first sentence of subsection (b) of section 5 of such Act (D.C. Code. sec. 5–704(b)) is amended to read as follows "Condemnation proceedings for the acquisition of real property for said purposes shall be conducted in accordance with subchapter II of chapter 13 of title 16 of the District of Columbia Code.".

84 Stat. 587.

D.C. Code 16-1311.

(e) None of the amendments contained in this section shall be construed to affect the eligibility of the District of Columbia Redevelopment Land Agency to continue participation in the small business procurement programs under section 8(a) of the Small Business Act (67 Stat. 547).

(f) For the purposes of subsection 713(d), employees in the District of Columbia Redevelopment Land Agency shall be deemed to be transferred to the District of Columbia as of the effective date of this title without a break in service.

72 Stat. 389.
15 USC 637.
*Post,* p. 819.

### NATIONAL CAPITAL HOUSING AUTHORITY

Sec. 202. (a) The National Capital Housing Authority (hereinafter referred to as the "Authority") established under the District of Columbia Alley Dwelling Act (D.C. Code, secs. 5–103—5–116) shall be an agency of the District of Columbia government subject to the organizational and reorganizational powers specified in sections 404(b) and 422(12) of this Act.

48 Stat. 930;
52 Stat. 1186.

(b) All functions, powers, and duties of the President under the District of Columbia Alley Dwelling Act shall be vested in and exercised by the Commissioner. All employees, property (real and personal), and unexpended balances (available or to be made available) of appropriations, allocations, and all other funds, and assets and liabilities of the Authority are authorized to be transferred to the District of Columbia government.

### NATIONAL CAPITAL PLANNING COMMISSION AND MUNICIPAL PLANNING

Sec. 203. (a) Subsections (a) and (b) of section 2 of the Act entitled "An Act providing for a comprehensive development of the park and

66 Stat. 782;
76 Stat. 575.
40 USC 71a.
Federal plan-
ning agency.

playground system of the National Capital", approved June 6, 1924
(D.C. Code, sec. 1-1002), are amended to read as follows:

"(a)(1) The National Capital Planning Commission (hereinafter
referred to as the 'Commission') is created as the central Federal plan-
ning agency for the Federal Government in the National Capital, and
to preserve the important historical and natural features thereof,
except with respect to the United States Capitol buildings and grounds
as defined in sections 1 and 16 of the Act of July 31, 1946 (40 U.S.C.
193a, 193m), and to any extension thereof or additions thereto, or to
buildings and grounds under the care of the Architect of the Capitol.

60 Stat. 718;
81 Stat. 275.
D.C. Code 9-
118, 9-132.
D.C. planning
agency.

"(2) The Commissioner of the District of Columbia (hereinafter
referred to as the 'Commissioner') shall be the central planning agency
for the government of the District of Columbia (hereinafter referred
to as the 'District') in the National Capital. The Commissioner shall
be responsible for coordinating the planning activities of the District
government and for preparing and implementing the District elements
of the comprehensive plan for the National Capital, which may include
land use elements, urban renewal and redevelopment elements, a multi-
year program of public works for the District, and physical, social,
economic, transportation, and population elements. The Commis-
sioner's planning responsibility shall not extend to Federal or inter-
national projects and developments in the District, as determined by
the Commission, or to the United States Capitol buildings and grounds
as defined in sections 1 and 16 of the Act of July 31, 1946 (40 U.S.C.
193a, 193m), or to any extension thereof or additions thereto, or to
buildings and grounds under the care of the Architect of the Capitol.
In carrying out his responsibility under this section, the Commis-
sioner shall establish procedures for citizen participation in the plan-
ning process, and for appropriate meaningful consultation with any
State or local government or planning agency in the National Capital
region affected by any aspect of a comprehensive plan (including
amendments thereto) affecting or relating to the District.

"(3) The Commissioner shall submit each District element of the
comprehensive plan and any amendment thereto, to the Council for
revision or modification, and adoption, by act, following public hear-
ings. Following adoption and prior to implementation, the Council
shall submit each such element or amendment to the Commission for
review and comment with regard to the impact of such element or
amendment on the interests or functions of the Federal Establishment
in the National Capital.

"(4)(A) The Commission shall, within sixty days after receipt
of such a District element of the comprehensive plan, or amendment
thereto, from the Council, certify to the Council whether such element
or amendment has a negative impact on the interests or functions of
the Federal Establishment in the National Capital. If within such
sixty days the Commission takes no action with respect to such element
or amendment, such element or amendment shall be deemed to have
no such negative impact, and such element or amendment shall be
incorporated into the comprehensive plan for the National Capital
and shall be implemented.

"(B) If the Commission finds, within such sixty days, such negative
impact, it shall certify its findings and recommendations with respect
to such negative impact to the Council. Upon receipt of the Commis-
sion's findings and recommendations, the Council may—

"(i) reject such findings and recommendations and resubmit
such element or amendment, in a modified form, to the Commis-
sion for reconsideration; or

"(ii) accept such findings and recommendations and modify
such element or amendment accordingly.

If the Council accepts such findings and recommendations and modifies such element or amendment under clause (ii), the Council shall submit such element or amendment to the Commission for it to determine whether such modification has been made in accordance with the Commission's findings and recommendations. If, within thirty days after receipt of the modified element or amendment, the Commission takes no action with respect to such element or amendment, it shall be deemed to have been modified in accordance with such findings or recommendations, and shall be incorporated into the comprehensive plan for the National Capital and shall be implemented. If within such thirty days, the Commission again determines such element or amendment to have a negative impact on the functions or interests of the Federal Establishment in the National Capital such element or amendment shall not be implemented.

"(C) If the Council rejects the findings and recommendations of the Commission and resubmits a modified element or amendment to it under clause (i), the Commission shall, within sixty days after receipt of such modified element or amendment from the Council, determine whether such modified element or amendment has a negative impact on the interests or functions of the Federal Establishment within the National Capital. If the Commission finds such negative impact it shall certify its findings (in sufficient detail that the Council can understand the basis of the objection of the Commission) and recommendations to the Council, and such element or amendment shall not be implemented. If the Commission takes no action with respect to such modified element or amendment within such sixty days, such modified element or amendment shall be deemed to have no such negative impact and shall be incorporated into the comprehensive plan and it shall be implemented. Any element or amendment which the Commission has determined to have a negative impact on the Federal Establishment in the National Capital, and which is submitted again in a modified form not less than one year from the day it was last rejected by the Commission shall be deemed to be a new element or amendment for purposes of the review procedure specified in this section.

"(D) The Commission and the Commissioner shall jointly publish, from time to time as appropriate, a comprehensive plan for the National Capital, consisting of the elements of the comprehensive plan for the Federal activities in the National Capital developed by the Commission, and the District elements developed by the Commissioner and the Council in accordance with the provisions of this section. *Joint publication of plan.*

"(E) The Council may grant, upon request made to it by the Commission, an extension of any time limitation contained in this section. *Time limitation extension, authority.*

"(F) The Commission and the Commissioner shall jointly establish procedures for appropriate meaningful continuing consultation throughout the planning process for the National Capital.

"(b) The National Capital Planning Commission shall be composed of—

"(1) ex officio, the Secretary of the Interior, the Secretary of Defense, the Administrator of the General Services Administration, the Commissioner, the Chairman of the District of Columbia Council, and the chairmen of the Committees on the District of Columbia of the Senate and the House of Representatives, or such alternates as each such person may from time to time designate to serve in his stead, and in addition,

"(2) five citizens with experience in city or regional planning, three of whom shall be appointed by the President and two of whom shall be appointed by the Commissioner. The citizen mem-

bers appointed by the Commissioner shall be bona fide residents of the District of Columbia and of the three appointed by the President at least one shall be a bona fide resident of Virginia and at least one shall be a bona fide resident of Maryland. The terms of office of members appointed by the President shall be for six years, except that of the members first appointed, the President shall designate one to serve two years and one to serve four years. Members appointed by the Commissioner shall serve for four years. The members first appointed under this section shall assume their office on January 2, 1975. Any person appointed to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed. The citizen members shall each receive compensation at the rate of $100 for each day such member is engaged in the actual performance of duties vested in the Commission in addition to reimbursement for necessary expenses incurred by them in the performance of such duties.".

66 Stat. 783.
40 USC 71a.

(b) Subsection (e) of section 2 of such Act of June 6, 1924 (D.C. Code, sec. 1–1002(e)), is amended by (1) inserting "Federal activities in the" immediately before "National Capital" in clause (1); and (2) striking out "and District Governments," and inserting in lieu thereof "government" in clause (2).

40 USC 71c.

(c) Section 4 of such Act of June 6, 1924 (D.C. Code, sec. 1–1004), is amended as follows:

(1) The first sentence of subsection (a) of such section is amended to read as follows: "The Commission is hereby charged with the duty of preparing and adopting a comprehensive, consistent, and coordinated plan for the National Capital, which plan shall include the Commission's recommendations or proposals for Federal developments or projects in the environs, and those District elements, or amendments thereto, of the comprehensive plan adopted by the Council and with respect to which the Commission has not determined a negative impact to exist, which elements or amendments shall be incorporated into such comprehensive plan without change.".

(2) The third sentence of subsection (a) of such section is amended by striking out "within the District of Columbia" and "or District".

Repeals.
40 USC 71d.

(3) Subsections (b) and (c) of such section are repealed.

(d) Section 5 of such Act of June 6, 1924 (D.C. Code, sec. 1–1005), is amended as follows:

(1) Subsection (c) of such section is amended to read as follows:

52 Stat. 802.

"(c) The provisions of section 16 of the Act approved June 20, 1938 (D.C. Code, sec. 5–428), are extended to include public buildings erected by any agency of the Government of the District of Columbia within the boundaries of the central area of the District, as such central area may be defined and from time to time redefined by concurrent action of the Commission and the Council, except that the Commission shall transmit its approval or disapproval respecting any such building within thirty days after the day it was submitted to the Commission.".

Federal Government agencies, cooperation.

(2) The first and second sentences of subsection (e) of such section are amended to read as follows: "It is the intent of this section to obtain cooperation and correlation of effort between the various agencies of the Federal Government which are responsible for public developments and projects, including the acquisition of land. These agencies, therefore, shall look to the Commission and utilize it as the central planning agency for the Federal activities in the National Capital region.".

Repeal.
66 Stat. 789.
40 USC 71e,
71f.

(e) Section 6 of such Act (D.C. Code, sec. 1–1006) is repealed.

(f) Section 7 of such Act (D.C. Code, sec. 1–1007) is amended to read as follows:

"SEC. 7. (a) The Commission shall recommend a six-year program of public works projects for the Federal Government which it shall review annually with the agencies concerned. To this end, each Federal agency shall submit to the Commission in the first quarter of each fiscal year a copy of its advance program of capital improvements within the National Capital and its environs.    **Public works projects.**

"(b) The Commissioner shall submit to the Commission, by February 1 of each year, a copy of the multiyear capital improvements plan for the District developed by him under section 444 of the District of Columbia Self-Government and Governmental Reorganization Act. The Commission shall have thirty days within which to comment upon such plan but shall have no authority to change or disapprove of such plan."    **Multiyear capital improvements plan, submittal to Commission.** *Post,* p. 800.

"(g) The first sentence of subsection (a) of section 8 of such Act of June 6, 1924 (D.C. Code, sec. 1–1008(a)), is amended to read as follows: "The Commission may make a report and recommendation to the Zoning Commission of the District of Columbia, as provided in section 5 of the Act of March 1, 1920 (D.C. Code, sec. 5–417), on proposed amendments of the zoning regulations and maps as to the relation, conformity, or consistency of such amendments with the comprehensive plan for the National Capital."    66 Stat. 790. 40 USC 71g.

52 Stat. 798.

### DISTRICT OF COLUMBIA MANPOWER ADMINISTRATION

SEC. 204. (a) All functions of the Secretary of Labor (hereafter in this section referred to as the "Secretary") under section 3 of the Act entitled "An Act to provide for the establishment of a national employment system and for cooperation with the States in the promotion of such system, and for other purposes", approved June 6, 1933 (29 U.S.C. 49–49k), with respect to the maintenance of a public employment service for the District, are transferred to the Commissioner. After the effective date of this transfer, the Secretary shall maintain with the District the same relationship with respect to a public employment service in the District, including the financing of such service, as he has with the States (with respect to a public employment service in the States) generally.    48 Stat. 113; 53 Stat. 1409; 68 Stat. 665.

(b) The Commissioner is authorized and directed to establish and administer a public employment service in the District and to that end he shall have all necessary powers to cooperate with the Secretary in the same manner as a State under the Act of June 6, 1933, specified in subsection (a).    **Public employment service.**

(c)(1) Section 3(a) of the Act entitled "An Act to provide for the establishment of a national employment system and for cooperation with the States in the promotion of such system, and for other purposes", approved June 6, 1933 (29 U.S.C. 49b(a)), is amended by striking out "to maintain a public employment service for the District of Columbia".

(2) Section 3(b) of such Act (29 U.S.C. 49b(b)) is amended by inserting "the District of Columbia," immediately after "Guam,".    70 Stat. 910.

(d) All functions of the Secretary and of the Director of Apprenticeship under the Act entitled "An Act to provide for voluntary apprenticeship in the District of Columbia", approved May 20, 1946 (D.C. Code, secs. 36–121—36–133), are transferred to and shall be exercised by the Commissioner. The office of Director of Apprenticeship provided for in section 3 of such Act (D.C. Code, sec. 36–123) is abolished.    60 Stat. 204; 84 Stat. 583.

(e) All functions of the Secretary under chapter 81 of title 5 of the United States Code, with respect to the processing of claims filed by employees of the government of the District for compensation for work injuries, are transferred to and shall be exercised by the Commissioner,    5 USC 8101.

effective the day after the day on which the District establishes an independent personnel system or systems.

Transfer of property.

(f) So much of the personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, held, used, available, or to be made available in connection with functions transferred to the Commisisoner by the provisions of this section, as the Director of the Federal Office of Management and Budget shall determine, are authorized to be transferred from the Secretary to the Commissioner.

(g) Any employee in the competitive service of the United States transferred to the government of the District under the provisions of this section shall retain all the rights, benefits, and privileges pertaining thereto held prior to such transfer. When such an employee vacates the position into which he was transferred, such position shall no longer be a position in such competitive service.

50 Stat. 664. "State."

(h) The first section of the Act of August 16, 1937 (29 U.S.C. 50 et seq.) (relating to the welfare of apprentices), is amended by inserting at the end thereof "For the purposes of this Act the term 'State' shall include the District of Columbia.".

## TITLE III—DISTRICT CHARTER PREAMBLE, LEGISLATIVE POWER, AND CHARTER AMENDING PROCEDURE

### DISTRICT CHARTER PREAMBLE

Post, p. 785.

SEC. 301. The charter for the District of Columbia set forth in title IV shall establish the means of governance of the District following its acceptance by a majority of the registered qualified electors of the District voting thereon in the charter referendum held with respect thereto.

### LEGISLATIVE POWER

Post, pp. 813, 814.

SEC. 302. Except as provided in sections 601, 602, and 603, the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of this Act subject to all the restrictions and limitations imposed upon the States by the tenth section of the first article of the Constitution of the United States.

### CHARTER AMENDING PROCEDURE

SEC. 303. (a) The charter set forth in title IV (including any provision of law amended by such title), except sections 401(a) and 421 (a), and part C of such title, may be amended by an act passed by the Council and ratified by a majority of the registered qualified electors of the District voting in the referendum held for such ratification. The Chairman of the Council shall submit all such acts to the Speaker of the House of Representatives and the President of the Senate on the day the Board of Elections certifies that such act was ratified by a majority of the registered qualified electors voting thereon in such referendum.

(b) An amendment to the charter ratified by the registered qualified electors shall take effect only if within thirty-five calendar days (excluding Saturdays, Sundays, holidays, and days on which either House of Congress is not in session) of the date such amendment was submitted to the Congress both Houses of Congress adopt a concurrent resolution, according to the procedures specified in section 604 of this Act, approving such amendment.

87 Stat. ]     PUBLIC LAW 93-198–DEC. 24, 1973     785

(c) The Board of Elections shall prescribe such rules as are necessary with respect to the distribution and signing of petitions and the holding of elections for ratifying amendments to title IV of this Act according to the procedures specified in subsection (a).

(d) The amending procedure provided in this section may not be used to enact any law or affect any law with respect to which the Council may not enact any act, resolution, or rule under the limitations specified in sections 601, 602, and 603.

*Post,* pp. 813, 814.

## TITLE IV—THE DISTRICT CHARTER

### Part A—The Council

#### Subpart 1—Creation of the Council

##### CREATION AND MEMBERSHIP

Sec. 401. (a) There is established a Council of the District of Columbia; and the members of the Council shall be elected by the registered qualified electors of the District.

Establishment; membership.

(b)(1) The Council established under subsection (a) shall consist of thirteen members elected on a partisan basis. The Chairman and four members shall be elected at large in the District, and eight members shall be elected one each from the eight election wards established, from time to time, under the District of Columbia Election Act. The term of office of the members of the Council shall be four years, except as provided in paragraph (3), and shall begin at noon on January 2 of the year following their election.

69 Stat. 699. D.C. Code 1-1101 note.

(2) In the case of the first election held for the office of member of the Council after the effective date of this title, not more than two of the at-large members (excluding the Chairman) shall be nominated by the same political party. Thereafter, a political party may nominate a number of candidates for the office of at-large member of the Council equal to one less than the total number of at-large members (excluding the Chairman) to be elected in such election.

(3) Of the members first elected after the effective date of this title, the Chairman and two members elected at-large and four of the members elected from election wards shall serve for four-year terms; and two of the at-large members and four of the members elected from election wards shall serve for two-year terms. The members to serve the four-year terms and the members to serve the two-year terms shall be determined by the Board of Elections by lot, except that not more than one of the at-large members nominated by any political party shall serve for any such four-year term.

(c) The Council may establish and select such other officers and employees as it deems necessary and appropriate to carry out the functions of the Council.

(d)(1) In the event of a vacancy in the Council of a member elected from a ward, the Board of Elections shall hold a special election in such ward to fill such vacancy on the first Tuesday occurring more than one hundred and fourteen days after the date on which such vacancy occurs, unless the Board of Elections determines that such vacancy could be more practicably filled in a special election held on the same day as the next general election to be held in the District occurring within sixty days of the date on which a special election would otherwise have been held under the provisions of this subsection. The person elected as a member to fill a vacancy on the Council shall take office on the day on which the Board of Elections certifies his election,

and shall serve as a member of the Council only for the remainder of
the term during which such vacancy occurred.

Mayoral
vacancy.

(2) In the event of a vacancy in the office of Mayor, and if the Chair-
man becomes a candidate for the office of Mayor to fill such vacancy,
the office of Chairman shall be deemed vacant as of the date of the filing
of his candidacy. In the event of a vacancy in the Council of a member
elected at large, other than a vacancy in the office of Chairman, who
is affiliated with a political party, the central committee of such politi-
cal party shall appoint a person to fill such vacancy, until the Board
of Elections can hold a special election to fill such vacancy, and such
special election shall be held on the first Tuesday occurring more than
one hundred and fourteen days after the date on which such vacancy
occurs unless the Board of Elections determines that such vacancy
could be more practicably filled in a special election held on the same
day as the next general election to be held in the District occurring
within sixty days of the date on which a special election would other-
wise be held under the provision of this subsection. The person
appointed to fill such vacancy shall take office on the date of his
appointment and shall serve as a member of the Council until the day
on which the Board certifies the election of the member elected to fill
such vacancy in either a special election or a general election. The
person elected as a member to fill such a vacancy on the Council shall
take office on the day on which the Board of Elections certifies his
election, and shall serve as a member of the Council only for the
remainder of the term during which such vacancy occurred. With
respect to a vacancy on the Council of a member elected at large who
is not affiliated with any political party, the Council shall appoint a
similarly nonaffiliated person to fill such vacancy until such vacancy
can be filled in a special election in the manner prescribed in this para-
graph. Such person appointed by the Council shall take office and serve
as a member at the same time and for the same term as a member
appointed by a central committee of a political party.

(3) Notwithstanding any other provision of this section, at no
time shall there be more than three members (including the Chair-
man) serving at large on the Council who are affiliated with the same
political party.

QUALIFICATIONS FOR HOLDING OFFICE

SEC. 402. No person shall hold the office of member of the Council,
including the office of Chairman, unless he (a) is a qualified elector,
(b) is domiciled in the District and if he is nominated for election from
a particular ward, resides in the ward from which he is nominated,
(c) has resided and been domiciled in the District for one year immedi-
ately preceding the day on which the general or special election for
such office is to be held, and (d) holds no public office (other than his
employment in and position as a member of the Council), for which he
is compensated in an amount in excess of his actual expenses in con-
nection therewith, except that nothing in this clause shall prohibit any
such person, while a member of the Council, from serving as a delegate
or alternate delegate to a convention of a political party nominating
candidates for President and Vice President of the United States, or
from holding an appointment in a Reserve component of an armed
force of the United States other than a member serving on active
duty under a call for more than thirty days. A member of the Council
shall forfeit his office upon failure to maintain the qualifications
required by this section, and, in the case of the Chairman, section
403(c).

COMPENSATION

SEC. 403. (a) Each member of the Council shall receive compensation, payable in periodic installments, at a rate equal to the maximum rate as may be established from time to time for grade 12 of the General Schedule under section 5332 of title 5 of the United States Code. On and after the end of the two-year period beginning on the day the members of the Council first elected under this Act take office, the Council may, by act, increase or decrease such rate of compensation. Such change in compensation, upon enactment by the Council in accordance with the provisions of this Act, shall apply with respect to the term of members of the Council beginning after the date of enactment of such change.

5 USC 5332 note.

(b) All members of the Council shall receive additional allowances for actual and necessary expenses incurred in the performance of their duties of office as may be approved by the Council.

(c) The Chairman shall receive, in addition to the compensation to which he is entitled as a member of the Council, $10,000 per annum, payable in equal installments, for each year he serves as Chairman, but the Chairman shall not engage in any employment (whether as an employee or as a self-employed individual) or hold any position (other than his position as Chairman), for which he is compensated in an amount in excess of his actual expenses in connection therewith.

Chairman, additional compensation.

POWERS OF THE COUNCIL

SEC. 404. (a) Subject to the limitations specified in title VI of this Act, the legislative power granted to the District by this Act is vested in and shall be exercised by the Council in accordance with this Act. In addition, except as otherwise provided in this Act, all functions granted to or imposed upon, or vested in or transferred to the District of Columbia Council, as established by Reorganization Plan Numbered 3 of 1967, shall be carried out by the Council in accordance with the provisions of this Act.

81 Stat. 948.
5 USC app. II.
D.C. Code
1-app.

(b) The Council shall have authority to create, abolish, or organize any office, agency, department, or instrumentality of the government of the District and to define the powers, duties, and responsibilities of any such office, agency, department, or instrumentality.

(c) The Council shall adopt and publish rules of procedures which shall include provisions for adequate public notification of intended actions of the Council.

Public notification.

(d) Every act shall be published and codified upon becoming law as the Council may direct.

(e) An act passed by the Council shall be presented by the Chairman of the Council to the Mayor, who shall, within ten calendar days (excluding Saturdays, Sundays, and holidays) after the act is presented to him, either approve or disapprove such act. If the Mayor shall approve such act, he shall indicate the same by affixing his signature thereto, and such act shall become law subject to the provisions of section 602(c). If the Mayor shall disapprove such act, he shall, within ten calendar days (excluding Saturdays, Sundays, and holidays) after it is presented to him, return such act to the Council setting forth in writing his reasons for such disapproval. If any act so passed shall not be returned to the Council by the Mayor within ten calendar days after it shall have been presented to him, the Mayor shall be deemed to have approved it, and such act shall become law subject to the provisions of section 602(c). If, within thirty calendar days after an act has been timely returned by the Mayor to the Council with his disapproval, two-thirds of the members of the Council present and

Ten-day legislative decision.

Transmittals to President.

SA19

voting vote to reenact such act, the act so reenacted shall be transmitted by the Chairman to the President of the United States. Subject to the provisions of section 602(c), such act, except any act of the Council submitted to the President in accordance with the Budget and Accounting Act, 1921, shall become law at the end of the thirty day period beginning on the date of such transmission, unless during such period the President disapproves such act.

*Post*, p. 814.

42 Stat. 20
31 USC 1.

(f) In the case of any budget act adopted by the Council pursuant to section 446 of this Act and submitted to the Mayor in accordance with subsection (e) of this section, the Mayor shall have power to disapprove any items or provisions, or both, of such act and approve the remainder. In any case in which the Mayor so disapproves of any item or provision, he shall append to the act when he signs it a statement of the item or provision which he disapproves, and shall, within such ten-day period, return a copy of the act and statement with his objections to the Council. If, within thirty calendar days after any such item or provision so disapproved has been timely returned by the Mayor to the Council, two-thirds of the members of the Council present and voting vote to reenact any such item or provision, such item or provision so reenacted shall be transmitted by the Chairman to the President of the United States. In any case in which the Mayor fails to timely return any such item or provision so disapproved to the Council, the Mayor shall be deemed to have approved such item or provision not returned, and such item or provision not returned shall be transmitted by the Chairman to the President of the United States.

### Subpart 2—Organization and Procedure of the Council

#### THE CHAIRMAN

SEC. 411. (a) The Chairman shall be the presiding officer of the Council.

(b) When the Office of Mayor is vacant, the Chairman shall act in his stead. While the Chairman is Acting Mayor he shall not exercise any of his authority as Chairman or member of the Council.

#### ACTS, RESOLUTIONS, AND REQUIREMENTS FOR QUORUM

SEC. 412. (a) The Council, to discharge the powers and duties imposed herein, shall pass acts and adopt resolutions, upon a vote of a majority of the members of the Council present and voting, unless otherwise provided in this Act or by the Council. The Council shall use acts for all legislative purposes. Each proposed act shall be read twice in substantially the same form, with at least thirteen days intervening between each reading. Upon final adoption by the Council each act shall be made immediately available to the public in a manner which the Council shall determine. If the Council determines, by a vote of two-thirds of the members, that emergency circumstances make it necessary that an act be passed after a single reading, or that it take effect immediately upon enactment, such act shall be effective for a period of not to exceed ninety days. Resolutions shall be used to express simple determinations, decisions, or directions of the Council of a special or temporary character.

Special election.

(b) A special election may be called by resolution of the Council to present for an advisory referendum vote of the people any proposition upon which the Council desires to take action.

Quorum.

(c) A majority of the Council shall constitute a quorum for the lawful convening of any meeting and for the transaction of business of the Council, except a lesser number may hold hearings.

## INVESTIGATIONS BY THE COUNCIL

Sec. 413. (a) The Council, or any committee or person authorized by it, shall have power to investigate any matter relating to the affairs of the District, and for that purpose may require the attendance and testimony of witnesses and the production of books, papers, and other evidence. For such purpose any member of the Council (if the Council is conducting the inquiry) or any member of the committee may issue subpenas and administer oaths upon resolution adopted by the Council or committee, as appropriate.

(b) In case of contumacy by, or refusal to obey a subpena issued to, any person, the Council by resolution may refer the matter to the Superior Court of the District of Columbia, which may by order require such person to appear and give or produce testimony or books, papers, or other evidence, bearing upon the matter under investigation. Any failure to obey such order may be punished by such Court as a contempt thereof as in the case of failure to obey a subpena issued, or to testify, in a case pending before such Court.

## Part B—The Mayor

### ELECTION, QUALIFICATIONS, VACANCY, AND COMPENSATION

Sec. 421. (a) There is established the Office of Mayor of the District of Columbia; and the Mayor shall be elected by the registered qualified electors of the District.

*Office of Mayor, establishment.*

(b) The Mayor established by subsection (a) shall be elected, on a partisan basis, for a term of four years beginning at noon on January 2 of the year following his election.

(c)(1) No person shall hold the Office of Mayor unless he (A) is a qualified elector, (B) has resided and been domiciled in the District for one year immediately preceding the day on which the general or special election for Mayor is to be held, and (C) is not engaged in any employment (whether as an employee or as a self-employed individual) and holds no public office or position (other than his employment in and position as Mayor), for which he is compensated in an amount in excess of his actual expenses in connection therewith, except that nothing in this clause shall be construed as prohibiting such person, while holding the Office of Mayor, from serving as a delegate or alternate delegate to a convention of a political party nominating candidates for President and Vice President of the United States, or from holding an appointment in a reserve component of an armed force of the United States other than a member serving on active duty under a call for more than thirty days. The Mayor shall forfeit his office upon failure to maintain the qualifications required by this paragraph.

(2) To fill a vacancy in the Office of Mayor, the Board of Elections shall hold a special election in the District on the first Tuesday occurring more than one hundred and fourteen days after the date on which such vacancy occurs, unless the Board of Elections determines that such vacancy could be more practicably filled in a special election held on the same day as the next general election to be held in the District occurring within sixty days of the date on which a special election would otherwise have been held under the provisions of this paragraph. The person elected Mayor to fill a vacancy in the Office of Mayor shall take office on the day on which the Board of Elections certifies his election, and shall serve as Mayor only for the remainder of the term during which such vacancy occurred. When the Office of Mayor becomes vacant the Chairman shall become Acting Mayor and shall serve from the date such vacancy occurs until the

date on which the Board of Elections certifies the election of the new Mayor at which time he shall again become Chairman. While the Chairman is Acting Mayor, the Chairman shall receive the compensation regularly paid the Mayor, and shall receive no compensation as Chairman or member of the Council. While the Chairman is Acting Mayor, the Council shall select one of the elected at-large members of the Council to serve as Chairman and one to serve as chairman pro tempore, until the return of the regularly elected Chairman.

(d) The Mayor shall receive compensation, payable in equal installments, at a rate equal to the maximum rate, as may be established from time to time, for level III of the Executive Schedule in section 5314 of title 5 of the United States Code. Such rate of compensation may be increased or decreased by act of the Council. Such change in such compensation, upon enactment by the Council in accordance with the provisions of this Act, shall apply with respect to the term of Mayor next beginning after the date of such change. In addition, the Mayor may receive an allowance, in such amount as the Council may from time to time establish, for official, reception, and representation expenses, which he shall certify in reasonable detail to the Council.

80 Stat. 460;
83 Stat. 863.

### POWERS AND DUTIES

SEC. 422. The executive power of the District shall be vested in the Mayor who shall be the chief executive officer of the District government. In addition, except as otherwise provided in this Act, all functions granted to or vested in the Commissioner of the District of Columbia, as established under Reorganization Plan Numbered 3 of 1967, shall be carried out by the Mayor in accordance with this Act. The Mayor shall be responsible for the proper execution of all laws relating to the District, and for the proper administration of the affairs of the District coming under his jurisdiction or control, including but not limited to the following powers, duties, and functions:

81 Stat. 948.
5 USC app. II.
D.C. Code 1-
app.

(1) The Mayor may designate the officer or officers of the executive department of the District who may, during periods of disability or absence from the District of the Mayor execute and perform the powers and duties of the Mayor.

(2) The Mayor shall administer all laws relating to the appointment, promotion, discipline, separation, and other conditions of employment of personnel in the office of the Mayor, personnel in executive departments of the District, and members of boards, commissions, and other agencies, who, under laws in effect on the date immediately preceding the effective date of section 711(a) of this Act, were subject to appointment and removal by the Commissioner of the District of Columbia. All actions affecting such personnel and such members shall, until such time as legislation is enacted by the Council superseding such laws and establishing a permanent District government merit system, pursuant to paragraph (3), continue to be subject to the provisions of Acts of Congress relating to the appointment, promotion, discipline, separation, and other conditions of employment applicable to officers and employees of the District government, to section 713(d) of this Act, and where applicable, to the provisions of the joint agreement between the Commissioners and the Civil Service Commission authorized by Executive Order Numbered 5491 of November 18, 1930, relating to the appointment of District personnel. He shall appoint or assign persons to positions formerly occupied, ex-officio, by the Commissioner of the District of Columbia or by the Assistant to the Commissioner and shall have power to remove such persons from such positions. The officers and employees of each agency with respect to which legislative power is delegated

SA22

by this Act and which immediately prior to the effective date of section 711(a) of this Act, was not subject to the administrative control of the Commissioner of the District, shall continue to be appointed and removed in accordance with applicable laws until such time as such laws may be superseded by legislation passed by the Council establishing a permanent District government merit system pursuant to paragraph (3).

(3) The Mayor shall administer the personnel functions of the District covering employees of all District departments, boards, commissions, offices and agencies, except as otherwise provided by this Act. Personnel legislation enacted by Congress prior to or after the effective date of this section, including, without limitation, legislation relating to appointments, promotions, discipline, separations, pay, unemployment compensation, health, disability and death benefits, leave, retirement, insurance, and veterans' preference applicable to employees of the District government as set forth in section 714(c), shall continue to be applicable until such time as the Council shall, pursuant to this section, provide for coverage under a District government merit system. The District government merit system shall be established by act of the Council. The system may provide for continued participation in all or part of the Federal Civil Service System and shall provide for persons employed by the District government immediately preceding the effective date of such system personnel benefits, including but not limited to pay, tenure, leave, residence, retirement, health and life insurance, and employee disability and death benefits, all at least equal to those provided by legislation enacted by Congress, or regulation adopted pursuant thereto, and applicable to such officers and employees immediately prior to the effective date of the system established pursuant to this Act. The District government merit system shall take effect not earlier than one year nor later than five years after the effective date of this section.

(4) The Mayor shall, through the heads of administrative boards, offices, and agencies, supervise and direct the activities of such boards, offices, and agencies.

(5) The Mayor may submit drafts of acts to the Council.

(6) The Mayor may delegate any of his functions (other than the function of approving or disapproving acts passed by the Council or the function of approving contracts between the District and the Federal Government under section 731) to any officer, employee, or agency of the executive office of the Mayor, or to any director of an executive department who may, with the approval of the Mayor, make a further delegation of all or a part of such functions to subordinates under his jurisdiction.

(7) The Mayor shall appoint a City Administrator, who shall serve at the pleasure of the Mayor. The City Administrator shall be the chief administrative officer of the Mayor, and he shall assist the Mayor in carrying out his functions under this Act, and shall perform such other duties as may be assigned to him by the Mayor. The City Administrator shall be paid at a rate established by the Mayor, not to exceed level IV of the Executive Schedule established under section 5315 of title 5 of the United States Code.

(8) The Mayor may propose to the executive or legislative branch of the United States Government legislation or other action dealing with any subject whether or not falling within the authority of the District government, as defined in this Act.

(9) The Mayor, as custodian thereof, shall use and authenticate the corporate seal of the District in accordance with law.

(10) The Mayor shall have the right, under rules to be adopted by the Council, to be heard by the Council or any of its committees.

*Personnel functions.*

*Post, p. 819.*

*Delegation of functions.*

*Post, p. 822.*

*City Administrator, appointment.*

*80 Stat. 460; 83 Stat. 863.*

SA23

(11) The Mayor is authorized to issue and enforce administrative orders, not inconsistent with this or any other Act of the Congress or any act of the Council, as are necessary to carry out his functions and duties.

(12) The Mayor may reorganize the offices, agencies, and other entities within the executive branch of the government of the District by submitting to the Council a detailed plan of such reorganization. Such a reorganization plan shall be valid only if the Council does not adopt, within sixty days (excluding Saturdays, Sundays, and holidays) after such reorganization plan is submitted to it by the Mayor, a resolution disapproving such reorganization.

## MUNICIPAL PLANNING

SEC. 423. (a) The Mayor shall be the central planning agency for the District. He shall be responsible for the coordination of planning activities of the municipal government and the preparation and implementation of the District's elements of the comprehensive plan for the National Capital which may include land use elements, urban renewal and redevelopment elements, a multi-year program of municipal public works for the District, and physical, social, economic, transportation, and population elements. The Mayor's planning responsibility shall not extend to Federal and international projects and developments in the District, as determined by the National Capital Planning Commission, or to the United States Capitol buildings and grounds as defined in sections 1 and 16 of the Act of July 31, 1946 (40 U.S.C. 193a, 193m), or to any extension thereof or addition thereto, or to buildings and grounds under the care of the Architect of the Capitol. In carrying out his responsibilities under this section, the Mayor shall establish procedures for citizen involvement in the planning process and for appropriate meaningful consultation with any State or local government or planning agency in the National Capital region affected by any aspect of a proposed District element of the comprehensive plan (including amendments thereto) affecting or relating to the District.

*Planning responsibility, limitation.*

*60 Stat. 718; 81 Stat. 275. D.C. Code 9-118, 9-132.*

(b) The Mayor shall submit the District's elements and amendments thereto, to the Council for revision or modification, and adoption by act, following public hearings. Following adoption and prior to implementation, the Council shall submit such elements and amendments thereto, to the National Capital Planning Commission for review and comment with regard to the impact of such elements or amendments on the interests and functions of the Federal Establishment, as determined by the Commission.

(c) Such elements and amendments thereto shall be subject to and limited by determinations with respect to the interests and functions of the Federal Establishment as determined in the manner provided by Act of Congress.

## PART C—THE JUDICIARY

### JUDICIAL POWERS

*District of Columbia Court of Appeals; Superior Court of the District of Columbia, jurisdiction.*

SEC. 431. (a) The judicial power of the District is vested in the District of Columbia Court of Appeals and the Superior Court of the District of Columbia. The Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District and of any criminal case under any law applicable exclusively to the District. The Superior Court has no jurisdiction over any civil or criminal matter over which a United States court has exclusive jurisdiction pursuant to an Act of Congress. The Court of Appeals has jurisdiction

of appeals from the Superior Court and, to the extent provided by law, to review orders and decisions of the Mayor, the Council, or any agency of the District. The District of Columbia courts shall also have jurisdiction over any other matters granted to the District of Columbia courts by other provisions of law.

(b) The chief judge of a District of Columbia court shall be designated by the District of Columbia Judicial Nominating Commission established by section 434 from among the judges of the court in regular active service, and shall serve as chief judge for a term of four years or until his successor is designated, except that his term as chief judge shall not extend beyond the chief judge's term as a judge of a District of Columbia court. He shall be eligible for redesignation as chief judge.

Chief judge, designation.

(c) A judge of a District of Columbia court appointed on or after the date of enactment of the District of Columbia Court Reorganization Act of 1970 shall be appointed for a term of fifteen years subject to mandatory retirement at age seventy or removal, suspension, or involuntary retirement pursuant to section 432 and upon completion of such term, such judge shall continue to serve until reappointed or his successor is appointed and qualifies. A judge may be reappointed as provided in subsection (c) of section 433.

84 Stat. 475.
D.C. Code note
prec. 11-101.

(d)(1) There is established a District of Columbia Commission on Judicial Disabilities and Tenure (hereinafter referred to as the "Tenure Commission"). The Tenure Commission shall consist of seven members selected in accordance with the provisions of subsection (e). Such members shall serve for terms of six years, except that the member selected in accordance with subsection (e)(3)(A) shall serve for five years; of the members first selected in accordance with subsection (e)(3)(B), one member shall serve for three years and one member shall serve for six years; of the members first selected in accordance with subsection (e)(3)(C), one member shall serve for a term of three years and one member shall serve for five years; the member first selected in accordance with subsection (e)(3)(D) shall serve for six years; and the member first appointed in accordance with subsection (e)(3)(E) shall serve for six years. In making the respective first appointments according to subsections (e)(3)(B) and (e)(3)(C), the Mayor and the Board of Governors of the unified District of Columbia Bar shall designate, at the time of such appointments, which member shall serve for the shorter term and which member shall serve for the longer term.

District of
Columbia Com-
mission on Judi-
cial Disabilities
and Tenure.
Establishment.

(2) The Tenure Commission shall act only at meetings called by the Chairman or a majority of the Tenure Commission held after notice has been given of such meeting to all Tenure Commission members.

(3) The Tenure Commission shall choose annually, from among its members, a Chairman and such other officers as it may deem necessary. The Tenure Commission may adopt such rules of procedures not inconsistent with this Act as may be necessary to govern the business of the Tenure Commission.

(4) The District government shall furnish to the Tenure Commission, upon the request of the Tenure Commission, such records, information, services, and such other assistance and facilities as may be necessary to enable the Tenure Commission properly to perform its functions. Information so furnished shall be treated by the Tenure Commission as privileged and confidential.

Confidential
information,
availability.

(e)(1) No person may be appointed to the Tenure Commission unless he—

(A) is a citizen of the United States;

(B) is a bona fide resident of the District and has maintained an actual place of abode in the District for at least ninety days immediately prior to his appointment; and

(C) is not an officer or employee of the legislative branch or of an executive or military department or agency of the United States (listed in sections 101 and 202 of title 5 of the United States Code); and (except with respect to the person appointed or designated according to subsection (b)(4)(D)) is not an officer or employee of the judicial branch of the United States, or an officer or employee of the District government (including its judicial branch).

80 Stat. 378, 948; 84 Stat. 775.

Vacancies.

(2) Any vacancy on the Tenure Commission shall be filled in the same manner is which the original appointment was made. Any person so appointed to fill a vacancy occurring other than upon the expiration of a prior term shall serve only for the remainder of the unexpired term of his predecesor.

(3) In addition to all other qualifications listed in this section, lawyer members of the Tenure Commission shall have the qualifications prescribed for persons appointed as judges of the District of Columbia courts. Members of the Tenure Commission shall be appointed as follows:

(A) One member shall be appointed by the President of the United States.

(B) Two members shall be appointed by the Board of Governors of the unified District of Columbia Bar, both or whom shall have been engaged in the practice of law in the District for at least five successive years preceding their appointment.

(C) Two members shall be appointed by the Mayor, one of whom shall not be a lawyer.

(D) One member shall be appointed by the Council, and shall not be a lawyer.

(E) One member shall be appointed by the chief judge of the United States District Court for the District of Columbia, and such member shall be an active or retired Federal judge serving in the District.

No person may serve at the same time on both the District of Columbia Judicial Nomination Commission and on the District of Columbia Commission on Judicial Disabilities and Tenure.

Compensation.

(f) Any member of the Tenure Commission who is an active or retired Federal judge shall serve without additional compensation. Other members shall receive the daily equivalent at the rate provided by grade 18 of the General Schedule, established under section 5332 of title 5 of the United States Code, while actually engaged in service for the Commission.

5 USC 5332 note.

(g) The Tenure Commission shall have the power to suspend, retire, or remove a judge of a District of Columbia court as provided in section 432.

### REMOVAL, SUSPENSION, AND INVOLUNTARY RETIREMENT

Sec. 432. (a)(1) A judge of a District of Columbia court shall be removed from office upon the filing in the District of Columbia Court of Appeals by the Tenure Commission of an order of removal certifying the entry, in any court within the United States, of a final judgment of conviction of a crime which is punishable as a felony under Federal law or which would be a felony in the District.

(2) A judge of a District of Columbia court shall also be removed from office upon affirmance of an appeal from an order of removal filed in the District of Columbia Court of Appeals by the Tenure Commission (or upon expiration of the time within which such an appeal may be taken) after a determination by the Tenure Commission of—

(A) willful misconduct in office,

(B) willful and persistent failure to perform judicial duties, or

(C) any other conduct which is prejudicial to the administration of justice or which brings the judicial office into disrepute.

(b) A judge of a District of Columbia court shall be involuntarily retired from office when (1) the Tenure Commission determines that the judge suffers from a mental or physical disability (including habitual intemperance) which is or is likely to become permanent and which prevents, or seriously interferes with, the proper performance of his judicial duties, and (2) the Tenure Commission files in the District of Columbia Court of Appeals an order of involuntary retirement and the order is affirmed on appeal or the time within which an appeal may be taken from the order has expired.

(c) (1) A judge of a District of Columbia court shall be suspended, without salary—

(A) upon—

(i) proof of his conviction of a crime referred to in subsection (a) (1) which has not become final, or

(ii) the filing of an order of removal under subsection (a) (2) which has not become final: and

(B) upon the filing by the Tenure Commission of an order of suspension in the District of Columbia Court of Appeals.

Suspension under this paragraph shall continue until termination of all appeals. If the conviction is reversed or the order of removal is set aside, the judge shall be reinstated and shall recover his salary and all rights and privileges of his office.

(2) A judge of a District of Columbia court shall be suspended from all judicial duties, with such retirement salary as he may be entitled, upon the filing by the Tenure Commission of an order of involuntary retirement under subsection (b) in the District of Columbia Court of Appeals. Suspension shall continue until termination of all appeals. If the order of involuntary retirement is set aside, the judge shall be reinstated and shall recover his judicial salary less any retirement salary received and shall be entitled to all the rights and privileges of his office.

(3) A judge of a District of Columbia court shall be suspended from all or part of his judicial duties, with salary, if the Tenure Commission, upon concurrence of five members, (A) orders a hearing for the removal or retirement of the judge pursuant to this subchapter and determines that his suspension is in the interest of the administration of justice, and (B) files an order of suspension in the District of Columbia Court of Appeals. The suspension shall terminate as specified in the order (which may be modified, as appropriate, by the Tenure Commission) but in no event later than the termination of all appeals.

NOMINATION AND APPOINTMENT OF JUDGES

SEC. 433. (a) Except as provided in section 434(d) (1), the President shall nominate, from the list of persons recommended to him by the District of Columbia Judicial Nomination Commission established under section 434, and, by and with the advice and consent of the Senate, appoint all judges of the District of Columbia courts.

(b) No person may be nominated or appointed a judge of a District of Columbia court unless he—

(1) is a citizen of the United States;

(2) is an active member of the unified District of Columbia Bar and has been engaged in the active practice of law in the District for the five years immediately preceding his nomination or for such five years has been on the faculty of a law school in

Qualifications.

the District, or has been employed as a lawyer by the United States or the District of Columbia government;

(3) is a bona fide resident of the District of Columbia and has maintained an actual place of abode in the District for at least ninety days immediately prior to his nomination, and shall retain such residency as long as he serves as such judge, except judges appointed prior to the effective date of this part who retain residency as required by section 1501(a) of title 11 of the District of Columbia Code shall not be required to be residents of the District to be eligible for reappointment or to serve any term to which reappointed;

84 Stat. 491.

(4) is recommended to the President, for such nomination and appointment, by the District of Columbia Judicial Nomination Commission; and

(5) has not served, within a period of two years prior to his nomination, as a member of the Tenure Commission or of the District of Columbia Judicial Nomination Commission.

**Declaration of candidacy for re-appointment.**

(c) Not less than three months prior to the expiration of his term of office, any judge of the District of Columbia courts may file with the Tenure Commission a declaration of candidacy for reappointment. If a declaration is not so filed by any judge, a vacancy shall result from the expiration of his term of office and shall be filled by appointment as provided in subsections (a) and (b). If a declaration is so filed, the

**Written performance evaluation, submittal to President.**

Tenure Commission shall, not less than thirty days prior to the expiration of the declaring candidate's term of office, prepare and submit to the President a written evaluation of the declaring candidate's performance during his present term of office and his fitness for reappointment to another term. If the Tenure Commission determines the declaring candidate to be exceptionally well qualified or well qualified for reappointment to another term, then the term of such declaring candidate shall be automatically extended for another full term, subject to mandatory retirement, suspension, or removal. If the Tenure Commission determines the declaring candidate to be qualified for reappointment to another term, then the President may nominate such candidate, in which case the President shall submit to the Senate for advice and consent the renomination of the declaring candidate as judge. If the President determines not to so nominate such declaring candidate, he shall nominate another candidate for such position only in accordance with the provisions of subsections (a) and (b). If the Tenure Commission determines the declaring candidate to be unqualified for reappointment to another term, then the President shall not submit to the Senate for advice and consent the renomination of the declaring candidate as judge and such judge shall not be eligible for reappointment or appointment as a judge of a District of Columbia court.

### DISTRICT OF COLUMBIA JUDICIAL NOMINATION COMMISSION

**Establishment; membership.**

SEC. 434. (a) There is established for the District of Columbia the District of Columbia Judicial Nomination Commission (hereafter in this section referred to as the "Commission"). The Commission shall consist of seven members selected in accordance with the provisions of subsection (b). Such members shall serve for terms of six years, except that the member selected in accordance with subsection (b)(4)(A) shall serve for five years; of the members first selected in accordance with subsection (b)(4)(B), one member shall serve for three years and one member shall serve for six years; of the members first selected in accordance with subsection (b)(4)(C), one member shall serve for a term of three years and one member shall serve for

five years; the member first selected in accordance with subsection
(b)(4)(D) shall serve for six years; and the member first appointed
in accordance with subsection (b)(4)(E) shall serve for six years.
In making the respective first appointments according to subsections
(b)(4)(B) and (b)(4)(C), the Mayor and the Board of Governors
of the unified District of Columbia Bar shall designate, at the time
of such appointments, which member shall serve for the shorter term
and which member shall serve for the longer term.

   (b)(1) No person may be appointed to the Commission unless he—    *Qualifications.*
      (A) is a citizen of the United States;
      (B) is a bona fide resident of the District and has maintained
an actual place of abode in the District for at least 90 days imme-
diately prior to his appointment; and
      (C) is not a member, officer, or employee of the legislative
branch or of an executive or military department or agency of the
United States (listed in sections 101 and 202 of title 5 of the
United States Code); and (except with respect to the person    *80 Stat. 378,*
appointed or designated according to subsection (b)(4)(D)) is    *948; 84 Stat. 775.*
not an officer or employee of the judicial branch of the United
States, or an officer or employee of the District government
(including its judicial branch).

   (2) Any vacancy on the Commission shall be filled in the same
manner in which the original appointment was made. Any person so
appointed to fill a vacancy occurring other than upon the expiration
of a prior term shall serve only for the remainder of the unexpired
term of his predecessor.

   (3) It shall be the function of the Commission to submit nominees
for appointment to positions as judges of the District of Columbia
courts in accordance with section 433 of this Act.

   (4) In addition to all other qualifications listed in this section, law-
yer members of the Commission shall have the qualifications pre-
scribed for persons appointed as judges for the District of Columbia
courts. Members of the Commission shall be appointed as follows:
      (A) One member shall be appointed by the President of the
United States.
      (B) Two members shall be appointed by the Board of Gov-
ernors of the unified District of Columbia Bar, both of whom
shall have been engaged in the practice of law in the District for
at least five successive years preceding their appointment.
      (C) Two members shall be appointed by the Mayor, one of
whom shall not be a lawyer.
      (D) One member shall be appointed by the Council, and shall
not be a lawyer.
      (E) One member shall be appointed by the chief judge of the
United States District Court for the District of Columbia, and
such member shall be an active or retired Federal judge serving
in the District.

   (5) Any member of the Commission who is an active or retired    *Compensation.*
Federal judge shall serve without additional compensation. Other
members shall receive the daily equivalent at the rate provided by
grade 18 of the General Schedule, established under section 5332 of
title 5 of the United States Code, while actually engaged in service    *5 USC 5332*
for the Commission.    *note.*

   (c)(1) The Commission shall act only at meetings called by the
Chairman or a majority of the Commission held after notice has been
given of such meeting to all Commission members.

   (2) The Commission shall choose annually, from among its mem-
bers, a Chairman, and such other officers as it may deem necessary.
The Commission may adopt such rules of procedures not inconsistent

with this Act as may be necessary to govern the business of the Commission.

Confidential
information,
availability.

(3) The District government shall furnish to the Commission, upon the request of the Commission, such records, information, services, and such other assistance and facilities as may be necessary to enable the Commission properly to perform its function. Information so furnished shall be treated by the Commission as privileged and confidential.

(d) (1) In the event of a vacancy in any position of the judge of a District of Columbia court, the Commission shall, within thirty days following the occurrence of such vacancy, submit to the President, for possible nomination and appointment, a list of three persons for each vacancy. If more than one vacancy exists at one given time, the Commission must submit lists in which no person is named more than once and the President may select more than one nominee from one list. Whenever a vacancy will occur by reason of the expiration of such a judge's term of office, the Commission's list of nominees shall be submitted to the President not less than thirty days prior to the occurrence of such vacancy. In the event the President fails to nominate, for Senate confirmation, one of the persons on the list submitted to him under this section within sixty days after receiving such list, the Commission shall nominate, and with the advice and consent of the Senate, appoint one of those persons to fill the vacancy for which such list was originally submitted to the President.

(2) In the event any person recommended by the Commission to the President requests that his recommendation be withdrawn, dies, or in any other way becomes disqualified to serve as a judge of the District of Columbia courts, the Commission shall promptly recommend to the President one person to replace the person originally recommended.

(3) In no instance shall the Commission recommend any person, who in the event of timely nomination following a recommendation by the Commission, does not meet, upon such nomination, the qualifications specified in section 433.

PART D—DISTRICT BUDGET AND FINANCIAL MANAGEMENT

Subpart 1—Budget and Financial Management

### FISCAL YEAR

SEC. 441. The fiscal year of the District shall begin on the first day of July and shall end on the thirtieth day of June of the succeeding calendar year. Such fiscal year shall also constitute the budget and accounting year.

### SUBMISSION OF ANNUAL BUDGET

SEC. 442. (a) At such time as the Council may direct, the Mayor shall prepare and submit to the Council each year, and make available to the public, an annual budget for the District of Columbia government which shall include—

(1) the budget for the forthcoming fiscal year in such detail as the Mayor determines necessary to reflect the actual financial condition of the District government for such fiscal year, and specify the agencies and purposes for which funds are being requested; and which shall be prepared on the assumption that proposed expenditures resulting from financial transactions undertaken on either an obligation or cash-outlay basis, for such fiscal

year shall not exceed estimated resources from existing sources
and proposed resources;

(2) an annual budget message which shall include supporting
financial and statistical information on the budget for the forth-
coming fiscal year and information on the approved budgets and
expenditures for the immediately preceding three fiscal years;

(3) a multiyear plan for all agencies of the District govern-
ment as required under section 443;

(4) a multiyear capital improvements plan for all agencies of
the District govenment as required under section 444;

(5) a program performance report comparing actual perform-
ance of as many programs as is practicable for the last completed
fiscal year against proposed goals for such programs for such year,
and, in addition, presenting as many qualitative or quantitative
measures of program effectiveness as possible (including results
of statistical sampling or other special analyses), and indicating
the status of efforts to comply with the reports of the District of
Columbia Auditor and the Comptroller General of the United
States;

(6) an issue analysis statement consisting of a reasonable num-
ber of issues, identified by the Council in its action on the budget
in the preceding fiscal year, having significant revenue or budg-
etary implications, and other similar issues selected by the Mayor,
which shall consider the cost and benefits of alternatives and the
rationale behind action recommended or adopted; and

(7) a summary of the budget for the forthcoming fiscal year
designed for distribution to the general public.

(b) The budget prepared and submitted by the Mayor shall include,
but not be limited to, recommended expenditures at a reasonable level
for the forthcoming fiscal year for the Council, the District of Colum-
bia Auditor, the District of Columbia Board of Elections, the District
of Columbia Judicial Nomination Commission, the Zoning Commis-
sion of the District of Columbia, the Public Service Commission, the
Armory Board, and the Commission on Judicial Disabilities and
Tenure.

(c) The Mayor from time to time may prepare and submit to the
Council such proposed supplemental or deficiency budget recom-
mendations as in his judgment are necessary on account of laws enacted
after transmission of the budget or are otherwise in the public interest.
The Mayor shall submit with such proposals a statement of justifica-
tions, including reasons for their omission from the annual budget.
Whenever such proposed supplemental or deficiency budget recom-
mendations are in an amount which would result in expenditures in
excess of estimated resources, the Mayor shall make such recommenda-
tions as are necessary to increase resources to meet such increased
expenditures.

*Supplemental
budget recom-
mendations, sub-
mittal to Council.*

### MULTIYEAR PLAN

SEC. 443. The Mayor shall prepare and include in the annual
budget a multiyear plan for all agencies included in the District
budget, for all sources of funding, and for such program categories as
the Mayor identifies. Such plan shall be based on the actual experience
of the immediately preceding three fiscal years, on the approved cur-
rent fiscal year budget, and on estimates for at least the four succeed-
ing fiscal years. The plan shall include, but not be limited to, provisions
identifying—

(1) future cost implications of maintaining programs at cur-
rently authorized levels, including anticipated changes in wage,
salary, and benefit levels;

(2) future cost implications of all capital projects for which funds have already been authorized, including identification of the amount of already appropriated but unexpended capital project funds;

(3) future cost implications of new, improved, or expanded programs and capital project commitments proposed for each of the succeeding four fiscal years;

(4) the effects of current and proposed capital projects on future operating budget requirements;

(5) revenues and funds likely to be available from existing revenue sources at current rates or levels;

(6) the specific revenue and tax measures recommended for the forthcoming fiscal year and for the next following fiscal year necessary to balance revenues and expenditures;

(7) the actuarial status and anticipated costs and revenues of retirement systems covering District employees; and

(8) total debt service payments in each fiscal year in which debt service payments must be made for all bonds which have been or will be issued, and all loans from the United States Treasury which have been or will be received, to finance the total cost on a full funding basis of all projects listed in the capital improvements plan prepared under section 444; and for each such fiscal year, the percentage relationship of the total debt service payments (with payments for issued and proposed bonds and loans from the United States Treasury, received or proposed, separately identified) to the bonding limitation for the current and forthcoming fiscal year as specified in section 603(b).

MULTIYEAR CAPITAL IMPROVEMENTS PLAN

SEC. 444. The Mayor shall prepare and include in the annual budget a multiyear capital improvements plan for all agencies of the District which shall be based upon the approved current fiscal year budget and shall include—

(1) the status, estimated period of usefulness, and total cost of each capital project on a full funding basis for which any appropriation is requested or any expenditure will be made in the forthcoming fiscal year and at least four fiscal years thereafter, including an explanation of change in total cost in excess of 5 per centum for any capital project included in the plan of the previous fiscal year;

(2) an analysis of the plan, including its relationship to other programs, proposals, or elements developed by the Mayor as the central planning agency for the District pursuant to section 423 of this Act;

(3) identification of the years and amounts in which bonds would have to be issued, loans made, and costs actually incurred on each capital project identified; and

(4) appropriate maps or other graphics.

DISTRICT OF COLUMBIA COURTS' BUDGET

SEC. 445. The District of Columbia courts shall prepare and annually submit to the Mayor, for inclusion in the annual budget, annual estimates of the expenditures and appropriations necessary for the maintenance and operation of the District of Columbia court system. All such estimates shall be forwarded by the Mayor to the Council, for its action pursuant to sections 446 and 603(c), without revision but subject to his recommendations. Notwithstanding any other provision

of this Act, the Council may comment or make recommendations concerning such annual estimates involving the expenditures and appropriations necessary for the maintenance and operation of the District of Columbia court system submitted by such courts but shall have no authority under this Act to revise such estimates. The courts shall submit as part of their budgets both a multiyear plan and a multiyear capital improvements plan and shall submit a statement presenting qualitative and quantitative descriptions of court activities and the status of efforts to comply with reports of the District of Columbia Auditor and the Comptroller General of the United States.

### ENACTMENT OF APPROPRIATIONS BY CONGRESS

Sec. 446. The Council, within fifty calendar days after receipt of the budget proposal from the Mayor, and after public hearing, shall by act adopt the annual budget for the District of Columbia government. Any supplements thereto shall also be adopted by act by the Council after public hearing. Such budget so adopted shall be submitted by the Mayor to the President for transmission by him to the Congress. No amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act. Notwithstanding any other provision of this Act, the Mayor shall not transmit any annual budget or amendments or supplements thereto, to the President of the United States until the completion of the budget procedures contained in this Act.

### CONSISTENCY OF BUDGET, ACCOUNTING, AND PERSONNEL SYSTEMS

Sec. 447. The Mayor shall implement appropriate procedures to insure that budget, accounting, and personnel control systems and structures are synchronized for budgeting and control purposes on a continuing basis. No employee shall be hired on a full-time or part-time basis unless such position is authorized by Act of Congress. Employees shall be assigned in accordance with the program, organization, and fund categories specified in the Act of Congress authorizing such position. Hiring of temporary employees and temporary employee transfers among programs shall be consistent with applicable Acts of Congress and reprogramming procedures to insure that costs are accurately associated with programs and sources of funding.

### FINANCIAL DUTIES OF THE MAYOR

Sec. 448. Subject to the limitations in section 603, the Mayor shall have charge of the administration of the financial affairs of the District and to that end he shall—

(1) supervise and be responsible for all financial transactions to insure adequate control of revenues and resources and to insure that appropriations are not exceeded;

(2) maintain systems of accounting and internal control designed to provide—

(A) full disclosure of the financial results of the District government's activities,

(B) adequate financial information needed by the District government for management purposes,

(C) effective control over and accountability for all funds, property, and other assets,

(D) reliable accounting results to serve as the basis for preparing and supporting agency budget requests and controlling the execution of the budget;

(3) submit to the Council a financial statement in any detail and at such times as the Council may specify;

(4) submit to the Council, by November 1 of each fiscal year, a complete financial statement and report for the preceding fiscal year;

(5) supervise and be responsible for the assessment of all property subject to assessment and special assessments within the corporate limits of the District for taxation, prepare tax maps, and give such notice of taxes and special assessments, as may be required by law;

(6) supervise and be responsible for the levying and collection of all taxes, special assessments, license fees, and other revenues of the District, as required by law, and receive all moneys receivable by the District from the Federal Government or from any court, agency, or instrumentality of the District;

(7) have custody of all public funds belonging to or under the control of the District, or any agency of the District government, and deposit all funds coming into his hands, in such depositories as may be designated and under such terms and conditions as may be prescribed by act of the Council;

(8) have custody of all investments and invested funds of the District government, or in possession of such government in a fiduciary capacity, and have the safekeeping of all bonds and notes of the District and the receipt and delivery of District bonds and notes for transfer, registration or exchange; and

(9) apportion the total of all appropriations and funds made available during the fiscal year for obligation so as to prevent obligation or expenditure thereof in a manner which would indicate a necessity for deficiency or supplemental appropriations for such fiscal year, and with respect to all appropriations or funds not limited to a definite period, and all authorizations to create obligations by contract in advance of appropriations, apportion the total of such appropriations or funds or authorizations so as to achieve the most effective and economical use thereof.

ACCOUNTING SUPERVISION AND CONTROL

SEC. 449. The Mayor shall—

(a) prescribe the forms of receipts, vouchers, bills and claims to be used by all the agencies, offices, and instrumentalities of the District government;

(b) examine and approve all contracts, orders, and other documents by which the District government incurs financial obligations, having previously ascertained that money has been appropriated and allotted and will be available when the obligations shall become due and payable;

(c) audit and approve before payment all bills, invoices, payrolls, and other evidences of claims, demands, or charges against the District government and with the advice of the legal officials of the District determine the regularity, legality, and correctness of such claims, demands, or charges; and

(d) perform internal audits of accounts and operations and agency records of the District government, including the examination of any accounts or records of financial transactions, giving due consideration to the effectiveness of accounting systems, internal control, and related administrative practices of the respective agencies.

## GENERAL AND SPECIAL FUNDS

Sec. 450. The general fund of the District shall be composed of those District revenues which on the effective date of this title are paid into the Treasury of the United States and credited either to the general fund of the District or its miscellaneous receipts, but shall not include any revenues which are applied by law to any special fund existing on the date of enactment of this title. The Council may from time to time establish such additional special funds as may be necessary for the efficient operation of the government of the District. All money received by any agency, officer, or employee of the District in its or his official capacity shall belong to the District government and shall be paid promptly to the Mayor for deposit in the appropriate fund.

## CONTRACTS EXTENDING BEYOND ONE YEAR

Sec. 451. No contract involving expenditures out of an appropriation which is available for more than one year shall be made for a period of more than five years unless, with respect to a particular contract, the Council, by a two-thirds vote of its members present and voting, authorizes the extension of such period for such contract. Such contracts shall be made pursuant to criteria established by act of the Council.

## ANNUAL BUDGET FOR THE BOARD OF EDUCATION

Sec. 452. With respect to the annual budget for the Board of Education in the District of Columbia, the Mayor and the Council may establish the maximum amount of funds which will be allocated to the Board, but may not specify the purposes for which such funds may be expended or the amount of such funds which may be expended for the various programs under the jurisdiction of the Board of Education.

### Subpart 2—Audit

#### DISTRICT OF COLUMBIA AUDITOR

Sec. 455. (a) There is established for the District of Columbia the Office of District of Columbia Auditor who shall be appointed by the Chairman, subject to the approval of a majority of the Council. The District of Columbia Auditor shall serve for a term of six years and shall be paid at a rate of compensation as may be established from time to time by the Council. *Office of District of Columbia Auditor. Establishment.*

(b) The District of Columbia Auditor shall each year conduct a thorough audit of the accounts and operations of the government of the District in accordance with such principles and procedures and under such rules and regulations as he may prescribe. In the determination of the auditing procedures to be followed and the extent of the examination of vouchers and other documents and records, the District of Columbia Auditor shall give due regard to generally accepted principles of auditing including the effectiveness of the accounting organizations and systems, internal audit and control, and related administrative practices.

(c) The District of Columbia Auditor shall have access to all books, accounts, records, reports, findings and all other papers, things, or property belonging to or in use by any department, agency, or other instrumentality of the District government and necessary to facilitate the audit. *Records, accessibility.*

(d) The District of Columbia Auditor shall submit his audit reports to the Congress, the Mayor, and the Council. Such reports shall set forth the scope of the audits conducted by him and shall include such *Audit reports, submittal to Congress, Mayor, and Council.*

comments and information as the District of Columbia Auditor may deem necessary to keep the Congress, the Mayor, and the Council informed of the operations to which the reports relate, together with such recommendations with respect thereto as he may deem advisable.

*Public information.*

(e) The Council shall make such report, together with such other material as it deems pertinent thereto, available for public inspection.

(f) The Mayor shall state in writing to the Council, within an appropriate time, what action he has taken to effectuate the recommendations made by the District of Columbia Auditor in his reports.

PART E—BORROWING

Subpart 1—Borrowing

DISTRICT'S AUTHORITY TO ISSUE AND REDEEM GENERAL OBLIGATION BONDS FOR CAPITAL PROJECTS

SEC. 461. (a) Subject to the limitations in section 603(b), the District may incur indebtedness by issuing general obligation bonds to refund indebtedness of the District at any time outstanding and to provide for the payment of the cost of acquiring or undertaking its various capital projects. Such bonds shall bear interest, payable annually or semi-annually, at such rate and at such maturities as the Mayor, subject to the provisions of section 462 of this Act, may from time to time determine to be necessary to make such bonds marketable.

(b) The District may reserve the right to redeem any or all of its obligations before maturity in such manner and at such price as may be fixed by the Mayor prior to the issuance of such obligations.

CONTENTS OF BORROWING LEGISLATION

SEC. 462. The Council may by act authorize the issuance of general obligation bonds for the purposes specified in section 461. Such an act shall contain, at least, provisions—

(1) briefly describing each such project;

(2) identifying the Act authorizing each such project;

(3) setting forth the maximum amount of the principal of the indebtedness which may be incurred for each such project;

(4) setting forth the maximum rate of interest to be paid on such indebtedness;

(5) setting forth the maximum allowable maturity for the issue and the maximum debt service payable in any year; and

(6) setting forth, in the event that the Council determines in its discretion, to submit the question of issuing such bonds to a vote of the qualified voters of the District, the manner of holding such election, the manner of voting for or against the incurring of such indebtedness, and the form of ballot to be used at such election.

PUBLICATION OF BORROWING LEGISLATION

SEC. 463. The Mayor shall publish any act authorizing the issuance of general obligation bonds at least once within five days after the enactment thereof, together with a notice of the enactment thereof in substantially the following form:

"NOTICE

"The following act (published herewith) authorizing the issuance of general obligation bonds, has become effective. The time

SA36

within which a suit, action, or proceeding questioning the validity of such bonds can be commenced, will expire twenty days from the date of the first publication of this notice, as provided in the District of Columbia Self-Government and Governmental Reorganization Act.

*Ante, p. 774.*

"_____ _____,
    "Mayor."

### SHORT PERIOD OF LIMITATION

SEC. 464. At the end of the twenty-day period beginning on the date of publication of the notice of the enactment of an act authorizing the issuance of general obligation bonds without the submission of the proposition for the issuance thereof to the qualified voters, or upon the expiration of twenty days from the date of publication of the promulgation of the results of an election upon the proposition of issuing bonds, as the case may be—

(1) any recitals or statements of fact contained in such act or in the preambles or the titles thereof or in the results of the election of any proceedings in connection with the calling, holding, or conducting of election upon the issuance of such bonds shall be deemed to be true for the purpose of determining the validity of the bonds thereby authorized, and the District and all others interested shall thereafter be estopped from denying same;

(2) such act and all proceedings in connection with the authorization of the issuance of such bonds shall be conclusively presumed to have been duly and regularly taken, passed, and done by the District and the Board of Elections in full compliance with the provisions of this Act and of all laws applicable thereto; and

(3) the validity of such act and said proceedings shall not thereafter be questioned by either a party plaintiff or a party defendant, and no court shall have jurisdiction in any suit, action, or proceeding questioning the validity of same, except in a suit, action, or proceeding commenced prior to the expiration of such twenty-day period.

### ACTS FOR ISSUANCE OF GENERAL OBLIGATION BONDS

SEC. 465. At the end of the twenty-day period specified in section 464, the Council may by act establish an issue of general obligation bonds as authorized pursuant to the provisions of sections 461 to 465 inclusive, hereof. An issue of general obligation bonds is hereby defined to be all or any part of an aggregate principal amount of bonds authorized pursuant to such sections, but no indebtedness shall be deemed to have been incurred within the meaning of this Act until such bonds have been sold, delivered, and paid for, and then only to the extent of the principal amount of such bonds so sold and delivered. The bonds of each issue shall be payable in annual installments beginning not more than three years after the date of such bonds and ending not more than thirty years from such date. The amount of said issues to be payable in each year shall be so fixed that when the annual interest is added to the principal amount payable in each year, the total amount payable either serially or to a sinking fund shall be substantially equal. It shall be an immaterial variance if the difference between the largest and smallest amounts of principal and interest so payable during each fiscal year during the term of the general obligation bonds does not exceed 3 per centum of the total authorized amount of such series. Such bonds and coupons may be executed by the facsimile signatures of the officer designated by the act authorizing such bonds, to sign the bonds, within the exception that at least one signature shall

be manual. Such bonds may be issued in coupon form in the denomination of $1,000, or $1,000 and $5,000, registerable as to principal only or as to both principal and interest, and if registered as to both principal and interest may be issuable in denominations of multiples of $1,000. Such bonds and the interest thereon may be payable at such place or places within or without the District as the Council may determine.

### PUBLIC SALE

Sec. 466. All general obligation bonds issued under this part shall be sold at public sale upon sealed proposals after publication of a notice of such sale at least once not less than ten days prior to the date fixed for sale in a daily newspaper carrying municipal bond notices and devoted primarily to financial news or to the subject of State and municipal bonds published in the city of New York, New York, and in one or more newspapers of general circulation published in the District. Such notice shall state, among other things, that no proposal shall be considered unless there is deposited with the District as a downpayment a certified check or cashier's check for an amount equal to at least 2 per centum of the par amount of general obligation bonds bid for, and the Council shall reserve the right to reject any and all bids.

## Subpart 2—Short-Term Borrowing

### BORROWING TO MEET APPROPRIATIONS

Sec. 471. In the absence of unappropriated available revenues to meet appropriations made pursuant to section 446, the Council may by act authorize the issuance of negotiable notes, in a total amount not to exceed 2 per centum of the total appropriations for the current fiscal year, each of which may be renewed from time to time, but all such notes and renewals thereof shall be paid not later than the close of the fiscal year following that in which such act becomes effective.

### BORROWING IN ANTICIPATION OF REVENUES

Sec. 472. For any fiscal year, in anticipation of the collection or receipt of revenues of that fiscal year, the Council may by act authorize the borrowing of money by the execution of negotiable notes of the District, not to exceed in the aggregate at any time outstanding 20 per centum of the total anticipated revenue, each of which shall be designated "Revenue Note for the Fiscal Year 19__". Such notes may be renewed from time to time, but all such notes, together with the renewals, shall mature and be paid not later than the end of the fiscal year for which the original notes have been issued.

### NOTES REDEEMABLE PRIOR TO MATURITY

Sec. 473. No notes issued pursuant to this part shall be made payable on demand, but any note may be made subject to redemption prior to maturity on such notice and at such time as may be stated in the note.

### SALES OF NOTES

Sec. 474. All notes issued pursuant to this part may be sold at not less than par and accrued interest at private sale without previous advertising.

Subpart 3—Payment of Bonds and Notes

### SPECIAL TAX

SEC. 481. (a) The act of the Council authorizing the issuance of general obligation bonds pursuant to this title, shall, where necessary, provide for the levy annually of a special tax or charge without limitation as to rate or amount in amounts which, together with other revenues of the District available and applicable for said purposes, will be sufficient to pay the principal of and interest on such bonds and the premium, if any, upon the redemption thereof, as the same respectively become due and payable, which tax shall be levied and collected at the same time and in the same manner as other District taxes are levied and collected, and when collected shall be set aside in a sinking fund and irrevocably dedicated to the payment of such principal, interest, and premium.

(b) The full faith and credit of the District shall be and is hereby pledged for the payment of the principal of and the interest on all general obligation bonds and notes of the District hereafter issued pursuant to subparts 1, 2, and 3 of part E of this title whether or not such pledge be stated in such bonds or notes or in the act authorizing the issuance thereof.

(c)(1) As soon as practicable following the beginning of each fiscal year, the Mayor shall review the amounts of District revenues which have been set aside and deposited in a sinking fund as provided in subsection (a). Such review shall be carried out with a view to determining whether the amounts so set aside and deposited are sufficient to pay the principal of and interest on general obligation bonds issued pursuant to this title, and the premium (if any) upon the redemption thereof, as the same respectively become due and payable. To the extent that the Mayor determines that sufficient District revenues have not been so set aside and deposited, the Federal payment made for the fiscal year within which such review is conducted shall be first utilized to make up any deficit in such sinking fund.

*Review.*

(2) The Comptroller General of the United States shall make annual audits of the amounts set aside and deposited in the sinking fund.

Subpart 4—Tax Exemption; Legal Investment; Water Pollution; Reservoirs; Metro Contributions; and Revenue Bonds

### TAX EXEMPTION

SEC. 485. Bonds and notes issued by the Council pursuant to this title and the interest thereon shall be exempt from all Federal and District taxation except estate, inheritance, and gift taxes.

### LEGAL INVESTMENT

SEC. 486. Notwithstanding any restriction on the investment of funds by fiduciaries contained in any other law, all domestic insurance companies, domestic insurance associations, executors, administrators, guardians, trustees, and other fiduciaries within the District may legally invest any sinking funds, moneys, trust funds, or other funds belonging to them or under or within their control in any bonds issued pursuant to this title, it being the purpose of this section to authorize the investment in such bonds or notes of all sinking, insurance, retirement, compensation, pension, and trust funds. National banking associations are authorized to deal in, underwrite, purchase and sell, for their own accounts or for the accounts of customers, bonds and notes issued by the Council to the same extent as national banking associa-

tions are authorized by paragraph seven of section 5136 of the Revised Statutes (12 U.S.C. 24), to deal in, underwrite, purchase and sell obligations of the United States, States, or political subdivisions thereof. All Federal building and loan associations and Federal savings and loan associations; and banks, trust companies, building and loan associations, and savings and loan associations, domiciled in the District, may purchase, sell, underwrite, and deal in, for their own account or for the account of others, all bonds or notes issued pursuant to this title. Nothing contained in this section shall be construed as relieving any person, firm, association, or corporation from any duty of exercising due and reasonable care in selecting securities for purchase or investment.

### WATER POLLUTION

SEC. 487. (a) The Mayor shall annually estimate the amount of the District's principal and interest expense which is required to service District obligations attributable to the Maryland and Virginia pro rata share of District sanitary sewage water works and other water pollution projects which provide service to the local jurisdictions in those States. Such amounts as determined by the Mayor pursuant to the agreements described in subsection (b) shall be used to exclude the Maryland and Virginia share of pollution projects cost from the limitation on the District's capital project obligations as provided in section 603(b).

(b) The Mayor shall enter into agreements with the States and local jurisdictions concerned for annual payments to the District of rates and charges for waste treatment services in accordance with the use and benefits made and derived from the operation of the said waste treatment facilities. Each such agreement shall require that the estimated amount of such rates and charges will be paid in advance, subject to adjustment after each year. Such rates and charges shall be sufficient to cover the cost of construction, interest on capital, operation and maintenance, and the necessary replacement of equipment during the useful life of the facility.

### COST OF RESERVOIRS ON POTOMAC RIVER

Contract authority.

SEC. 488. (a) The Mayor is authorized to contract with the United States, any State in the Potomac River Basin, any agency or political subdivision thereof, and any other competent State or local authority, with respect to the payment by the District to the United States, either directly or indirectly, of the District's equitable share of any part or parts of the non-Federal portion of the costs of any reservoirs authorized by the Congress for construction on the Potomac River or any of its tributaries. Every such contract may contain such provisions as the Mayor may deem necessary or appropriate.

(b) Unless hereafter otherwise provided by legislation enacted by the Council, all payments made by the District and all moneys received by the District pursuant to any contract made under the authority of this Act shall be paid from, or be deposited in, a fund designated by the Mayor. Charges for water delivered from the District water system for use outside the District may be adjusted to reflect the portions of any payments made by the District under contracts authorized by this Act which are equitably attributable to such use outside the District.

### DISTRICT'S CONTRIBUTIONS TO THE WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

SEC. 489. Notwithstanding any provision of law to the contrary, beginning with fiscal year 1976 the District share of the cost of the

Adopted Regional System described in the National Capital Transportation Act of 1969 (83 Stat. 320), may be payable from the proceeds of the sale of District general obligation bonds issued pursuant to this title.

D.C. Code 1-1441 note.

### REVENUE BONDS AND OTHER OBLIGATIONS

Sec. 490. (a) The Council may by act issue revenue bonds, notes, or other obligations (including refunding bonds, notes, or other obligations) to borrow money to finance or assist in the financing of undertakings in the areas of housing, health facilities, transit and utility facilities, recreational facilities, college and university facilities, and industrial and commercial development. Such bonds, notes, or other obligations shall be fully negotiable and payable, as to both principal and interest, solely from and secured solely by a pledge of the revenues realized from the property, facilities, developments, and improvements whose financing is undertaken by the issuance of such bonds, notes, or other obligations, including existing facilities to which such new facilities and improvements are related, which financing may be effected through loans made directly or indirectly (including the purchase of mortgages, in those cases described in subsection (b) of this section, notes, or other securities) to any public, quasi-public, or private corporation, partnership, association, person, or other legal entity.

(b) Except in the case of housing, recreation, commercial and industrial development, the property, facilities, developments, and improvements being financed may not be mortgaged as additional security for bonds, notes, or other obligations, but in no event shall any property owned by the District of Columbia or the United States be mortgaged for the purpose of this section.

(c) Any and all such bonds, notes, or other obligations shall not be general obligations of the District and shall not be a pledge of or involve the faith and credit or the taxing power of the District, shall not constitute a debt of the District, and shall not constitute lending of the public credit for private undertakings as contained in section 602(a)(2).

(d) Any and all such bonds, notes, or other obligations shall be issued pursuant to an act of the Council without the necessity of submitting the question of such issuance to the registered qualified electors of the District for approval or disapproval.

(e) Any such act may contain provisions—

    (1) briefly describing the purpose for which such bond, note, or other obligation is to be issued;

    (2) identifying the Act authorizing such purpose;

    (3) prescribing the form, terms, provisions, manner or method of issuing and selling (including negotiated as well as competitive bid sale), and the time of issuance, of such bonds, notes, or other obligations; and

    (4) prescribing any and all other details with respect to any such bonds, notes, or other obligations and the issuance and sale thereof.

The act may authorize and empower the Mayor to do any and all things necessary, proper, or expedient in connection with the issuance and sale of such notes, bonds, or other obligations authorized to be issued under the provisions of this section.

### PART F—INDEPENDENT AGENCIES

#### BOARD OF ELECTIONS

Sec. 491. Section 3 of the District of Columbia Elections Act (D.C. Code, sec. 1–1103) is amended to read as follows:

69 Stat. 699.

"Sec. 3. (a) There is created a District of Columbia Board of Elections (hereafter in this section referred to as the 'Board'), to be composed of three members, no more than two of whom shall be of the same political party, appointed by the Mayor, with the advice and consent of the Council. Members shall be appointed to serve for terms of three years, except of the members first appointed under this Act. One member shall be appointed to serve for a one-year term, one member shall be appointed to serve for a two-year term, and one member shall be appointed to serve for a three-year term, as designated by the Mayor.

"(b) Any person appointed to fill a vacancy on the Board shall be appointed only for the unexpired term of the member whose vacancy he is filling.

"(c) A member may be reappointed, and, if not reappointed, the member shall serve until his successor has been appointed and qualifies.

"(d) The Mayor shall, from time to time, designate the Chairman of the Board."

### ZONING COMMISSION

41 Stat. 500;
48 Stat. 389.

Sec. 492. (a) The first section of the Act of March 1, 1920 (D.C. Code, sec. 5–412) is amended to read as follows: "That (a) to protect the public health, secure the public safety, and to protect property in the District of Columbia there is created a Zoning Commission for the District of Columbia, which shall consist of the Architect of the Capitol, the Director of the National Park Service, and three members appointed by the Mayor, by and with the advice and consent of the Council. Each member appointed by the Mayor shall serve for a term of four years, except of the members first appointed under this section—

"(1) one member shall serve for a term of two years, as determined by the Mayor;

"(2) one member shall serve for a term of three years, as determined by the Mayor; and

"(3) one member shall serve for a term of four years, as determined by the Mayor.

"(b) Members of the Zoning Commission appointed by the Mayor shall be entitled to receive compensation as determined by the Mayor, with the approval of a majority of the Council. The remaining members shall serve without additional compensation.

"(c) Members of the Zoning Commission appointed by the Mayor may be reappointed. Each member shall serve until his successor has been appointed and qualifies.

"(d) The Chairman of the Zoning Commission shall be selected by the members.

"(e) The Zoning Commission shall exercise all the powers and perform all the duties with respect to zoning in the District as provided by law.".

(b) The Act of June 20, 1938 (D.C. Code, sec. 5–413, et seq.) is amended as follows:

52 Stat. 797.

(1) The first sentence of section 2 of such Act (D.C. Code, sec. 5–414) is amended by striking out "Such regulations shall be made in accordance with a comprehensive plan and" and inserting in lieu thereof "Zoning maps and regulations, and amendments thereto, shall not be inconsistent with the comprehensive plan for the National Capital, and zoning regulations shall be".

52 Stat. 798.

(2) Section 5 of such Act (D.C. Code, sec. 5–417) is amended to read as follows:

"Sec. 5. (a) No zoning regulation or map, or any amendment thereto, may be adopted by the Zoning Commission until the Zoning Commission—

SA42

"(1) has held a public hearing, after notice, on such proposed regulation, map, or amendment; and

"(2) after such public hearing, submitted such proposed regulation, map, or amendment to the National Capital Planning Commission for comment and review.

If the National Capital Planning Commission fails to submit its comments regarding any such regulation, map, or amendment within thirty days after submission of such regulation, map, or amendment to it, then the Zoning Commission may proceed to act upon the proposed regulation, map, or amendment without further comment from the National Capital Planning Commission.

"(b) The notice required by clause (1) of subsection (a) shall be published at least thirty days prior to such public hearing and shall include a statement as to the time and place of the hearing and a summary of all changes in existing zoning regulations which would be made by adoption of the proposed regulation, map, or amendment. The Zoning Commission shall give such additional notice as it deems expedient and practicable. All interested persons shall be given a reasonable opportunity to be heard at such public hearing. If the hearing is adjourned from time to time, the time and place of reconvening shall be publicly announced prior to adjournment. *Hearing notice.*

"(c) The Zoning Commission shall deposit with the National Capital Planning Commission all zoning regulations, maps, or amendments thereto, adopted by it."

### PUBLIC SERVICE COMMISSION

SEC. 493. (a) There shall be a Public Service Commission whose function shall be to insure that every public utility doing business within the District of Columbia is required to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable. The charge made by any such public utility for any facility or services furnished, or rendered, or to be furnished or rendered, shall be reasonable, just, and nondiscriminatory. Every unjust or unreasonable or discriminating charge for such facility or service is prohibited and is hereby declared unlawful.

"(b) The first sentence of paragraph 97(a) of section 8 of the Act of March 4, 1913 (making appropriations for the government of the District of Columbia) (D.C. Code, sec. 43–201), is amended to read as follows: "The Public Service Commission of the District of Columbia shall be composed of three Commissioners appointed by the Mayor by and with the advice and consent of the Council.". *37 Stat. 995; 78 Stat. 634.*

### ARMORY BOARD

SEC. 494. The first sentence of section 2 of the Act of June 4, 1948 (D.C. Code, sec. 2–1702), is amended to read as follows: "There is established an Armory Board, to be composed of the commanding general of the District of Columbia Militia, and two other members appointed by the Mayor of the District of Columbia by and with the advice and consent of the Council of the District of Columbia. The members appointed by the Mayor shall each serve for a term of four years beginning on the date such member qualifies.". *62 Stat. 339.*

### BOARD OF EDUCATION

SEC. 495. The control of the public schools in the District of Columbia is vested in a Board of Education to consist of eleven elected members, three of whom are to be elected at large, and one to be elected from each of the eight school election wards established under the District

69 Stat. 699;
85 Stat. 788.
D.C. Code 1-
1101 note.

of Columbia Election Act. The election of the members of the Board of Education shall be conducted on a nonpartisan basis and in accordance with such Act.

# TITLE V—FEDERAL PAYMENT

### DUTIES OF THE MAYOR, COUNCIL, AND FEDERAL OFFICE OF MANAGEMENT AND BUDGET

Sec. 501. (a) It shall be the duty of the Mayor in preparing an annual budget for the government of the District to develop meaningful intercity expenditure and revenue comparisons based on data supplied by the Bureau of the Census, and to identify elements of cost and benefits to the District which result from the unusual role of the District as the Nation's Capital. The results of the studies conducted by the Mayor under this subsection shall be made available to the Council and to the Federal Office of Management and Budget for their use in reviewing and revising the Mayor's request with respect to the level of the appropriation for the annual Federal payment to the District. Such Federal payment should operate to encourage efforts on the part of the government of the District to maintain and increase its level of revenues and to seek such efficiencies and economies in the management of its programs as are possible.

(b) The Mayor, in studying and identifying the costs and benefits to the District brought about by its role as the Nation's Capital, should to the extent feasible, among other elements, consider—

(1) revenues unobtainable because of the relative lack of taxable commercial and industrial property;

(2) revenues unobtainable because of the relative lack of taxable business income;

(3) potential revenues that would be realized if exemptions from District taxes were eliminated;

(4) net costs, if any, after considering other compensation for tax base deficiencies and direct and indirect taxes paid, of providing services to tax-exempt nonprofit organizations and corporate offices doing business only with the Federal Government;

(5) recurring and nonrecurring costs of unreimbursed services to the Federal Government;

(6) other expenditure requirements placed on the District by the Federal Government which are unique to the District;

(7) benefits of Federal grants-in-aid relative to aid given other States and local governments;

(8) recurring and nonrecurring costs of unreimbursed services rendered the District by the Federal Government; and

(9) relative tax burden on District residents compared to that of residents in other jurisdictions in the Washington, District of Columbia, metropolitan area and in other cities of comparable size.

Federal payment
request.

Submittal to
President.

42 Stat. 20.

(c) The Mayor shall submit his request, with respect to the amount of an annual Federal payment, to the Council. The Council shall by act approve, disapprove, or modify the Mayor's request. After the action of the Council, the Mayor shall, by December 1 of each calendar year, in accordance with the provisions in the Budget and Accounting Act, 1921 (31 U.S.C. 2), submit such request to the President for submission to the Congress. Each request regarding an annual Federal payment shall be submitted to the President seven months prior to the beginning of the fiscal year for which such request is made and shall include a request for an annual Federal payment for the next following fiscal year.

### AUTHORIZATION OF APPROPRIATIONS

SEC. 502. Notwithstanding any other provision of law, there is authorized to be appropriated as the annual Federal payment to the District of Columbia for the fiscal year ending June 30, 1975, the sum of $230,000,000; for the fiscal year ending June 30, 1976, the sum of $254,000,000; for the fiscal year ending June 30, 1977, the sum of $280,000,000; for the fiscal year ending June 30, 1978, and for each fiscal year thereafter, the sum of $300,000,000.

# TITLE VI—RESERVATION OF CONGRESSIONAL AUTHORITY

### RETENTION OF CONSTITUTIONAL AUTHORITY

SEC. 601. Notwithstanding any other provision of this Act, the Congress of the United States reserves the right, at any time, to exercise its constitutional authority as legislature for the District, by enacting legislation for the District on any subject, whether within or without the scope of legislative power granted to the Council by this Act, including legislation to amend or repeal any law in force in the District prior to or after enactment of this Act and any act passed by the Council.

### LIMITATIONS ON THE COUNCIL

SEC. 602. (a) The Council shall have no authority to pass any act contrary to the provisions of this Act except as specifically provided in this Act, or to—

(1) impose any tax on property of the United States or any of the several States;

(2) lend the public credit for support of any private undertaking;

(3) enact any act, or enact any act to amend or repeal any Act of Congress, which concerns the functions or property of the United States or which is not restricted in its application exclusively in or to the District;

(4) enact any act, resolution, or rule with respect to any provision of title 11 of the District of Columbia Code (relating to organization and jurisdiction of the District of Columbia courts); *D.C. Code 11-101.*

(5) impose any tax on the whole or any portion of the personal income, either directly or at the source thereof, of any individual not a resident of the District (the terms "individual" and "resident" to be understood for the purposes of this paragraph as they are defined in section 4 of title I of the District of Columbia Income and Franchise Tax Act of 1947); *61 Stat. 332; 83 Stat. 176. D.C. Code 47-1551c.*

(6) enact any act, resolution, or rule which permits the building of any structure within the District of Columbia in excess of the height limitations contained in section 5 of the Act of June 1, 1910 (D.C. Code, sec. 5–405), and in effect on the date of enactment of this Act; *36 Stat. 452; 75 Stat. 583.*

(7) enact any act, resolution, or regulation with respect to the Commission on Mental Health;

(8) enact any act or regulation relating to the United States District Court for the District of Columbia or any other court of the United States in the District other than the District courts, or relating to the duties or powers of the United States attorney or the United States Marshal for the District of Columbia; or

(9) enact any act, resolution, or rule with respect to any provision of title 23 of the District of Columbia Code (relating to criminal procedure), or with respect to any provision of any law codified in title 22 or 24 of the District of Columbia Code *D.C. Code 23-101.*

D.C. Code 22-
101, 24-101.

(relating to crimes and treatment of prisoners) during the twenty-four full calendar months immediately following the day on which the members of the Council first elected pursuant to this Act take office.

(b) Nothing in this Act shall be construed as vesting in the District government any greater authority over the National Zoological Park, the National Guard of the District of Columbia, the Washington Aqueduct, the National Capital Planning Commission, or, except as otherwise specifically provided in this Act, over any Federal agency, than was vested in the Commissioner prior to the effective date of title IV of this Act.

*Post*, p. 836.

(c) (1) Except acts of the Council which are submitted to the President in accordance with the Budget and Accounting Act, 1921, any act which the Council determines according to section 412(a), should take effect immediately because of emergency circumstances, and acts proposing amendments to title IV of this Act, the Chairman of the Council shall transmit to the Speaker of the House of Representatives, and the President of the Senate a copy of each act passed by the Council and signed by the Mayor, or vetoed by the Mayor and repassed by two-thirds of the Council present and voting (and with respect to which the President has not sustained the Mayor's veto), and every act passed by the Council and allowed to become effective by the Mayor without his signature. Except as provided in paragraph (2), no such act shall take effect until the end of the 30-day period (excluding Saturdays, Sundays, and holidays, and any day on which either House is not in session) beginning on the day such act is transmitted by the Chairman to the Speaker of the House of Representatives and the President of the Senate and then only if during such 30-day period both Houses of Congress do not adopt a concurrent resolution disapproving such act. The provisions of section 604, except subsections (d), (e), and (f) of such section, shall apply with respect to any concurrent resolution disapproving any act pursuant to this paragraph.

42 Stat. 20.
31 USC 1.
*Ante*, p. 788.

D.C. acts,
transmittal to
Speaker of the
House and Presi-
dent of the Senate.

D.C. Code 22-
101 to 24-101.

(2) In the case of any such act transmitted by the Chairman with respect to any Act codified in titles 22, 23, or 24 of the District of Columbia Code, such act shall take effect at the end of the 30-day period beginning on the day such act is transmitted by the Chairman to the Speaker of the House of Representatives and the President of the Senate only if during such 30-day period one House of Congress does not adopt a resolution disapproving such act. The provisions of section 604, relating to an expedited procedure for consideration of resolutions, shall apply to a simple resolution disapproving such act as specified in this paragraph.

BUDGET PROCESS; LIMITATIONS ON BORROWING AND SPENDING

SEC. 603. (a) Nothing in this Act shall be construed as making any change in existing law, regulation, or basic procedure and practice relating to the respective roles of the Congress, the President, the Federal Office of Management and Budget, and the Comptroller General of the United States in the preparation, review, submission, examination, authorization, and appropriation of the total budget of the District of Columbia government.

(b)(1) No general obligation bonds (other than bonds to refund outstanding indebtedness) or Treasury capital project loans shall be issued during any fiscal year in an amount which would cause the amount of principal and interest required to be paid both serially and into a sinking fund in any fiscal year on the aggregate amounts of all outstanding general obligation bonds and such Treasury loans, to exceed 14 per centum of the District revenues (less court fees, any

fees or revenues directed to servicing revenue bonds, retirement contributions, revenues from retirement systems, and revenues derived from such Treasury loans and the sale of general obligation or revenue bonds) which the Mayor estimates, and the District of Columbia Auditor certifies, will be credited to the District during the fiscal year in which the bonds will be issued. Treasury capital project loans include all borrowings from the United States Treasury, except those funds advanced to the District by the Secretary of the Treasury under the provisions of section 2501, title 47 of the District of Columbia Code, as amended.

(2) Obligations incurred pursuant to the authority contained in the District of Columbia Stadium Act of 1957 (71 Stat. 619; D.C. Code title 2, chapter 17, subchapter II), and obligations incurred by the agencies transferred or established by sections 201 and 202, whether incurred before or after such transfer or establishment, shall not be included in determining the aggregate amount of all outstanding obligations subject to the limitation specified in the preceding subsection.

50 Stat. 692;<br>58 Stat. 533.<br><br>D.C. Code 2-<br>1720.<br>*Ante,* p. 778.

(3) The 14 per centum limitation specified in paragraph (1) shall be calculated in the following manner:

(A) Determine the dollar amount equivalent to 14 percent of the District revenues (less court fees, any fees or revenues directed to servicing revenue bonds, retirement contributions, revenues from retirement systems, and revenues derived from such Treasury loans and the sale of general obligation or revenue bonds) which the Mayor estimates, and the District of Columbia Auditor certifies, will be credited to the District during the fiscal year for which the bonds will be issued.

(B) Determine the actual total amount of principal and interest to be paid in each fiscal year for all outstanding general obligation bonds and such Treasury loans.

(C) Determine the amount of principal and interest to be paid during each fiscal year over the term of the proposed general obligation bond or such Treasury loan to be issued.

(D) If in any one fiscal year the sum arrived at by adding subparagraphs (B) and (C) exceeds the amount determined under subparagraph (A), then the proposed general obligation bond or such Treasury loan in subparagraph (C) cannot be issued.

(c) The Council shall not approve any budget which would result in expenditures being made by the District Government, during any fiscal year, in excess of all resources which the Mayor estimates will be available from all funds available to the District for such fiscal year. The budget shall identify any tax increases which shall be required in order to balance the budget as submitted. The Council shall be required to adopt such tax increases to the extent its budget is approved. For the purposes of this section, the Council shall use a Federal payment amount not to exceed the amount authorized by Congress. In determining whether any such budget would result in expenditures so being made in excess of such resources, amounts included in the budget estimates of the District of Columbia courts in excess of the recommendations of the Council shall not be applicable.

(d) The Mayor shall not forward to the President for submission to Congress a budget which is not balanced according to the provision of subsection 603(c).

(e) Nothing in this Act shall be construed as affecting the applicability to the District government of the provisions of section 3679 of the Revised Statutes of the United States (31 U.S.C. 665), the so-called Anti-Deficiency Act.

CONGRESSIONAL ACTION ON CERTAIN DISTRICT MATTERS

SEC. 604. (a) This section is enacted by Congress—

(1) as an exercise of the rulemaking power of the Senate and the House of Representatives, respectively, and as such these provisions are deemed a part of the rule of each House, respectively, but applicable only with respect to the procedure to be followed in that House in the case of resolutions described by this section; and they supersede other rules only to the extent that they are inconsistent therewith; and

(2) with full recognition of the constitutional right of either House to change the rule (so far as relating to the procedure of that House) at any time, in the same manner and to the same extent as in the case of any other rule of that House.

"Resolution."

(b) For the purpose of this section, "resolution" means only a concurrent resolution, the matter after the resolving clause of which is as follows: "That the ——————— approves/disapproves of the action of the District of Columbia Council described as follows: ———————.", the blank spaces therein being appropriately filled, and either approval or disapproval being appropriately indicated; but does not include a resolution which specifies more than one action.

Referral to congressional committees.

(c) A resolution with respect to Council action shall be referred to the Committee on the District of Columbia of the House of Representatives, or the Committee on the District of Columbia of the Senate, by the President of the Senate or the Speaker of the House of Representatives, as the case may be.

(d) If the committee to which a resolution has been referred has not reported it at the end of twenty calendar days after its introduction, it is in order to move to discharge the committee from further consideration of any other resolution with respect to the same Council action which has been referred to the committee.

(e) A motion to discharge may be made only by an individual favoring the resolution, is highly privileged (except that it may not be made after the committee has reported a resolution with respect to the same action), and debate thereon shall be limited to not more than one hour, to be divided equally between those favoring and those opposing the resolution. An amendment to the motion is not in order, and it is not in order to move to reconsider the vote by which the motion is agreed to or disagreed to.

(f) If the motion to discharge is agreed to or disagreed to, the motion may not be renewed, nor may another motion to discharge the committee be made with respect to any other resolution with respect to the same action.

(g) When the committee has reported, or has been discharged from further consideration of, a resolution, it is at any time thereafter in order (even though a previous motion to the same effect has been disagreed to) to move to proceed to the consideration of the resolution. The motion is highly privileged and is not debatable. An amendment to the motion is not in order, and it is not in order to move to reconsider the vote by which the motion is agreed to or disagreed to.

(h) Debate on the resolution shall be limited to not more than ten hours, which shall be divided equally between those favoring and those opposing the resolution. A motion further to limit debate is not debatable. An amendment to, or motion to recommit, the resolution is not in order, and it is not in order to move to reconsider the vote by which the resolution is agreed to or disagreed to.

(i) Motions to postpone made with respect to the discharge from committee or the consideration of a resolution, and motions to proceed to the consideration of other business, shall be decided without debate.

(j) Appeals from the decisions of the Chair relating to the application of the rules of the Senate or the House of Representatives, as the case may be, to the procedure relating to a resolution shall be decided without debate.

# TITLE VII—REFERENDUM; SUCCESSION IN GOVERNMENT; TEMPORARY PROVISIONS; MISCELLANEOUS; AMENDMENTS TO DISTRICT OF COLUMBIA ELECTION ACT; RULES OF CONSTRUCTION; AND EFFECTIVE DATES

## PART A—CHARTER REFERENDUM

### REFERENDUM

SEC. 701. On a date to be fixed by the Board of Elections, not more than five months after the date of enactment of this Act, a referendum (in this part referred to as the "charter referendum") shall be conducted to determine whether the registered qualified electors of the District accept the charter set forth as title IV of this Act.

### BOARD OF ELECTIONS AUTHORITY

SEC. 702. (a) The Board of Elections shall conduct the charter referendum and certify the results thereof as provided in this part.

(b) Notwithstanding the fact that such section does not otherwise take effect unless the charter is accepted under this title, the applicable provisions of part E of title VII of this Act shall govern the Board of Elections in the performance of its duties under this Act.

### REFERENDUM BALLOT AND NOTICE OF VOTING

SEC. 703. (a) The charter referendum ballot shall contain the following, with a blank space appropriately filled:

"The District of Columbia Self-Government and Governmental Reorganization Act, enacted ————, proposes to establish a charter for the governance of the District of Columbia, but provides that the charter shall take effect only if it is accepted by a majority of the registered qualified voters of the District voting on this issue.

"Indicate in one of the squares provided below whether you are for or against the charter.

"☐ For the charter

"☐ Against the charter.

"In addition, the Act referred to above authorizes the establishment of Advisory Neighborhood Councils if a majority of the registered qualified voters in the District vote for such Councils.

"Indicate in one of the squares provided below whether you are for or against the establishment of Advisory Neighborhood Councils.

"☐ For Advisory Neighborhood Councils

"☐ Against Advisory Neighborhood Councils.".

(b) Voting may be by paper ballot or by voting machine. The Board of Elections may make such changes in the second and fourth paragraphs of the charter referendum ballot as it determines to be necessary to permit the use of voting machines if such machines are used.

(c) Not less than five days before the date of the charter referendum, the Board of Elections shall mail to each registered qualified elector (1) a sample of the charter referendum ballot, and (2) information

showing the polling place of such elector and the date and hours of voting.

Voting information, publication.

(d) Not less than one day before the charter referendum, the Board of Elections shall publish, in one or more newspapers of general circulation published in the District, a list of the polling places and the date and hours of voting.

### ACCEPTANCE OR NONACCEPTANCE OF CHARTER

SEC. 704. (a) If a majority of the registered qualified electors voting in the charter referendum vote for the charter, the charter shall be considered accepted as of the time the Board of Elections certifies the result of the charter referendum to the President of the United States, as provided in subsection (b).

Certification.

(b) The Board of Elections shall, within a reasonable time, but in no event more than thirty days after the date of the charter referendum, certify the results of the charter referendum to the President of the United States and to the Secretary of the Senate and the Clerk of the House of Representatives.

### PART B—SUCCESSION IN GOVERNMENT

#### ABOLISHMENT OF EXISTING GOVERNMENT AND TRANSFER OF FUNCTIONS

SEC. 711. The District of Columbia Council, the offices of Chairman of the District of Columbia Council, Vice Chairman of the District of Columbia Council, and the seven other members of the District of Columbia Council, and the offices of the Commissioner of the District of Columbia and Assistant to the Commissioner of the District of Columbia, as established by Reorganization Plan Numbered 3 of 1967, are abolished as of noon January 2, 1975. This subsection shall not be construed to reinstate any governmental body or office in the District abolished in said plan or otherwise heretofore.

81 Stat. 948.
5 USC app. II.
D.C. Code 1-
app.

#### CERTAIN DELEGATED FUNCTIONS AND FUNCTIONS OF CERTAIN AGENCIES

SEC. 712. No function of the District of Columbia Council (established under Reorganization Plan Numbered 3 of 1967) or of the Commissioner of the District of Columbia which such District of Columbia Council or Commissioner has delegated to an officer, employee, or agency (including any body of or under such agency) of the District, nor any function now vested pursuant to section 501 of Reorganization Plan Numbered 3 of 1967 in the District Public Service Commission, Zoning Advisory Council, Board of Zoning Adjustment, Office of the Recorder of Deeds, or Armory Board, or in any officer, employee, or body of or under such agency, shall be considered as a function transferred to the Council pursuant to section 404(a) of this Act. Each such function is hereby transferred to the officer, employee, or agency (including any body of or under such agency), to whom or to which it was delegated, or in whom or in which it has remained vested, until the Mayor or Council established under this Act, or both, pursuant to the powers herein granted, shall revoke, modify, or transfer such delegation or vesting.

#### TRANSFER OF PERSONNEL, PROPERTY, AND FUNDS

SEC. 713. (a) In each case of the transfer, by any provision of this Act, of functions to the Council, to the Mayor, or to any agency or officer, there are hereby authorized to be transferred (as of the time of such transfer of functions) to the Council, to the Mayor, to such

agency, or to the agency of which such officer is the head, for use in the administration of the functions of the Council or such agency or officer, the personnel (except the Commissioner of the District of Columbia, the Assistant to the Commissioner, the Chairman of the District of Columbia Council, the Vice Chairman of the District of Columbia Council, the other members thereof, all of whose offices are abolished by this Act), property, records, and unexpended balances of appropriations and other funds which relate primarily to the functions so transferred.

(b) If any question arises in connection with the carrying out of subsection (a), such questions shall be decided—

(1) in the case of functions transferred from a Federal officer or agency, by the Director of the Office of Management and Budget; and

(2) in the case of other functions (A) by the Council, or in such manner as the Council shall provide, if such functions are transferred to the Council, and (B) by the Mayor if such functions are transferred to him or to any other officer or agency.

(c) Any of the personnel authorized to be transferred to the Council, the Mayor, or any agency by this section which the Council or the head of such agency shall find to be in excess of the personnel necessary for the administration of its or his function shall, in accordance with law, be retransferred to other positions in the District or Federal Government or be separated from the service.

(d) No officer or employee shall, by reason of his transfer to the District government under this Act or his separation from service under this Act, be deprived of any civil service rights, benefits, and privileges held by him prior to such transfer or any right of appeal or review he may have by reason of his separation from service.

## EXISTING STATUTES, REGULATIONS, AND OTHER ACTIONS

Sec. 714. (a) Any statute, regulation, or other action in respect of (and any regulation or other action issued, made, taken, or granted by) any officer or agency from which any function is transferred by this Act shall, except to the extent modified or made inapplicable by or under authority of law, continue in effect as if such transfer had not been made; but after such transfer, references in such statute, regulation, or other action to an officer or agency from which a transfer is made by this Act shall be held and considered to refer to the officer or agency to which the transfer is made.

(b) As used in subsection (a), the term "other action" includes, without limitation, any rule, order, contract, compact, policy, determination, directive, grant, authorization, permit, requirement, or designation.

"Other action."

(c) Unless otherwise specifically provided in this Act, nothing contained in this Act shall be construed as affecting the applicability to the District government of personnel legislation relating to the District government until such time as the Council may otherwise elect to provide equal or equivalent coverage.

## PENDING ACTIONS AND PROCEEDINGS

Sec. 715. (a) No suit, action, or other judicial proceeding lawfully commenced by or against any officer or agency in his or its official capacity or in relation to the exercise of his or its official functions, shall abate by reason of the taking effect of any provision of this Act; but the court, unless it determines that the survival of such suit, action, or other proceedings is not necessary for purposes of settlement of the

questions involved, shall allow the same to be maintained, with such substitutions as to parties as are appropriate.

(b) No administrative action or proceeding lawfully commenced shall abate solely by reason of the taking effect of any provision of this Act, but such action or proceeding shall be continued with such substitutions as to parties and officers or agencies as are appropriate.

### VACANCIES RESULTING FROM ABOLISHMENT OF OFFICES OF COMMISSIONER AND ASSISTANT TO THE COMMISSIONER

SEC. 716. Until the 1st day of July next after the first Mayor takes office under this Act no vacancy occurring in any District agency by reason of section 711, abolishing the offices of Commissioner of the District of Columbia and Assistant to the Commissioner, shall affect the power of the remaining members of such agency to exercise its functions; but such agency may take action only if a majority of the members holding office vote in favor of it.

### STATUS OF THE DISTRICT

SEC. 717. (a) All of the territory constituting the permanent seat of the Government of the United States shall continue to be designated as the District of Columbia. The District of Columbia shall remain and continue a body corporate, as provided in section 2 of the Revised Statutes relating to the District (D.C. Code, sec. 1–102). Said Corporation shall continue to be charged with all the duties, obligations, responsibilities, and liabilities, and to be vested with all of the powers, rights, privileges, immunities, and assets, respectively, imposed upon and vested in said Corporation or the Commissioner.

20 Stat. 102.

(b) No law or regulation which is in force on the effective date of title IV of this Act shall be deemed amended or repealed by this Act except to the extent specifically provided herein or to the extent that such law or regulation is inconsistent with this Act, but any such law or regulation may be amended or repealed by act or resolution as authorized in this Act, or by Act of Congress, except that, notwithstanding the provisions of section 752 of this Act, such authority to repeal shall not be construed as authorizing the Council to repeal or otherwise alter, by amendment or otherwise, any provision of subchapter III of chapter 73 of title 5, United States Code, in whole or in part.

80 Stat. 525.
5 USC 7321.

(c) Nothing contained in this section shall affect the boundary line between the District of Columbia and the Commonwealth of Virginia as the same was established or may be subsequently established under the provisions of title I of the Act of October 31, 1945 (59 Stat. 552).

D.C. Code
1-101 note.

### CONTINUATION OF THE DISTRICT OF COLUMBIA COURT SYSTEM

SEC. 718. (a) The District of Columbia Court of Appeals, the Superior Court of the District of Columbia, and the District of Columbia Commission on Judicial Disabilities and Tenure shall continue as provided under the District of Columbia Court Reorganization Act of 1970 subject to the provisions of part C of title IV of this Act and section 602(a)(4).

84 Stat. 475.
D.C. Code note
prec. 11-101.

(b) The term and qualifications of any judge of any District of Columbia court, and the term and qualifications of any member of the District of Columbia Commission on Judicial Disabilities and Tenure appointed prior to the effective date of title IV of this Act shall not be affected by the provisions of part C of title IV of this Act. No provision of this Act shall be construed to extend the term of any such judge or member of such Commission. Judges of the

District of Columbia courts and members of the District of Columbia Commission on Judicial Disabilities and Tenure appointed after the effective date of title IV of this Act shall be appointed according to part C of such title IV.

(c) Nothing in this Act shall be construed to amend, repeal, or diminish the duties, rights, privileges, or benefits accruing under sections 1561 through 1571 of title 11 of the District of Columbia Code, and sections 703 and 904 of such title, dealing with the retirement and compensation of the judges of the District of Columbia courts.

84 Stat. 449.
84 Stat. 479.

## CONTINUATION OF THE BOARD OF EDUCATION

Sec. 719. The term of any member elected to the District of Columbia Board of Education, and the powers and duties of the Board of Education, shall not be affected by the provisions of section 495. No provision of such section shall be construed to extend the term of any such member or to terminate the term of any such member.

## Part C—Temporary Provisions

### POWERS OF THE PRESIDENT DURING TRANSITIONAL PERIOD

Sec. 721. The President of the United States is hereby authorized and requested to take such action during the period following the date of the enactment of this Act and ending on the date of the first meeting of the Council, by Executive order or otherwise, with respect to the administration of the functions of the District government, as he deems necessary to enable the Board of Elections properly to perform its functions under this Act.

### REIMBURSABLE APPROPRIATIONS FOR THE DISTRICT

Sec. 722. (a) The Secretary of the Treasury is authorized to advance to the District of Columbia the sum of $750,000, out of any money in the Treasury not otherwise appropriated, for use (1) in paying the expenses of the Board of Elections (including compensation of the members thereof), and (2) in otherwise carrying into effect the provisions of this Act.

(b) The full amount expended out of the money advanced pursuant to this section shall be reimbursed to the United States, without interest, during the second fiscal year which begins after the effective date of title IV, from the general fund of the District.

### INTERIM LOAN AUTHORITY

Sec. 723. (a) The Mayor is authorized to accept loans for the District from the Treasury of the United States, and the Secretary is authorized to lend to the Mayor, such sums as the Mayor may determine are required to complete capital projects for which construction and construction services funds have been authorized or appropriated, as the case may be, by Congress prior to the effective date of title IV. In addition, such loans may include funds to pay the District's share of the cost of the adopted regional system specified in the National Capital Transportation Act of 1969.

(b) Loans advanced pursuant to this section during any six-month period shall be at a rate of interest determined by the Secretary as of the beginning of such period, which, in his judgment, would reflect the cost of money to the Treasury for borrowing at a maturity approximately equal to the period of time the loan is outstanding.

83 Stat. 320.
D.C. Code 1-1441 note.
Interest rate.

822    PUBLIC LAW 93-198—DEC. 24, 1973    [87 Stat.

Appropriation.    (c) Subject to the limitations contained in section 603(b), there are authorized to be appropriated such sums as may be necessary to make loans under this section.

PART D—MISCELLANEOUS

AGREEMENTS WITH UNITED STATES

Federal government services.

SEC. 731. (a) For the purpose of preventing duplication of effort or for the purpose of otherwise promoting efficiency and economy, any Federal officer or agency may furnish services to the District government and any District officer or agency may furnish services to the Federal Government. Except where the terms and conditions governing the furnishing of such services are prescribed by other provisions of law, such services shall be furnished pursuant to an agreement (1) negotiated by the Federal and District authorities concerned, and (2) approved by the Director of the Federal Office of Management and Budget and by the Mayor. Each such agreement shall provide that the cost of furnishing such services shall be borne in the manner provided in subsection (c) by the government to which such services are furnished at rates or charges based on the actual cost of furnishing such services.

Delegation of functions.

(b) For the purpose of carrying out any agreement negotiated and approved pursuant to subsection (a), any District officer or agency may in the agreement delegate any of his or its functions to any Federal officer or agency, and any Federal officer or agency may in the agreement delegate any of his or its functions to any District officer or agency. Any function so delegated may be exercised in accordance with the terms of the delegation.

Costs, payment.

(c) The cost to each Federal officer and agency in furnishing services to the District pursuant to any such agreement are authorized to be paid, in accordance with the terms of the agreement, out of appropriations available to the District officers and agencies to which such services are furnished. The costs to each District officer and agency in furnishing services to the Federal Government pursuant to any such agreement are authorized to be paid, in accordance with the terms of the agreement, out of appropriations made by the Congress or other funds available to the Federal officers and agencies to which such services are furnished, except that the Chief of the Metropolitan Police shall on a nonreimbursable basis when requested by the Director of the United States Secret Service assist the Secret Service and the Executive Protection Service in the performance of their respective protective duties under section 3056 of title 18 of the United States Code and section 302 of title 3 of the United States Code.

Metropolitan police, assistance to U.S. Secret Service and Executive Protective Service.

65 Stat. 122;
84 Stat. 1941.
65 Stat. 712.

PERSONAL INTEREST IN CONTRACTS OR TRANSACTIONS

76 Stat. 1124.

SEC. 732. Any officer or employee of the District who is convicted of a violation of section 208 of title 18, United States Code, shall forfeit his office or position.

COMPENSATION FROM MORE THAN ONE SOURCE

SEC. 733. (a) Except as provided in this Act, no person shall be ineligible to serve or to receive compensation as a member of the Board of Elections because he occupies another office or position or because he receives compensation (including retirement compensation) from another source.

(b) The right to another office or position or to compensation from another source otherwise secured to such a person under the laws of the

SA54

United States shall not be abridged by the fact of his service or receipt of compensation as a member of such Board, if such service does not interfere with the discharge of his duties in such other office or position.

### ASSISTANCE OF THE UNITED STATES CIVIL SERVICE COMMISSION IN DEVELOPMENT OF DISTRICT MERIT SYSTEM

SEC. 734. The United States Civil Service Commission is hereby authorized to advise and assist the Mayor and the Council in the further development of the merit system or systems required by section 422(3) and the said Commission is authorized to enter into agreements with the District government to make available its registers of eligibles as a recruiting source to fill District positions as needed. The costs of any specific services furnished by the Civil Service Commission may be compensated for under the provisions of section 731 of this Act.

*Ante*, p. 791.

Costs.

### REVENUE SHARING RESTRICTIONS

SEC. 735. Section 141(c) of the State and Local Fiscal Assistance Act of 1972 (86 Stat. 919) is amended to read as follows:

31 USC 1261.

"(c) DISTRICT OF COLUMBIA.—For purposes of this title, the District of Columbia shall be treated both—

"(1) as a State (and any reference to the Governor of a State shall, in the case of the District of Columbia, be treated as a reference to the Mayor of the District of Columbia), and

"(2) as a county area which has no units of local government (other than itself) within its geographic area.".

### INDEPENDENT AUDIT

SEC. 736. (a) In addition to the audit carried out under section 455, the accounts and operations of the District government shall be audited annually by the General Accounting Office in accordance with such principles and procedures, and in such detail, and under such rules and regulations as may be prescribed by the Comptroller General of the United States. In the determination of the auditing procedures to be followed and the extent of the examination of vouchers and other documents, the Comptroller General shall give due regard to generally accepted principles of auditing, including consideration of the effectiveness of the accounting organizations and systems, internal audit and control, and related administrative practices. The representatives of the General Accounting Office shall have access to all books, accounts, records, reports, files, and all other papers, things, or property belonging to or in use by the District and necessary to facilitate the audit, and such representatives shall be afforded full facilities for auditing the accounts and operations of the District government.

Annual GAO audit.

Records, accessibility.

(b)(1) The Comptroller General shall submit his audit reports to the Congress, the Mayor, and the Council. The reports shall set forth the scope of the audits and shall include such comments and information as the Comptroller General may deem necessary to keep the Congress, the Mayor, and the Council informed of the operations to which the reports relate, together with such recommendations with respect thereto as the Comptroller General may deem advisable.

Reports to Congress, Mayor, and Council.

(2) After the Mayor has had an opportunity to be heard, the Council may make such report, together with such other material as it deems pertinent thereto, available for public inspection.

Public inspection.

824

Audit recommen-
dations, com-
pliance.

(3) The Mayor, within ninety days after receipt of the audit from the Comptroller General, shall state in writing to the Council, with a copy to the Congress, what has been done to comply with the recommendations made by the Comptroller General in the report.

### ADJUSTMENTS

Debt payment.

SEC. 737. (a) Subject to section 731, the Mayor, with the approval of the Council, and the Director of the Office of Management and Budget, is authorized and empowered to enter into an agreement or agreements concerning the manner and method by which amounts owed by the District to the United States, or by the United States to the District, shall be ascertained and paid.

Demonstration
costs, reimburse-
ment.

(b) The United States shall reimburse the District for necessary expenses incurred by the District in connection with assemblages, marches, and other demonstrations in the District which relate primarily to the Federal Government. The manner and method of ascertaining and paying the amounts needed to so reimburse the District shall be determined by agreement entered into in accordance with subsection (a) of this section.

Surety bond.

(c) Each officer and employee of the District required to do so by the Council shall provide a bond with such surety and in such amount as the Council may require. The premiums for all such bonds shall be paid out of appropriations for the District.

Premiums, pay-
ment.

### ADVISORY NEIGHBORHOOD COUNCILS

Petition re-
quirement.

SEC. 738. (a) The Council shall by act divide the District into neighborhood council areas and, upon receiving a petition signed by at least 5 per centum of the registered qualified electors of a neighborhood council area, shall establish for that neighborhood an elected advisory neighborhood council. In designating such neighborhoods, the Council shall consider natural geographic boundaries, election districts, and divisions of the District made for the purpose of administration of services.

Elections.

(b) Elections for members of each advisory neighborhood council shall be nonpartisan, shall be scheduled to coincide with the elections of members of the Board of Education held in the District, and shall be administered by the Board of Elections. Advisory neighborhood council members shall be elected from single member districts within each neighborhood council area by the registered qualified electors thereof.

Administration.

Functions.

(c) Each advisory neighborhood council—

(1) may advise the District government on matters of public policy including decisions regarding planning, streets, recreation, social services programs, health, safety, and sanitation in that neighborhood council area;

(2) may employ staff and expend, for public purposes within its neighborhood council area, public funds and other funds donated to it; and

(3) shall have such other powers and duties as may be provided by act of the Council.

Notices.

(d) In the manner provided by act of the Council, in addition to any other notice required by law, timely notice shall be given to each advisory neighborhood council of requested or proposed zoning changes, variances, public improvements, licenses or permits of significance to neighborhood planning and development within its neighborhood council area for its review, comment, and recommendation.

(e) In order to pay the expenses of the advisory neighborhood councils, enable them to employ such staff as may be necessary, and to conduct programs for the welfare of the people in a neighborhood council area, the District government shall apportion to each advisory neighborhood council, out of the revenue of the District received from the tax on real property in the District including improvements thereon, a sum not less than that part of such revenue raised by levying 1 cent per $100 of assessed valuation which bears the same ratio to the full sum raised thereby as the population of the neighborhood bears to the population of the District. The Council may authorize additional methods of financing advisory neighborhood councils.

*Council expenses, funds, apportionment.*

(f) The Council shall by act make provisions for the handling of funds and accounts by each advisory neighborhood council and shall establish guidelines with respect to the employment of persons by each advisory neighborhood council which shall include fixing the status of such employees with respect to the District government, but all such provisions and guidelines shall be uniform for all advisory neighborhood councils and shall provide that decisions to employ and discharge employees shall be made by the advisory neighborhood council. These provisions shall conform to the extent practicable to the regular budgetary, expenditure and auditing procedures and the personnel merit system of the District.

*Employment guidelines.*

(g) The Council shall have authority in accordance with the provisions of this Act, to legislate with respect to the advisory neighborhood councils established in this section.

*Legislative authority.*

(h) The foregoing provisions of this section shall take effect only if agreed to in accordance with the provisions of section 703(a) of this Act.

### NATIONAL CAPITAL SERVICE AREA

SEC. 739. (a) There is established within the District of Columbia the National Capital Service Area which shall include, subject to the following provisions of this section, the principal Federal monuments, the White House, the Capitol Building, the United States Supreme Court Building, and the Federal executive, legislative, and judicial office buildings located adjacent to the Mall and the Capitol Building, and is more particularly described in subsection (f).

*Establishment.*

(b) There is established in the Executive Office of the President the National Capital Service Director who shall be appointed by the President. The President, through the National Capital Service Director, shall assure that there is provided, utilizing District of Columbia governmental services to the extent practicable, within the area specified in subsection (a) and particularly described in subsection (f), adequate fire protection and sanitation services. Except with respect to that portion of the National Capital Service Area comprising the United States Capitol Buildings and Grounds as defined in sections 1 and 16 of the Act of July 31, 1946, as amended (40 U.S.C. 193a and 193m), the United States Supreme Court Building and Grounds as defined in section 11 of the Act of August 18, 1949, as amended (40 U.S.C. 13p), and the Library of Congress Buildings and Grounds as defined in section 11 of the Act of August 4, 1950, as amended (2 U.S.C. 167j), the National Capital Service Director shall assure that there is provided within the remainder of such area specified in subsection (a) and subsection (f), adequate police protection and maintenance of streets and highways.

*Director.*

*60 Stat. 718; 81 Stat. 275. D.C. Code 9-118, 9-132. 63 Stat. 617.*

*64 Stat. 412; 84 Stat. 309.*

(c) The National Capital Service Director shall be entitled to receive compensation at the maximum rate as may be established from time to time for level IV of the Executive Schedule of section 5314 of title 5 of the United States Code. The Director may appoint, subject to the provisions of title 5 of the United States Code governing appointments in the competitive service, and fix the pay of, in accord-

*Compensation.*

*5 USC 101 et seq.*

80 Stat. 443,
467.
5 USC 5101,
5331.
ance with the provisions of chapter 51 and subchapter 3 of chapter 53 of such title relating to classification and General Schedule pay rates, such personnel as may be necessary.

(d) Section 45 of the Act entitled "An Act to provide for the organization of the militia of the District of Columbia", approved March 1, 1889 (D.C. Code, sec. 39–603), is amended by inserting after "United States Marshal for the District of Columbia," the following: "or for the National Capital Service Director,".

25 Stat. 778;
35 Stat. 634.

Presidential report to Congress.
(e)(1) Within one year after the effective date of this section, the President is authorized and directed to submit to the Congress a report on the feasibility and advisability of combining the Executive Protective Service and the United States Park Police within the National Capital Service Area, and placing them under the National Capital Service Director.

(2) Such report shall include such recommendations, including recommendations for legislative and executive action, as the President deems necessary in carrying out the provisions of paragraph (1) of this subsection.

Boundaries.
(f)(1)(A) The National Capital Service Area referred to in subsection (a) is more particularly described as follows:

Beginning at that point on the present Virginia-District of Columbia boundary due west of the northernmost point of Theodore Roosevelt Island and running due east to the eastern shore of the Potomac River;

thence generally south along the shore at the mean high water mark to the northwest corner of the Kennedy Center;

thence east along the north side of the Kennedy Center to a point where it reaches the E Street Expressway;

thence east on the expressway to E Street Northwest and thence east on E Street Northwest to Eighteenth Street Northwest;

thence south on Eighteenth Street Northwest to Constitution Avenue Northwest;

thence east on Constitution Avenue to Seventeenth Street Northwest;

thence north on Seventeenth Street Northwest to Pennsylvania Avenue Northwest;

thence east on Pennsylvania Avenue to Jackson Place Northwest;

thence north on Jackson Place to H Street Northwest;

thence east on H Street Northwest to Madison Place Northwest;

thence south on Madison Place Northwest to Pennsylvania Avenue Northwest;

thence east on Pennsylvania Avenue Northwest to Fifteenth Street Northwest;

thence south on Fifteenth Street Northwest to Pennsylvania Avenue Northwest;

thence southeast on Pennsylvania Avenue Northwest to John Marshall Place Northwest;

thence north on John Marshall Place Northwest to C Street Northwest;

thence east on C Street Northwest to Third Street Northwest;

thence north on Third Street Northwest to D Street Northwest;

thence east on D Street Northwest to Second Street Northwest;

thence south on Second Street Northwest to the intersection of Constitution Avenue Northwest and Louisiana Avenue Northwest;

thence northeast on Louisiana Avenue Northwest to North Capitol Street;

thence north on North Capitol Street to Massachusetts Avenue Northwest;

thence southeast on Massachusetts Avenue Northwest so as to encompass Union Square;

thence following Union Square to F Street Northeast;

thence east on F Street Northeast to Second Street Northeast;

thence south on Second Street Northeast to D Street Northeast;

thence west on D Street Northeast to First Street Northeast;

thence south on First Street Northeast to Maryland Avenue Northeast;

thence generally north and east on Maryland Avenue to Second Street Northeast;

thence south on Second Street Northeast to C Street Southeast;

thence west on C Street Southeast to New Jersey Avenue Southeast;

thence south on New Jersey Avenue Southeast to D Street Southeast;

thence west on D Street Southeast to Canal Street Parkway;

thence southeast on Canal Street Parkway to E Street Southeast;

thence west on E Street Southeast to the intersection of Canal Street Southwest and South Capitol Street;

thence northwest on Canal Street Southwest to Second Street Southwest;

thence south on Second Street Southwest to Virginia Avenue Southwest;

thence generally west on Virginia Avenue to Third Street Southwest;

thence north on Third Street Southwest to C Street Southwest;

thence west on C Street Southwest to Sixth Street Southwest;

thence north on Sixth Street Southwest to Independence Avenue;

thence west on Independence Avenue to Twelfth Street Southwest;

thence south on Twelfth Street Southwest to D Street Southwest;

thence west on D Street Southwest to Fourteenth Street Southwest;

thence south on Fourteenth Street Southwest to the middle of the Washington Channel;

thence generally south and east along the midchannel of the Washington Channel to a point due west of the northern boundary line of Fort Lesley McNair;

thence due east to the side of the Washington Channel;

thence following generally south and east along the side of the Washington Channel at the mean high water mark, to the point of confluence with the Anacostia River, and along the northern shore at the mean high water mark to the northern most point of the Eleventh Street Bridge;

thence generally south and east along the northern side of the Eleventh Street Bridge to the eastern shore of the Anacostia River;

thence generally south and west along such shore at the mean high water mark to the point of confluence of the Anacostia and Potomac Rivers;

thence generally south along the eastern shore at the mean high water mark of the Potomac River to the point where it meets the present southeastern boundary line of the District of Columbia;

thence south and west along such southeastern boundary line

to the point where it meets the present Virginia-District of Columbia boundary;

thence generally north and west up the Potomac River along the Virginia-District of Columbia boundary to the point of beginning.

(B) Where the area in paragraph (1) is bounded by any street, such street, and any sidewalk thereof, shall be included within such area.

(2) Any Federal real property affronting or abutting, as of the date of the enactment of this Act, the area described in paragraph (1) shall be deemed to be within such area.

(3) For the purposes of paragraph (2), Federal real property affronting or abutting such area described in paragraph (1) shall—

(A) be deemed to include, but not limited to, Fort Lesley McNair, the Washington Navy Yard, the Anacostia Naval Annex, the United States Naval Station, Bolling Air Force Base, and the Naval Research Laboratory; and

(B) not be construed to include any area situated outside of the District of Columbia boundary as it existed immediately prior to the date of the enactment of this Act, nor be construed to include any portion of the Anacostia Park situated east of the northern side of the Eleventh Street Bridge, or any portion of the Rock Creek Park.

<span style="float:left">Presidential survey.</span>

(g)(1) Subject to the provisions of paragraph (2) of this subsection, the President is authorized and directed to conduct a survey of the area described in this section in order to establish the proper metes

<span style="float:left">Map and description, filing.</span>

and bounds of such area, and to file, in such manner and at such place as he may designate, a map and a legal description of such area, and such description and map shall have the same force and effect as if included in this Act, except that corrections of clerical, typographical and other errors in any such legal descriptions and map may be made. In conducting such survey, the President shall make such adjustments as may be necessary in order to exclude from the National Capital Service Area any privately owned properties, and buildings and adjacent parking facilities owned by the District of Columbia government.

(2) In carrying out the provisions of paragraph (1) of this subsection, the President shall, to the extent that such survey, legal description, and map involves areas comprising the United States Capitol Buildings and Grounds as defined in sections 1 and 16 of the

<span style="float:left">60 Stat. 718; 81 Stat. 275. D.C. Code 9-118, 9-132.</span>

Act of July 31, 1946, as amended (40 U.S.C. 193a and 193m), and other buildings and grounds under the care of the Architect of the Capitol, consult with the Architect of the Capitol.

(3) Section 1 of the Act of July 31, 1946, as amended by the Act of October 20, 1967 (60 Stat. 718; 81 Stat. 275; 40 U.S.C. 193a), is hereby amended to include within the definition of the United States Capitol Grounds, the following streets: "Independence Avenue from the west curb of First Street S.E. to the east curb of First Street S.W., New Jersey Avenue S.E. from the south curb of Independence Avenue to the north curb of D Street S.E., South Capitol Street from the south curb of Independence Avenue to the north curb of D Street; Delaware Avenue S.W. from the south curb of C Street S.W. to the north curb of D Street S.W., C Street from the west curb of First Street S.E. to the intersection of First and Canal Streets, S.W., D Street from the west curb of First Street S.E. to the intersection of Canal Street and Delaware Avenue S.W., that part of First Street lying west of the outer face of the curb on the east side thereof from D Street, N.E. to D Street S.E., that part of First Street within the east and west curblines thereof extending from the north side of Pennsylvania Avenue N.W. to the intersection of C Street and Canal Street S.W., including the two circles within such area.

Nothing in this section shall be construed as repealing, or otherwise altering, modifying, affecting, or superseding those provisions of law in effect on the date immediately preceding the effective date of title IV of this Act vesting authority in the United States Supreme Court police and Library of Congress police to make arrests in adjacent streets, including First Street N.E. and First Street S.E.".

(4) Section 9 of the Act of July 31, 1946, as amended (40 U.S.C. 212a), is amended by deleting "or of any State," and inserting in lieu thereof a comma and the following: "of the District of Columbia, or of any State,".

60 Stat. 719.
D.C. Code
9-126.

(5) Section 9 of such Act is further amended by deleting the following: ", with the exception of the streets and roadways shown on the map referred to in section 1 of this Act as being under the jurisdiction and control of the Commissioners of the District of Columbia.".

40 USC 193a.
D.C. Code
9-118.

(6) Section 14(a) of the Act of July 31, 1946, as amended (40 U.S.C. 212b), is amended by deleting: ", except on those streets and roadways shown on the map referred to in section 1 of this Act as being under the jurisdiction and control of the Commissioners of the District of Columbia".

60 Stat. 720;
84 Stat. 570.
D.C. Code
9-131.

(7) Section 1 of the Act of July 31, 1946, as amended (40 U.S.C. 193a), is amended by deleting ": *Provided,* That those streets and roadways in said United States Capitol Grounds shown on said map as being under the jurisdiction and control of the Commissioners of the District of Columbia shall continue under such jurisdiction and control, and said Commissioners shall be responsible for the maintenance and improvement thereof: *Provided further,*" and inserting in lieu thereof a comma and the following: "including those streets and roadways in said United States Capitol Grounds as shown on said map as being under the jurisdiction and control of the Commissioners of the District of Columbia, except that the Commissioner of the District of Columbia shall be responsible for the maintenance and improvement of those portions of the following streets which are situated between the curblines thereof: Constitution Avenue from First Street N.E. to Second Street N.W., First Street from D Street N.E. to D Street S.E., D Street from First Street S.E. to Canal Street S.W., and First Street from the north side of Louisiana Avenue to the intersection of C Street and Canal Street S.W.: *Provided,*".

(8) Section 9 of the Act of August 18, 1949, as amended (40 U.S.C. 13n), is amended by deleting "or of any State" and inserting in lieu thereof a comma and the following: "any law of the District of Columbia, or of any State,".

63 Stat. 617.

(9) Section 9 of the Act of August 4, 1950, as amended (2 U.S.C. 167h), is amended by deleting "or of any State" and inserting in lieu thereof a comma and the following: "any law of the District of Columbia, or of any State,".

64 Stat. 412.

(h)(1) Except to the extent specifically provided by the provisions of this section, and amendments made by this section, nothing in this section shall be applicable to the United States Capitol Buildings and Grounds as defined in sections 1 and 16 of the Act of July 31, 1946, as amended (40 U.S.C. 193a, 193m), or to any other buildings and grounds under the care of the Architect of the Capitol, the United States Supreme Court Building and Grounds as defined in section 11 of the Act of August 18, 1949, as amended (40 U.S.C. 13p), and the Library of Congress Buildings and Grounds as defined in section 11 of the Act of August 4, 1950, as amended (2 U.S.C. 167j), and except to the extent herein specifically provided, including amendments made by this section, nothing in this section shall be construed to repeal, amend, alter, modify, or supersede any provision of the Act of July 31, 1946, as amended (40 U.S.C. 193a et seq.), or any other of the general

60 Stat. 718;
81 Stat. 275.
D.C. Code
9-118, 9-132.

63 Stat. 617.

64 Stat. 412;
84 Stat. 309.

USCA Case #14-7067    Document #1500321    Filed 07/01/2014    Page 64 of 83

laws of the United States or any of the laws enacted by the Congress and applicable exclusively to the District of Columbia, or any rule or regulation promulgated pursuant thereto, in effect on the date immediately preceding the effective date of title IV of this Act pertaining to said buildings and grounds, or any existing authority, with respect to such buildings and grounds, vested by law, or otherwise, on such date immediately preceding such effective date, in the Senate, the House of Representatives, the Congress, or any committee or commission or board thereof, the Architect of the Capitol, or any other officer of the legislative branch, the Chief Justice of the United States, the Marshal of the Supreme Court of the United States, or the Librarian of Congress.

**Services and facilities, availability.** (2) Notwithstanding the foregoing provision of this section, any of the services and facilities authorized by this Act to be rendered or furnished (including maintenance of streets and highways, and services under section 731 of this Act) shall, as far as practicable, be made available to the Senate, the House of Representatives, the Congress, or any committee or commission or board thereof, the Architect of the Capitol, or any other officer of the legislative branch vested by law or otherwise on such date immediately preceding the effective date of title IV of this Act with authority over such buildings and grounds, the Chief Justice of the United States, the Marshal of the Supreme Court of the United States, and the Librarian of Congress, upon their request, and, if payment would be required for the rendition or furnishing of a similar service or facility to any other Federal agency, payment therefor shall be made by the recipient thereof, upon presentation of proper vouchers, in advance or by reimbursement (as may be agreed upon by the parties rendering and receiving such services).

**U.S. laws, applicability.** (i) Except to the extent otherwise specifically provided in the provisions of this section, and amendments made by this section, all general laws of the United States and all laws enacted by the Congress and applicable exclusively to the District of Columbia, including regulations and rules promulgated pursuant thereto, in effect on the date immediately preceding the effective date of title IV of this Act and which, on such date immediately preceding the effective date of such title, are applicable to and within the areas included within the National Capital Service Area pursuant to this section shall, on and after such effective date, continue to be applicable to and within such National Capital Service Area in the same manner and to the same extent as if this section had not been enacted, and shall remain so applicable until such time as they are repealed, amended, altered, modified, or superseded, and such laws, regulations and rules shall thereafter be applicable to and within such area in the manner and to the extent so provided by any such amendment, alteration, or modification.

(j) In no case shall any person be denied the right to vote or otherwise participate in any manner in any election in the District of Columbia solely because such person resides within the National Capital Service Area.

### EMERGENCY CONTROL OF POLICE

Sec. 740. (a) Notwithstanding any other provision of law, whenever the President of the United States determines that special conditions of an emergency nature exist which require the use of the Metropolitan Police force for Federal purposes, he may direct the Mayor to provide him, and the Mayor shall provide, such services of the Metropolitan Police force as the President may deem necessary **Limitation.** and appropriate. In no case, however, shall such services made avail-

able pursuant to any such direction under this subsection extend for a period in excess of forty-eight hours unless the President has, prior to the expiration of such period, notified the Chairman and ranking minority Members of the Committees on the District of Columbia of the Senate and the House of Representatives, in writing, as to the reason for such direction and the period of time during which the need for such services is likely to continue.

Notification requirement.

(b) Subject to the provisions of subsection (c) of this section, such services made available in accordance with subsection (a) of this section shall terminate upon the end of such emergency, the expiration of a period of thirty days following the date on which such services are first made available, or the adoption of a resolution by either the Senate or the House of Representatives providing for such termination, whichever first occurs.

Termination.

(c) Notwithstanding the foregoing provisions of this section, in any case in which such services are made available in accordance with the provisions of subsection (a) of this section during any period of an adjournment of the Congress sine die, such services shall terminate upon the end of the emergency, the expiration of the thirty-day period following the date on which Congress first convenes following such adjournment, or the adoption of a resolution by either the Senate or the House of Representatives providing for such termination, whichever first occurs.

(d) Except to the extent provided for in subsection (c) of this section, no such services made available pursuant to the direction of the President pursuant to subsection (a) of this section shall extend for any period in excess of thirty days, unless the Senate and the House of Representatives approve a concurrent resolution authorizing such an extension.

Extension.

### HOLDING OFFICE IN THE DISTRICT

Sec. 741. Notwithstanding any other provision of law, no person who is otherwise qualified to hold the office of Chairman or member of the Council or Mayor shall be disqualified from being a candidate for such office by reason of his employment in the competitive or excepted service of the United States. For the purposes of this section, a person shall be deemed to be a candidate on and after the date he qualifies under applicable provisions of law in the District to have his name placed on the ballot in either a primary or general election for the office for which he is a candidate. Such candidacy shall terminate—

(1) with respect to a person who has been defeated in a primary election held to nominate candidates for the office for which he is a candidate, on the day of such primary election;

(2) with respect to a person who is defeated in the general election held for the office for which he is a candidate, on the date of such general election; and

(3) with respect to a person who is elected in the general election held for the office for which he is a candidate, on the date such person assumes such office.

### OPEN MEETINGS

Sec. 742. (a) All meetings (including hearings) of any department, agency, board, or commission of the District government, including meetings of the District Council, at which official action of any kind is taken shall be open to the public. No resolution, rule, act, regulation or other official action shall be effective unless taken, made, or enacted at such meeting.

832

Written tran-
script, availabil-
ity.

(b) A written transcript or a transcription shall be kept for all such meetings and shall be made available to the public during normal business hours of the District government. Copies of such written transcripts or copies of such transcriptions shall be available upon request to the public at reasonable cost.

### TERMINATION OF THE DISTRICT'S AUTHORITY TO BORROW FROM THE TREASURY

SEC. 743. (a) The first section of the Act entitled "An Act to authorize the Commissioners of the District of Columbia to borrow funds for capital improvement programs and to amend provisions of law relating to Federal Government participation in meeting costs of maintaining the Nation's Capital City", approved June 6, 1958 (72 Stat. 183; D.C. Code, sec. 9–220), is amended by striking out subsections (b), (c), (d), and (e).

(b) The Act entitled "An Act authorizing loans from the United States Treasury for the expansion of the District of Columbia water system", approved June 2, 1950 (60 Stat. 195; D.C. Code, sec. 43–1540), is repealed.

(c) Title II of the Act entitled "An Act to authorize the financing of a program of public works construction for the District of Columbia, and for other purposes", approved May 18, 1954 (68 Stat. 108), is amended by striking out sections 213, 214, 216, 217, and 218 (D.C. Code, sections 43–1612, 43–1613, 43–1615, 43–1616, and 43–1617), authorizing loans from the United States Treasury for sanitary and combined sewer systems of the District.

(d) Section 402 of title IV of such Act approved May 18, 1954 (68 Stat. 110; D.C. Code, sec. 7–133), authorizing loans from the United States Treasury for the District of Columbia highway construction program, is repealed.

Loan payment
obligation.

(e) Nothing contained in this section shall be deemed to relieve the District of its obligation to repay any loan made to it under the authority of the Acts specified in the preceding subsections, nor to preclude the District from using the unexpended balance of any such loan appropriated to the District prior to the effective date of this provision, nor to prevent the District from fulfilling the provisions of section 722.

### PART E—AMENDMENTS TO THE DISTRICT OF COLUMBIA ELECTION ACT

#### AMENDMENTS

SEC. 751. The District of Columbia Election Act (D.C. Code, secs. 1–1101—1–1115) is amended as follows:

69 Stat. 699;
85 Stat. 788.

(1) The first section of such Act (D.C. Code, sec. 1–1101) is amended by inserting immediately after "Board of Education,", the following: "the members of the Council of the District of Columbia, the Mayor".

Ante, p. 311.

(2) Section 2 of such Act (D.C. Code, sec. 1–1102) is amended by adding at the end thereof the following new paragraphs:

Definitions.

"(8) The term 'Council' or 'Council of the District of Columbia' means the Council of the District of Columbia established pursuant to the District of Columbia Self-Government and Governmental Reorganization Act.

"(9) The term 'Mayor' means the office of Mayor of the District of Columbia established pursuant to the District of Columbia Self-Government and Governmental Reorganization Act."

(3) Subsections (h), (i), (j), and (k) of section 8 of such Act (D.C. Code, sec. 1–1108) are amended to read as follows:

"(h)(1)(A) The Delegate, Mayor, Chairman of the District Council and the four at-large members of the Council shall be elected by the registered qualified electors of the District of Columbia in a general election. Each candidate for the office of Delegate, Mayor, Chairman of the District Council, and at-large members of the Council in any general election shall, except as otherwise provided in subsection (j) of this section and section 10(d), have been elected by the registered qualified electors of the District as such candidate by the next preceding primary election.

"(B)(i) A member of the office of Council (other than the Chairman and any member elected at large) shall be elected in a general election by the registered qualified electors of the respective ward of the District from which the individual seeking such office was elected as a candidate for such office as provided in clause (ii) of this paragraph.

"(ii) Each candidate for the office of member of the Council (other than Chairman and at-large members) shall, except as otherwise provided in subsection (j) of this section and section 10(d), have been elected as such a candidate, by the registered qualified electors of the ward of the District from which such individual was nominated, at the next preceding primary election to fill such office within that ward.

"(2) The nomination and election of any individual to the office of Delegate, Mayor, Chairman of the Council and member of the Council shall be governed by the provisions of this Act. No political party shall be qualified to hold a primary election to select candidates for election to any such office in a general election unless, in the next preceding election year, at least seven thousand five hundred votes were cast in the general election for a candidate of such party for any such office or for its candidates for electors of President and Vice President.

"(i)(1) Each individual in a primary election for candidate for the office of Delegate, Mayor, Chairman of the Council, or at-large member of the Council shall be nominated for any such office by a petition (A) filed with the Board not later than sixty days before the date of such primary election, and (B) signed by at least two thousand registered qualified electors of the same political party as the nominee, or by 1 per centum of the duly registered members of such political party, whichever is less, as shown by the records of the Board of Elections as of the one hundred fourteenth day before the date of such election.

"(2) Each individual in a primary election for candidate for the office of member of the Council (other than the Chairman and at-large members) shall be nominated for such office by a petition (A) filed with the Board not later than sixty days before the date of such primary election, and (B) signed by at least two hundred fifty persons in the ward from which such individual seeks election who are duly registered in such ward under section 7 of this Act, and who are of the same political party as the nominee.

"(3) A nominating petition for a candidate in a primary election for any such office may not be circulated for signature before the one hundred fourteenth day preceding the date of such election and may not be filed with the Board before the eighty-fifth day preceding such date. The Board may prescribe rules with respect to the preparation and presentation of nominating petitions. The Board shall arrange the ballot of each political party in each such primary election as to enable a voter of such party to vote for nominated candidates of that party.

"(j)(1) A duly qualified candidate for the office of Delegate, Mayor, Chairman of the Council, or member of the Council may, subject to

84 Stat. 849;
85 Stat. 790;
*Ante*, p. 312, 313.
Delegate, Mayor, Chairman of the District Council and at-large members, election.

69 Stat. 702;
84 Stat. 851.
D.C. Code 1-1110.

Restrictions.

Nomination petition.

69 Stat. 700;
85 Stat. 790, 795.
D.C. Code 1-1107.
Petition, circulation.

USCA Case #14-7067        Document #1500321        Filed: 07/01/2014        Page 68 of 83

the provisions of this subsection, be nominated directly as such a candidate for election for such office (including any such election to be held to fill a vacancy). Such person shall be nominated by petition (A) filed with the Board not less than sixty days before the date of such general election, and (B) in the case of a person who is a candidate for the office of member of the Council (other than the Chairman or an at-large member), signed by five hundred voters who are duly registered under section 7 in the ward from which the candidate seeks election; and in the case of a person who is a candidate for the office of Delegate, Mayor, Chairman of the Council, or at-large member of the Council, signed by duly registered voters equal in number to 1½ per centum of the total number of registered voters in the District, as shown by the records of the Board as of one hundred fourteen days before the date of such election, or by three thousand persons duly registered under section 7, whichever is less. No signatures on such a petition may be counted which have been made on such petition more than one hundred fourteen days before the date of such election.

"(2) Nominations under this subsection for candidates for election in a general election to any office referred to in paragraph (1) shall be of no force and effect with respect to any person whose name has appeared on the ballot of a primary election for that office held within eight months before the date of such general election.

"(k)(1) In each general election for the office of member of the Council (other than the office of the Chairman or an at-large member) the Board shall arrange the ballots in each ward to enable a voter registered in that ward to vote for any one candidate who (A) has been duly elected by any political party in the next preceding primary election for such office from such ward, (B) has been duly nominated to fill a vacancy in such office in such ward pursuant to section 10(d), or (C) has been nominated directly as a candidate for such office in such ward under subsection (j) of this section.

"(2) In each general election for the office of Chairman and member of the Council at large, the Board shall arrange the ballots to enable a registered qualified elector to vote for as many candidates for election as members at large as there are members at large to be elected in such election, including the Chairman. Such candidates shall be only those persons who (A) have been duly elected by any political party in the next preceding primary election for such office, (B) have been duly nominated to fill vacancies in such office pursuant to section 10(d), or (C) have been nominated directly as a candidate under subsection (j) of this section.

"(3) In each general election for the office of Delegate and Mayor, the Board shall arrange the ballots to enable a registered qualified elector to vote for any one of the candidates for any such office who (A) has been duly elected by any political party in the next preceding primary election for such office, (B) has been duly nominated to fill a vacancy in such office pursuant to section 10(d), or (C) has been nominated directly as a candidate under subsection (j) of this section.".

(4) Paragraph (3) of section 10(a) of such Act (D.C. Code, sec. 1-1110) is amended (1) by inserting "(A)" immediately before the word "Except", and (2) by adding at the end thereof the following:

"(B) Except as otherwise provided in the case of special elections under this Act primary elections of each political party for the office of member of the Council shall be held on the first Tuesday after the second Monday in September in 1974, and every second year thereafter, and general election for such offices shall be held on the first Tuesday after the first Monday in November in 1974 and every second year thereafter.

69 Stat. 700;
85 Stat. 790, 795.
D.C. Code
1-1107.

69 Stat. 702.
84 Stat. 851.
D.C. Code
1-1110.

85 Stat. 792.
D.C. Code
1-1110.
Primary election dates.

"(C) Except as otherwise provided in the case of a special election under this Act, primary elections of each political party for the office of Mayor and Chairman shall be held on the first Tuesday after the second Monday in September of every fourth year, commencing with calendar year 1974, and the general election for such office shall be held on the first Tuesday after the first Monday in November in 1974 and every fourth year thereafter.".

(5) Paragraphs (6), (7), (8), and (9) of section 10(a) of such Act (D.C. Code, sec. 1–1110) are repealed, and paragraphs (4) and (5) of such section 10(a) are amended to read as follows: *Repeals.*
*69 Stat. 702;*
*84 Stat. 850.*

"(4) With respect to special elections required or authorized by this Act, the Board may establish the dates on which such special elections are to be held and prescribe such other terms and conditions as may, in the Board's opinion, be necessary or appropriate for the conduct of such elections in a manner comparable to that prescribed for other elections held pursuant to this Act. *Special elections.*

"(5) General elections for members of the Board of Education shall be held on the first Tuesday after the first Monday in November of each odd-numbered calendar year." *General elections.*

(6) Section 10(b) of such Act (D.C. Code, sec. 1–1110) is amended by striking out "other than general elections for the Office of Delegate and for members of the Board of Education.".

(7) Section 10(c) of such Act (D.C. Code, sec. 1 1110) is amended by striking out the words "other than an election for members of the Board of Education".

(8) Section 10(d) of such Act (D.C. Code, sec. 1–1110) is amended to read as follows:

"(d) In the event that any official, other than the Delegate, Mayor, member of the Council, member of the Board of Education, or a winner of a primary election for the office of Delegate, Mayor, or member of the Council, elected pursuant to this Act dies, resigns, or becomes unable to serve during his or her term of office leaving no person elected pursuant to this Act to serve the remainder of the unexpired term of office, the successor or successors to serve the remainder of such term shall be chosen pursuant to the rules of the duly authorized party committee, except that such successor shall have the qualifications required by this Act for such office. In the event that such a vacancy occurs in the office of a candidate for the office of Delegate, Mayor, or member of the Council who has been declared the winner in the preceding primary election of such office, the vacancy may be filled not later than fifteen days prior to the next general election for such office, by nomination by the party committee of the party which nominated his predecessor. In the event that such a vacancy occurs in the office of Delegate more than eight months before the expiration of its term of office, the Board shall call special elections to fill such vacancy for the remainder of its term of office." *Succession.*

*Vacancies.*

(9) The first sentence of section 15 of such Act (D.C. Code, sec. 1–1115) is amended to read as follows: "No person shall be a candidate for more than one office on the Board of Education or the Council in any election for members of the Board of Education or Council, and no person shall be a candidate for more than one office on the Council in any primary election." *82 Stat. 106.*

(10) Section 15 of such Act (D.C. Code, sec. 1–1115) is further amended (1) by designating the existing text of such section as subsection (a), and (2) by adding at the end thereof the following new subsection:

"(b) No person who is holding the office of Mayor, Delegate, Chairman or member of the Council, or member of the School Board shall, while holding such office, be eligible as a candidate for any other of

such offices in any primary or general election, unless the term of the office which he so holds expires on or prior to the date on which he would be eligible, if elected in such primary or general election, to take the office with respect to which such election is held."

DISTRICT COUNCIL AUTHORITY OVER ELECTIONS

SEC. 752. Notwithstanding any other provision of this Act or of any other law, the Council shall have authority to enact any act or resolution with respect to matters involving or relating to elections in the District.

PART F—RULES OF CONSTRUCTION

CONSTRUCTION

SEC. 761. To the extent that any provisions of this Act are inconsistent with the provisions of any other laws the provisions of this Act shall prevail and shall be deemed to supersede the provisions of such laws.

PART G—EFFECTIVE DATES

EFFECTIVE DATES

SEC. 771. (a) Titles I and V, and parts A and G, and section 722, of title VII shall take effect on the date of enactment of this Act.

(b) Title II shall take effect on July 1, 1974, except that any provision thereof which in effect transfers authority to appoint any citizen member of the National Capital Planning Commission or the District of Columbia Redevelopment Land Agency shall take effect on January 2, 1975.

(c) Titles III and IV shall take effect January 2, 1975, if title IV is accepted by a majority of the registered qualified electors in the District of Columbia voting on the charter issue in the charter referendum.

(d) Title VI and parts B, D, and F, and sections 721 and 723, of title VII shall take effect only if and upon the date that title IV becomes effective.

(e) Part E of title VII shall take effect on the date on which title IV is accepted by a majority of the registered qualified electors in the District voting on the charter issue in the charter referendum.

Approved December 24, 1973.

---

Public Law 93-199

AN ACT

December 26, 1973
[H. R. 11088]

To provide emergency security assistance authorizations for Israel and Cambodia.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Emergency Security Assistance Act of 1973".

Emergency Security Assistance Act of 1973.

SEC. 2. In addition to such amounts as may be otherwise authorized to be appropriated to the President for security assistance for the fiscal year 1974, there are hereby authorized to be appropriated to the

D.C. LAW

2-46

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

MARCH 10, 1978

To amend the Charter of the District of Columbia to provide
for the power of initiative, referendum, and recall.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA,
That this act may be cited as the "Initiative, Referendum,
and Recall Charter Amendments Act of 1977".

Sec. 2. Subject to the approval of the registered
qualified electors of the District of Columbia, the District
of Columbia charter is amended as follows:

"Amendment No. 1 - Initiative and Referendum

"Sec. 1. Definitions

"(a) The term 'initiative' means the process by which
the electors of the District of Columbia may propose laws
(except laws appropriating funds) and present such proposed
laws directly to the registered qualified electors of the
District of Columbia for their approval or disapproval.

"(b) The term 'referendum' means the process by which
the registered qualified electors of the District of
Columbia may suspend acts of the Council of the District of
Columbia (except emergency acts, acts levying taxes, or acts
appropriating funds for the general operating budget) until

SA69

such acts have been presented to the registered qualified electors of the District of Columbia for their approval or rejection.

"Sec. 2.  Process

"(a) An initiative or referendum may be proposed by the presentation of a petition to the District of Columbia Board of Elections and Ethics containing the signatures of registered qualified electors equal in number to five (5) percent of the registered electors in the District of Columbia: PROVIDED, That the total signatures submitted include five (5) percent of the registered electors in five (5) or more of the City's Wards. The number of registered electors which is used for computing these requirements shall be according to the latest official count of registered electors by the Board of Elections and Ethics which was issued thirty (30) or more days prior to submission of the signatures for the particular initiative or referendum petition.

"(b)(1)  Upon the presentation of a petition for a referendum to the District of Columbia Board of Elections and Ethics as provided in this section, the District of Columbia Board of Elections and Ethics shall notify the appropriate custodian of the act of the Council of the District of Columbia (either the President of the United

States or the President of the Senate and the Speaker of the
House of Representatives) as provided in sections 404 and
446 of the Home Rule Act and the President of the United
States or the President of the Senate and the Speaker of the
House of Representatives, shall, as is appropriate, return
such act or portion of such act to the Chairman of the
Council of the District of Columbia. No further action may
be taken upon such act or portion of such act until after a
referendum election is held.

"(2)  No act is subject to referendum if it has become
law according to the provisions of section 404 of the Home
Rule Act.

"Sec. 3.  The District of Columbia Board of Elections
and Ethics shall submit an initiative measure without
alteration at the next general, special or primary election
held at least ninety (90) days after the measure is
received.  The District of Columbia Board of Elections and
Ethics shall hold an election on a referendum measure within
one hundred and fourteen (114) days of its receipt of a
petition as provided in section 2 of this act.  If a
previously scheduled general, primary, or special election
will occur between fifty-four (54) and one hundred and
fourteen (114) days of its receipt of a petition as provided
in section 2 of this act, the District of Columbia Board of

-4-

Elections and Ethics may present the referendum at that
election.

"Sec. 4. If a majority of the registered qualified
electors voting on a referred act vote to disapprove the
act, such action shall be deemed a rejection of the act or
that portion of the act on the referendum ballot and no
action may be taken by the Council of the District of
Columbia with regard to the matter presented at referendum
for the three hundred and sixty-five (365) days following
the date of the District of Columbia Board of Elections and
Ethics' certification of the vote concerning the referendum.

"Sec. 5. (a) If a majority of the registered qualified
electors voting in a referendum approve an act or adopt
legislation by initiative, then the adopted initiative or
act approved by referendum shall be an act of the Council of
the District of Columbia upon the proper certification of
the vote by the District of Columbia Board of Elections and
Ethics.

"(b) The Chairman of the Council of the District of
Columbia shall transmit acts approved as provided in this
amendment to the Speaker of the House of Representatives and
the President of the Senate on the day the District of
Columbia Board of Elections and Ethics certifies that a

majority of the registered qualified electors voting on the measure voted in favor thereof.

"Sec. 6. No initiated act or act subject to referendum which has been ratified by a majority of the registered qualified electors voting on the initiative or referendum shall take effect until the end of the thirty (30) day period (excluding Saturdays, Sundays, and holidays and any day on which either House is not in session) beginning on the day such measure is transmitted by the Chairman of the Council of the District of Columbia to the Speaker of the House of Representatives and the President of the Senate, and then only if during such thirty (30) day period both Houses of Congress do not adopt a concurrent resolution disapproving such initiated act or act passed by referendum.

"Sec. 7. The District of Columbia Board of Elections and Ethics shall be empowered to propose a short title and summary of the initiative and referendum matter which accurately reflects the intent and meaning of the proposed referendum or initiative. Any citizen may petition the Superior Court of the District of Columbia no later than thirty (30) days prior to the election at which the initiative or referendum will be held for a writ in the nature of mandamus to correct any inaccurate short title and summary by the District of Columbia Board of Elections and

Ethics and to mandate that Board to properly state the summary of the initiative or referendum measure.

"Sec. 8.  The Council of the District of Columbia shall adopt such acts as are necessary to carry out the purpose of this Amendment within one hundred and eighty (180) days of the effective date of this Amendment.  Neither a petition initiating an initiative nor a referendum may be presented to the District of Columbia Board of Elections and Ethics prior to October 1, 1978.

"CHARTER AMENDMENT NO. 2 — RECALL OF ELECTED PUBLIC OFFICIALS

"Sec. 1.  The term 'recall' means the process by which the qualified electors of the District of Columbia may call for the holding of an election to remove or retain an elected official of the District of Columbia (except the Delegate to Congress for the District of Columbia) prior to the expiration of his or her term.

"Sec. 2.  Any elected officer of the District of Columbia government (except the Delegate to Congress for the District of Columbia) may be recalled by the registered electors of the election ward from which he or she was elected or by the registered electors of the District of Columbia at-large in the case of an at-large elected officer, whenever a petition demanding his or her recall, signed by ten (10) percent of the registered electors

SA74

thereof, is filed with the District of Columbia Board of
Elections and Ethics. The ten (10) percent shall be
computed from the total number of the registered electors
from the ward, according to the latest official count of
registered electors by the Board of Elections and Ethics
which was issued thirty (30) or more days prior to
submission of the signatures for the particular recall
petition. In the case of an at-large elected official, the
ten (10) percent shall include ten (10) percent of the
registered electors in five (5) or more of the City's wards.
The District of Columbia Board of Elections and Ethics shall
hold an election within one hundred and fourteen (114) days
of its receipt of a petition as provided in section 2 of
this act. If a previously scheduled general, primary, or
special election will occur between fifty-four (54) and one
hundred and fourteen (114) days of its receipt of a petition
as provided in section 2 of this act, then the District of
Columbia Board of Elections and Ethics may present the
recall question at that election.

"Sec. 3. The process of recalling an elected official
may not be initiated within the first three hundred and
sixty-five (365) days nor the last three hundred and sixty-
five (365) days of his or her term of office. Nor may the

process be initiated within one year after a recall election has been determined in his or her favor.

. "Sec. 4. An elected official is removed from office if a majority of the qualified electors voting in the election vote to remove him or her. The vacancy created by such recall shall be filled in the same manner as other vacancies as provided in sections 401(d) and 421(c)(2) of the Home Rule Act and section 10(a) of the District of Columbia Elections Act.

"Sec. 5. The Council of the District of Columbia shall adopt such acts as are necessary to carry out the purpose of this amendment within one hundred and eighty (180) days of the effective date of this amendment. No petition for recall may be presented to the District of Columbia Board of Elections and Ethics prior to October 1, 1978."

Sec. 3. This act shall take effect as provided in section 303 of the District of Columbia Self-Government and Governmental Reorganization Act.

98 STAT. 1974          PUBLIC LAW 98–473—OCT. 12, 1984

District of
Columbia.

SEC. 131.

87 Stat. 784.

(b) Section 303(b) of the District of Columbia Self-Government and Governmental Reorganization Act is amended to read as follows:

"(b) An amendment to the charter ratified by the registered electors shall take effect upon the expiration of the 35-calendar-day period (excluding Saturdays, Sundays, holidays, and days on which either House of Congress is not in session) following the date such amendment was submitted to the Congress, or upon the date prescribed by such amendment, whichever is later, unless during such 35-day period, there has been enacted into law a joint resolution, in accordance with the procedures specified in section 604 of this Act, disapproving such amendment. In any case in which any such joint resolution disapproving such an amendment has, within such 35-day period, passed both Houses of Congress and has been transmitted to the President, such resolution, upon becoming law subsequent to the expiration of such 35-day period, shall be deemed to have repealed such amendment. as of the date such resolution becomes law.".

87 Stat. 816.

USCA Case #14-7067     Document #1500321     Filed: 07/01/2014     Page 80 of 83

**ENROLLED ORIGINAL**

## AN ACT

Codification
District of Columbi:
Official Code
2001 Edition

## D.C. ACT 19-632

Winter 2013

## IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

### JANUARY 18, 2013

To amend the District of Columbia Home Rule Act to provide for local budget autonomy.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Local Budget Autonomy Amendment Act of 2012".

Sec. 2. The District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 777; D.C. Official Code § 1-201.01 *et seq.*), is amended as follows:

(a) The table of contents is amended by striking the phrase "Sec. 446. Enactment of Appropriations by Congress" and inserting the phrase "Sec. 446. Enactment of local budget by Council" in its place.

(b) Section 404(f) (D.C. Official Code § 1-204.04(f)) is amended by striking the phrase "transmitted by the Chairman to the President of the United States" both times it appears and inserting the phrase "incorporated in the budget act and become law subject to the provisions of section 602(c)" in its place.

Amend
§ 1-204.04

(c) Section 412 (D.C. Official Code § 1-204.12) is amended by striking the phrase "(other than an act to which section 446 applies)".

Amend
§ 1-204.12

(d) Section 441(a) (D.C. Official Code § 1-204.41(a)) is amended –by striking the phrase "budget and accounting year." and inserting the phrase "budget and accounting year. The District may change the fiscal year of the District by an act of the Council. If a change occurs, such fiscal year shall also constitute the budget and accounting year." in its place.

Amend
§ 1-204.41

(e) Section 446 (D.C. Official Code § 1-204.46) is amended to read as follows:
"ENACTMENT OF LOCAL BUDGET BY COUNCIL.

Amend
§ 1-204.46

"Sec. 446. (a) Adoption of Budgets and Supplements - The Council, within 70 calendar days, or as otherwise provided by law, after receipt of the budget proposal from the Mayor, and after public hearing, and by a vote of a majority of the members present and voting, shall by act adopt the annual budget for the District of Columbia government. The federal portion of the annual budget shall be submitted by the Mayor to the President for transmission to Congress. The local portion of the annual budget shall be submitted by the Chairman of the Council to the Speaker of the House of Representatives pursuant to the procedure set forth in section 602(c). Any supplements to the annual budget shall also be ·

USCA Case #14-7067          Document #1500321          Filed: 07/01/2014          Page 81 of 83

**ENROLLED ORIGINAL**

adopted by act of the Council, after public hearing, by a vote of a majority of the members present and voting.

"(b) Transmission to President During Control Years - In the case of a budget for a fiscal year which is a control year, the budget so adopted shall be submitted by the Mayor to the President for transmission by the President to the Congress; except, that the Mayor shall not transmit any such budget, or amendments or supplements to the budget, to the President until the completion of the budget procedures contained in this Act and the District of Columbia Financial Responsibility and Management Assistance Act of 1995.

"(c) Prohibiting Obligations and Expenditures Not Authorized Under Budget- Except as provided in section 445A(b), section 446B, section 467(d), section 471(c), section 472(d)(2), section 475(e)(2), section 483(d), and subsections (f), (g), (h)(3), and (i)(3) of section 490, no amount may be obligated or expended by any officer or employee of the District of Columbia government unless--

"(1) such amount has been approved by an act of the Council (and then only in accordance with such authorization) and such act has been transmitted by the Chairman to the Congress and has completed the review process under section 602(c)(3); or

"(2) in the case of an amount obligated or expended during a control year, such amount has been approved by an Act of Congress (and then only in accordance with such authorization).

"(d) Restrictions on Reprogramming of Amounts - After the adoption of the annual budget for a fiscal year (beginning with the annual budget for fiscal year 1995), no reprogramming of amounts in the budget may occur unless the Mayor submits to the Council a request for such reprogramming and the Council approves the request, but and only if any additional expenditures provided under such request for an activity are offset by reductions in expenditures for another activity.

"(e) Definition - In this part, the term "control year" has the meaning given such term in section 305(4) of the District of Columbia Financial Responsibility and Management Assistance Act of 1995.".

(f) Section 446B(a) (D.C. Official Code § 1-204.46b(a)) is amended as follows:     Amend § 1-204.46b

(1) Strike the phrase "the fourth sentence of section 446" and insert the phrase "section 446(c)" in its place.

(2) Strike the phrase "approved by Act of Congress".

(g) Section 447 (D.C. Official Code § 1-204.47) is amended as follows:     Amend § 1-204.47

(1) Strike the phrase "Act of Congress" each time it appears and insert the phrase "act of the Council (or Act of Congress, in the case of a year which is a control year)" in its place.

(2) Strike the phrase "Acts of Congress" each time it appears and insert the phrase "acts of the Council (or Acts of Congress, in the case of a year which is a control year)" in its place.

USCA Case #14-7067     Document #1500321     Filed: 07/01/2014     Page 82 of 83

**ENROLLED ORIGINAL**

(h) Sections 467(d), 471(c), 472(d)(2), 475(e)(2), and 483(d), and 490(f), (g)(3), (h)(3), and (i)(3) are amended by striking the phrase "The fourth sentence of section 446" and inserting the phrase "Section 446(c)" in its place.

Amend
§§ 1-204.67,
1-204.71,
1-204.72,
1-204.75,
1-204.83,
1-204.90

Sec. 3. Applicability.
Section 2 shall apply as of January 1, 2014.

Sec. 4. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 5. Effective date.
This act shall take effect as provided in section 303 of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 784; D.C. Official Code § 1-203.03).

_____
Chairman
Council of the District of Columbia

_____
Mayor
District of Columbia
APPROVED
January 18, 2013

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c) and Cir. R. 25(c), that on July 1, 2014, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.


Dated: July 1, 2014                                    /s/ Brian D. Netter
                                                       Brian D. Netter