No. 14-7067

———

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

COUNCIL OF THE DISTRICT OF COLUMBIA,

*Plaintiff-Appellant*,

v.

VINCENT C. GRAY, in his official capacity as Mayor of the District of Columbia; and JEFFREY S. DEWITT, in his official capacity as Chief Financial Officer of the District of Columbia,

*Defendants-Appellees*.

———

On Appeal from a Final Order of the United States District Court for the District of Columbia (Hon. Emmet G. Sullivan, U.S. District Judge)

———

# BRIEF OF THE BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE SUPPORTING AFFIRMANCE

Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Todd B. Tatelman, Assistant Counsel
Mary Beth Walker, Assistant Counsel
Eleni M. Roumel, Assistant Counsel
Isaac B. Rosenberg, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700

*Counsel for Amicus Curiae*

August 7, 2014

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Rule 28(a)(1) of the Circuit Rules of this Court, counsel for amicus curiae the Bipartisan Legal Advisory Group of the U.S. House of Representatives respectfully represents as follows:

*Parties and Amici Below*

All parties, intervenors, and amici appearing before the District Court are listed in the Brief for the Appellant (July 1, 2014) and Brief for Appellees (July 31, 2014).

*Rulings Under Review*

References to the ruling at issue appear in the Brief for the Appellant (July 1, 2014) and Brief for Appellees (July 31, 2014).

*Related Cases*

None.

*/s/ Todd B. Tatelman*
Todd B. Tatelman, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700

*Counsel for Amicus Curiae*

August 7, 2014

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY OF TERMS ....................................................................ix

STATEMENT OF INTEREST ................................................................1

BACKGROUND ...........................................................................3

   I.     The Federal Budget and Appropriations Process ......................................4

   II.    The Home Rule Act..............................................................13

   III.   The Budget Autonomy Act ...........................................................16

DISCUSSION ...........................................................................17

   I.     Legislative Efforts in Congress to Provide Budget Autonomy to the District Undercut the Council's Position............................................18

      A.    Legislative Efforts That Pre-Date the Budget Autonomy Act............18

      B.    Legislative Efforts That Post-Date the Budget Autonomy Act ..........22

   II.    The Budget Autonomy Act Is Inconsistent with § 816(a) of the Financial Services and General Government Appropriations Act, 2014 ........................................................24

   III.   The Budget Autonomy Act Violates the Federal Antideficiency Act .....27

CONCLUSION ...........................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**<u>Cases</u>:**

*Biotech. Indus. Org. v. Dist. of Columbia*,
    496 F.3d 1362 (Fed. Cir. 2007) ....................................................26

*Council of D.C. v. Gray*,
    --- F. Supp. 2d ---, No. 14-cv-655, 2014 WL 2025078
    (D.D.C. May 19, 2014)...................................................................27

*Delta Data Sys. Corp. v. Webster*,
    744 F.2d 197 (D.C. Cir. 1984).......................................................28

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*,
    642 F.2d 527 (D.C. Cir. 1980).......................................................26

*Estate of Heiser v. Islamic Republic of Iran*,
    885 F. Supp. 2d 429 (D.D.C. 2012)...............................................26

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)........................................................................15

*Jackson v. D.C. Bd. of Elections & Ethics*,
    999 A.2d 89 (D.C. 2010) ...............................................................13

*Levi v. Brown & Williamson Tobacco Corp.*,
    851 F. Supp. 2d 8 (D.D.C. 2012)...................................................26

*M. Steinthal & Co. v. Seamans*,
    455 F.2d 1289 (D.C. Cir. 1971).....................................................28

*Ratzlaf v. United States*,
    510 U.S. 135 (1994)........................................................................15

*Savage v. Scales*,
    310 F. Supp. 2d 122 (D.D.C. 2004)...............................................26

*United States v. Dist. of Columbia*,
    44 F. Supp. 2d 53 (D.D.C. 1999)...................................................26

\*   Authorities upon which we chiefly rely are marked with asterisks.

*United States v. MacCollom,*
    426 U.S. 317 (1976)...................................................................3

*Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*,
    505 U.S. 214 (1992).................................................................15


## Constitutional Provisions

U.S. Const. art. I, § 7...................................................................4

\*   U.S. Const. art. I, § 8, cl. 17.....................................................2, 3

\*   U.S. Const. art. I, § 9, cl. 7..................................................2, 3, 29

U.S. Const. art. VI.....................................................................18


## Statutes and Legislative Authorities:

Financial Services and General Government Appropriations Act, 2014,
    located at Division E of the Consolidated Appropriations Act, 2014,
    Pub. L. No. 113-76, div. E, tit. IV, 128 Stat. 5 (2014) ...............10, 11, 17, 24

Pub. L. No. 113-6, 127 Stat. 198 (2013)....................................10

Pub. L. No. 112-74, 125 Stat. 786 (2011)..................................10

Pub. L. No. 112-10, 125 Stat. 38 (2011)....................................10

2 U.S.C. §§ 621-661f ....................................................................6

2 U.S.C. § 633(f)............................................................................6

2 U.S.C. § 642(a) ..........................................................................6

31 U.S.C. § 1102............................................................................5

31 U.S.C. § 1105(a) .......................................................................5

Act of July 12, 1870, ch. 251, § 7, 16 Stat. 251...........................8

\*   Antideficiency Act, 31 U.S.C. § 1341(a)(1)..................................8, 9, 27

District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774 (1973), *codified as amended at* D.C. Code §§ 1-201.01–1-207.71 (2012)..........................2, 13, 14, 15, 16, 29

H. Res. 5, 113th Cong. § 4(a)(1)(B) (2013).............................................1

Rules of the House of Representatives, 113th Cong. (2013)

    Rule II.8 ........................................................................1

    Rule XXI.2........................................................................6

District of Columbia Budget Autonomy Act, H.R. 1254, 97th Cong. (1981) ...........................................18

District of Columbia Budget Autonomy Act, H.R. 3708, 98th Cong. (1983) ...........................................18

District of Columbia Budget Autonomy Act, H.R. 3699, 98th Cong. (1983) ...........................................18

District of Columbia Budget Autonomy Act, H.R. 324, 99th Cong. (1985) ...........................................18

District of Columbia Legislative and Budget Autonomy Act of 1991, H.R. 3581, 102d Cong. (1991) ...........................................18

District of Columbia Legislative and Budget Autonomy Act of 1993, H.R. 2071, 103d Cong. (1993) ...........................................18

District of Columbia Legislative and Budget Autonomy Act of 1998, H.R. 3920, 105th Cong. (1998) ...........................................19

District of Columbia Budget Autonomy Act of 1998, H.R. 4054, 105th Cong. (1998) ...........................................19

District of Columbia Budget Autonomy Act of 1999, H.R. 1197, 106th Cong. (1998) ...........................................19

District of Columbia Budget Autonomy Act of 2003, H.R. 2472, 108th Cong. (2003) ...........................................19

District of Columbia Budget Autonomy Act of 2003,
S. 1267, 108th Cong. (2003)............................................................19

District of Columbia Budget Autonomy Act of 2005,
H.R. 1629, 109th Cong. (2005) .....................................................19

District of Columbia Budget Autonomy Act of 2007,
H.R. 733, 110th Cong. (2007) .......................................................19

District of Columbia Budget Autonomy Act of 2009,
H.R. 1045, 111th Cong. (2009) .....................................................19

District of Columbia Budget Autonomy Act of 2011,
H.R. 345, 112th Cong. (2011) .......................................................19

District of Columbia Budget Autonomy Act of 2013,
H.R. 345, 113th Cong. (2013) .......................................................20

District of Columbia Financial Efficiency Act of 2013,
H.R. 2793, 113th Cong. (2013) .....................................................22

District of Columbia Government Shutdown Avoidance Act of 2013,
H.R. 3100, 113th Cong. (2013) .....................................................22

District of Columbia Local Budget Autonomy Act of 2012,
2012 D.C. Legis. Serv. 19-321 (West) ......................................2, 3, 16, 17, 26

District of Columbia Local Budget Autonomy Act of 2012,
S. 2345, 112th Cong. (2012).........................................................20

District of Columbia Local Funds Continuation Act,
H.R. 1196, 113th Cong. (2013) .....................................................21

District of Columbia Budget Accountability Act of 2014,
S. 2246, 113th Cong. (2014).........................................................23

Financial Services and General Government Appropriations Act, 2014,
S. 1371, 113th Cong. (2013)..................................................11, 17, 22, 24, 25

Financial Services and General Government Appropriations Act, FY 2015,
H.R. 5016, 113th Cong. (2014) .....................................................11

159 Cong. Rec. E298 (daily ed. Mar. 14, 2013)......................................21

159 Cong. Rec. E1312 (daily ed. Sept. 12, 2013)..................................................22

H. Rep. No. 113-508 (2014) ................................................................12

House Comm. on Appropriations, Financial Services and General
    Government Appropriations Bill, 2014,
    H. Rep. No. 113-172 (2013) ........................................................27

H. Rep. No. 93-482 (1973) ................................................................15

S. Comm. on Gov't Operations, *Financial Management in the Federal
    Government*, S. Doc. No. 87-11 (1961)..........................................8

**Other Authorities:**

Ben Pershing, *Abortion Ban Attached to D.C. Budget Bill*, Wash. Post,
    Nov. 14, 2011 ...............................................................19

Ben Pershing, *District Leaders Reject Issa's Budget Autonomy Bill Over
    Abortion Ban*, Wash. Post, Nov. 16, 2011....................................20

Ben Pershing, *GOP Amendments Scuttle D.C. Budget Autonomy Bill*,
    Wash. Post, June 26, 2012..............................................20

Congress.gov, *Appropriations by Fiscal Year*,
    http://beta.congress.gov/legislation/appropriations/.....................10

Congress.gov, H.R. 5016 – Financial Services and General Government
    Appropriations Act, FY 2015, https://beta.congress.gov/bill/113th-
    congress/house-bill/5016 ..............................................12

Executive Office of the President of the United States, Fiscal Year 2014
    Budget of the U.S. Government – Other Independent Agencies .................21

Executive Office of the President of the United States, Fiscal Year 2015
    Budget of the U.S. Government – Other Independent Agencies .................23

Gary L. Hopkins & Robert M. Nutt, *The Anti-Deficiency Act (Revised
    Statutes 3679): And Funding Federal Contracts: An Analysis*,
    80 Mil. L. Rev. 51 (1978)..............................................8

Gov't Accountability Office, B-324987, District of Columbia – Local
    Budget Autonomy Act of 2012 (Jan. 30, 2014) ...........................................27

Gov't Accountability Office, Principles of Federal Appropriations Law
    (3d ed. 2004) ...........................................................................................8, 28

Jessica Tollestrup, Cong. Research Serv., R42388, *The Congressional
    Appropriations Process: An Introduction* (2012) ..........................................7

Library of Cong., *Status of Appropriations Legislation for Fiscal Year 2010*,
    http://thomas.loc.gov/home/approp/app10.html ............................................9

U.S. House of Representatives, Comm. on Appropriations, *Financial Services
    Subcommittee*, http://appropriations.house.gov/
    about/jurisdiction/financegovernment.htm......................................................9

# GLOSSARY OF TERMS

| | |
|---|---|
| BAA | District of Columbia Local Budget Autonomy Act of 2012, 2012 D.C. Legis. Serv. 19-321 (West) |
| Consolidated Appropriations Act, 2014 | Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. E, tit. IV, 128 Stat. 5 (2014) |
| Financial Services and General Appropriations Act, 2014 | Division E of the Consolidated Government Appropriations Act, 2014, Pub. L. No. 113-76, div. E, tit. IV, 128 Stat. 5 (2014) |
| GAO | Government Accountability Office |
| HRA or Home Rule Act | District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774 (1973), *codified as amended at* D.C. Code §§ 1-201.01– 1-207.71 (2012) |
| House | Bipartisan Legal Advisory Group of the U.S. House of Representatives |

# STATEMENT OF INTEREST[1]

*Amicus curiae* the Bipartisan Legal Advisory Group of the U.S. House of Representatives ("House") presents the institutional position of the House in litigation matters in which it appears.[2]

The House has a significant interest in the outcome of this case because the legal questions regarding budget autonomy for the District of Columbia – which questions are central to this dispute – directly implicate Congress's institutional power both with respect to federal appropriations generally, *see* U.S. Const. art. I,

---

[1]  No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and no other person or entity, other than the amicus curiae, contributed money that was intended to fund the preparation or submission of this brief.

[2]  *See* H. Res. 5, 113th Cong. § 4(a)(1)(B) (2013) ("[T]he Bipartisan Legal Advisory Group continues to speak for, and articulate the institutional position of, the House in all litigation matters in which it appears . . . ."), *available at* http://beta.congress.gov/113/bills/hres5/BILLS-113hres5eh.pdf; Rule II.8, Rules of the House of Representatives, 113th Cong. (2013) ("House Rules") (establishing Office of General Counsel, which "function[s] pursuant to the direction of the Speaker, who shall consult with a Bipartisan Legal Advisory Group, which shall include the majority and minority leaderships"), *available at* http://clerk.house .gov/legislative/house-rules.pdf.

The Group currently is composed of the Honorable John A. Boehner, Speaker of the House; the Honorable Kevin McCarthy, Majority Leader; the Honorable Steve Scalise, Majority Whip; the Honorable Nancy Pelosi, Democratic Leader; and the Honorable Steny H. Hoyer, Democratic Whip.  The Democratic Leader and the Democratic Whip oppose the filing of this brief.

§ 9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ."), and with respect to the District in particular, *see id.* art. I, § 8, cl. 17 ("Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may . . . become the Seat of the Government of the United States . . . .").

Pursuant to that latter constitutional authority, Congress in 1973 delegated to the District certain "home rule" authority via the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) (SA 6-68), *codified as amended at* D.C. Code §§ 1-201.01– 1-207.71 (2012) ("Home Rule Act" or "HRA").  In doing so, however, Congress specifically reserved for itself plenary authority over the District's spending, including the spending of any locally-derived funds.  *See* HRA § 446 (SA 33) (stating, prior to its purported amendment by local enactment at issue here:  "No amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act.").  Consequently, the authority of the District to obligate and expend funds, *including* any locally-derived funds, depends entirely on the enactment by Congress each year of legislation that appropriates such funds.

The District of Columbia Local Budget Autonomy Act of 2012, 2012 D.C. Legis. Serv. 19-321 (West) ("BAA") (SA 78-80), purports to change these

constitutional and statutory mandates by, in particular, replacing Congress's *affirmative* role in appropriating the "local portion of the [District's] annual budget" with a *passive* role in which the District could expend locally-derived funds in the *absence* of any affirmative congressional action.  *Id.* § 2(e) (SA 78-79).  The BAA thus is inconsistent with Congress's plenary authority over all District appropriations, and the only constitutionally permissible manner by which the District can achieve the budget autonomy it seeks is for Congress, by way of the normal legislative process, to provide that authority – and Congress has not done that.

Both parties have consented to the House's participation as amicus in this matter.  *See* Notice of Intent to File Br. as Amicus Curiae (Aug. 1, 2014).

## BACKGROUND

At bottom, this case concerns Article I "Appropriations" – specifically, the process by which funds are made available to the District for obligation and expenditure.  *See* U.S. Const. art. I, § 9, cl. 7; *see also id.* art. I, § 8, cl. 17.  The quintessential axiom of federal appropriations law is that "the expenditure of public funds is proper *only when authorized by Congress . . . .*"  *United States v. MacCollom*, 426 U.S. 317, 321 (1976) (emphasis added).  Federal funds are made available for obligation and expenditure only by "Appropriations," which are accomplished via congressional enactments – commonly referred to as

appropriations acts – adopted through the legislative process established in the Constitution. *See* U.S. Const. art. I, § 7 (requiring passage by both houses of Congress (bicameralism) and presentment to President for signature or veto (presentment)).

Appropriations should not be confused with "budgets." Budgets do not provide any legal authority to obligate or expend funds, they are merely requests or recommendations for spending levels traditionally submitted to Congress by the heads of the other branches of government (i.e., the President for the Executive Branch and the Judicial Conference for the Judicial Branch). Because, as explained in more detail below, these budget requests (including those submitted by the District) are not binding on Congress, the dispute between the Council and the Mayor regarding the changes purportedly made by the BAA to the District's *budget process* is, as a practical matter, largely beside the point insofar as Congress is concerned. The only issue with real legal significance here is the validity of the BAA's purported alteration of the process by which Congress *appropriates* locally-derived revenues to the District.

## I.    The Federal Budget and Appropriations Process.

Congress, via various statutes and congressional rules, implements its Article I "Appropriations" authority, including its authority with respect to the District, through a detailed budget and appropriations process. That process

4

involves the consideration and passage of annual appropriations bills that fund a broad range of governmental activities such as national defense, homeland security, domestic social programs, and, of particular interest here, the District. Annual appropriations acts generally provide funding authority that expires at the end of each federal fiscal year, September 30.  *See* 31 U.S.C. § 1102.

The starting point of the federal budget and appropriations process is the submission of the President's budget which, by statute, must be transmitted to Congress no later than the first Monday in February, *see id.* § 1105(a), although presidents have been known to miss that deadline.  The President's budget contains requests for specific spending levels for the various programs and agencies of the federal government, and includes the District budget as well.[3]  After the President submits his budget, each federal agency – and the District – typically provides, directly to the appropriate subcommittee of the House and Senate Appropriations Committees, any additional materials justifying their requested spending levels. As noted, these budget requests are only that – requests for funding.  They do not obligate Congress to appropriate the funds requested in the amounts or the manner requested.

_____

[3]  The President's budget typically includes only the federal portion of the District budget, in which case he submits the local portion of the District budget to Congress later, after it is transmitted to him by the Mayor.

After the President submits his budget, the House and Senate consider and normally adopt an annual budget resolution, pursuant to statute. *See* 2 U.S.C. §§ 621-661f. The budget resolution, among other things, (i) sets total budget authority and outlay levels for the fiscal year covered by the resolution, and (ii) allocates those outlays among approximately 20 functional spending categories (e.g., national defense, agriculture, transportation). Even assuming that a single budget resolution is agreed to by both the House and Senate, that resolution is not transmitted to the President and, therefore, does not become law. Rather, that resolution functions as a guide for the House and Senate as they consider various budget-related bills, including appropriations and tax measures. Both the House and Senate have adopted rules designed to encourage both houses to hue to the spending ceilings established by the budget resolution. *See, e.g.*, House Rule XXI.2(d), XXI.2(f); *see also* 2 U.S.C. § 633(f) (prohibiting floor consideration of any bill, joint resolution, amendment, or conference report that provides new budget authority in excess of outlays established by budget resolution); 2 U.S.C. § 642(a)(1)-(2) (prohibiting floor consideration of legislation providing new budget authority that would exceed applicable total budget authority).

Once a budget resolution has been adopted by both chambers, the House and Senate Appropriations Committees begin preparing the actual, annual appropriations bills. Each of the 12 subcommittees of the respective House and

Senate Appropriations Committees is responsible for one of the annual appropriations bills.  Typically, the House Appropriations Committee begins reporting bills in May or June, with the aim of completing committee and floor consideration of all 12 bills prior to the annual August recess.  *See* Jessica Tollestrup, Cong. Research Serv., R42388, *The Congressional Appropriations Process: An Introduction* 5 (2012), *available at* http://www.senate.gov/ CRSReports/crs-publish.cfm?pid=%260BL%2BP%3C%3B3%0A.  The Senate Appropriations Committee normally begins reporting bills in June and generally aims to complete committee and floor consideration by September.  *See id.*

During the remaining period before the start of the new fiscal year (October 1), the House and Senate Appropriations Committees typically negotiate to resolve any differences between the appropriations bills passed by their respective chambers.  *See id.*  If agreement is reached and both chambers approve the agreement, the resulting legislation is sent to the President for his signature or veto. If agreement cannot be reached, Congress may enact one or more continuing resolutions to keep government operations funded pending final disposition of either the 12 regular appropriations bills, one or more omnibus appropriations bills (combining several regular bills into one larger bill), or some combination thereof.

Enforcement of Congress's constitutional power over the public purse and the congressional appropriations process is accomplished primarily through a

federal statute known as the Antideficiency Act, 31 U.S.C. § 1341(a)(1) (SA 5).

Initially adopted in 1870, *see* Act of July 12, 1870, ch. 251, § 7, 16 Stat. 251, the

Antideficiency Act primarily was intended to prevent the recipients of appropriated

funds from avoiding congressional spending limitations.  Prior to the Act's

adoption, appropriated funds routinely were (i) obligated without or in advance of

appropriations, (ii) improperly commingled, and (iii) used for purposes other than

those for which Congress appropriated them.  *See* Gary L. Hopkins & Robert M.

Nutt, *The Anti-Deficiency Act (Revised Statutes 3679): And Funding Federal*

*Contracts: An Analysis*, 80 Mil. L. Rev. 51, 56-57 (1978).  Moreover, recipients

frequently would obligate or expend their appropriations during the early parts of a

fiscal year, continue to operate, and eventually appeal to Congress for a special

appropriation to fund their "coercive deficiencies."  *See id.* at 58-59; *see also* 2

Gov't Accountability Office ("GAO"), Principles of Federal Appropriations Law

6-34 (3d ed. 2004).  Amendments to the Antideficiency Act, especially those after

World War II, have strengthened Congress's control over the purse by further

restricting the process by which federal funds are appropriated.  *See* S. Comm. on

Gov't Operations, *Financial Management in the Federal Government*, S. Doc. No.

87-11, at 46 (1961).

     Of particular relevance here, the Antideficiency Act makes it a crime for any

"officer or employee of the United States Government," including officers of the

8

District of Columbia, to obligate or expend funds in excess of the amount

appropriated or available.  *See* 31 U.S.C. § 1341(a)(1)(A) (SA 5).  In addition, the

Act prohibits officers and employees from promising, via contract, to obligate

funds in advance of appropriations.  *See id.* § 1341(a)(1)(B) (SA 5).  In other

words, employees of the District cannot obligate or expend funds or enter into

contracts to expend funds – even locally-derived funds – unless and until Congress

has enacted an annual appropriations act.

In the House, the Subcommittee on Financial Services and General

Government of the House Appropriations Committee has jurisdiction over the

District's appropriations.  *See* U.S. House of Representatives, Comm. on

Appropriations, *Financial Services Subcommittee*, http://appropriations.house

.gov/about/jurisdiction/financegovernment.htm (last visited Aug. 7, 2014).

Traditionally, that Subcommittee has considered the District's appropriations

language in June or July as part of the regular order, with full Committee

consideration following shortly thereafter.  *See, e.g.*, Library of Cong., *Status of*

*Appropriations Legislation for Fiscal Year 2010*, http://thomas.loc.gov/home/

approp/app10.html (last visited Aug. 7, 2014) (Committee vote on FY 2010 bill

occurred on July 7, 2009).  In recent years, Congress has not followed regular

order in adopting appropriations bills; rather, it has adopted either omnibus

legislation or continuing resolutions to fund government operations, including

9

those of the District.  *See generally* Congress.gov, *Appropriations by Fiscal Year*,

http://beta.congress.gov/legislation/appropriations/ (last visited Aug. 7, 2014).

Although the appropriations process in Congress has varied somewhat from

year to year, the language used to appropriate funds for the District generally has

not.  For example, during the past several fiscal years, Congress has appropriated

the District's locally-derived funds using substantially similar language.  *See, e.g.*,

Pub. L. No. 113-76, 128 Stat. 5, 207 (2014) (FY 2014) ("Local funds are

appropriated for the District of Columbia for the current fiscal year out of the

General Fund of the District of Columbia . . . ."); Pub. L. No. 113-6, 127 Stat. 198,

417 (2013) (FY 2013) ("Notwithstanding any other provision of this division, . . .

the District of Columbia may expend local funds under the heading 'District of

Columbia Funds' . . . ."); Pub. L. No. 112-74, 125 Stat. 786, 906 (2011) (FY 2012)

("The following amounts are appropriated for the District of Columbia for the

current fiscal year out of the General Fund of the District of Columbia ('General

Fund'), except as otherwise specifically provided . . . .").

Furthermore, Congress generally has appropriated the District's locally-

derived funds in a manner consistent with the District's requests.  *See, e.g.*, Pub. L.

No. 112-10, 125 Stat. 38, 135 (2011) (continuing resolution for April 16, 2011

through September 30, 2011) ("Notwithstanding any other provision of this

division, . . . the *District of Columbia may expend local funds* for programs and

10

activities under the heading 'District of Columbia Funds' . . . at the rate set forth under 'District of Columbia Funds' as included in the Fiscal Year 2011 Budget Request Act . . . ." (emphasis added)).

In addition, given that one of the cited rationales for the BAA is Congress's failure to enact annual appropriations acts on time, *see* Br. for Pl.-Appellant . . . at 13-14 (July 1, 2014) ("Appellant's Brief"), the Court should be aware that: (i) the District currently is authorized to obligate and expend its locally-derived revenues through the end of FY 2014 (Sept. 30, 2014), *see* Financial Services and General Government Appropriations Act, 2014, located at Division E of the Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. E, tit. IV, 128 Stat. 5, 204 (2014) ("Consolidated Appropriations Act, 2014"); (ii) Congress may act prior to September 30, 2014 to appropriate the District's locally-derived revenues for FY 2015 (Oct. 1, 2014 – Sept. 30, 2015); and (iii) if Congress does not act prior to September 30, 2014, the District's locally-derived revenues already are appropriated for FY 2015, provided *only* that the District submit a budget request to Congress prior to October 1, 2014, something that is entirely within the District's control, *see id.* § 816(a).[4]

---

[4] The House Committee Report accompanying the Financial Services and General Government Appropriations Act, FY 2015, H.R. 5016, 113th Cong. (2014), suggests that, despite the ongoing dispute over the validity of the BAA, the Committee on Appropriations received a proposed local budget from Mayor Gray:

(*Continued . . .* )

Finally, H.R. 5016, the Financial Services and General Government

Appropriations Act, 2015, was considered and approved by the House Committee

on Appropriations on June 18, 2014, and adopted by the Full House of

Representatives on July 16, 2014.  *See* Congress.gov, H.R. 5016 – Financial

Services and General Government Appropriations Act, FY 2015, https://beta.

congress.gov/bill/113th-congress/house-bill/5016 (last visited July 29, 2014)

(indicating that H.R. 5016 was passed by the House).  Like the Financial Services

and General Government Appropriations Act, 2014, the proposed FY 2015

legislation contains language permitting the District to obligate and expend its

locally-derived revenues for FY 2016 even if Congress fails to enact appropriations

legislation for FY 2016.  *See* H.R. 5016, § 816(a).  In other words, assuming that

§ 816(a) of the Financial Services and General Government Appropriations Act,

2015, as approved by the House, also is approved by the Senate and signed into

---

[H.R. 5016] provides local funds for the operation of the District of Columbia as approved by the District of Columbia Council and the Mayor. *The local budget proposed by the Mayor* provides an appropriation of $12,618,418,000 for operations of the District of Columbia. This amount includes estimated funding of $7,065,551,000 of local funds, $2,074,811,000 in Medicaid payments, and the remainder from other Federal and local funds.

H. Rep. No. 113-508, 45 (2014) (emphasis added).

12

law by the President (either as a stand-alone measure or as part of a consolidated appropriations act), the District will continue to be insulated from any adverse effects of a government shutdown through the end of FY 2016 (September 30, 2016).

## II.     The Home Rule Act.

As part of the Home Rule Act, Congress adopted a Charter for the District, *see* HRA §§ 401-495 (SA 17-44), that "establishes the organizational structure of the District government," *Jackson v. D.C. Bd. of Elections & Ethics*, 999 A.2d 89, 95 (D.C. 2010).  With respect to the District's finances, Congress created a "General Fund of the District," which was intended to house all locally-derived revenues collected by any agency, officer, or employee of the District, except for moneys received by the District's courts which are deposited in the United States Treasury or the Crime Victims Fund.  *See* HRA § 450 (SA 35).  In so legislating, Congress did not specify the purposes for which monies in the General Fund could or could not be used; rather, those decisions were retained for determination in the future through the annual budget and appropriations process.  *See id.*

As to the *budget* process, the Home Rule Act established a three-step procedure for proposal, adoption, and transmission of the District's budget to the President and Congress.  *First*, the Mayor is required to prepare and submit to the

Council a budget proposal "[a]t such time as the Council may direct."  HRA

§ 442(a) (SA 30-31).  *Second*, "[t]he Council, within fifty calendar days after

receipt of the budget proposal from the Mayor, and after public hearing," is

required to "adopt the annual budget for the District of Columbia government."  *Id.*

§ 446 (SA 33) (as this section stood prior to its purported amendment by BAA).

*Third*, the Mayor is required to "submit[] . . . to the President [the adopted budget]

for transmission by [the President] to the Congress."  *Id.* (also as this section stood

prior to its purported amendment by BAA).

        As to the *appropriations* process – that is, the authority actually to obligate

and expend funds – the Home Rule Act expressly provides that "[n]o amount may

be obligated or expended by any officer or employee of the District of Columbia

government *unless such amount has been approved by Act of Congress*, and then

only according to such Act."  *Id.* (emphasis added; as this section stood prior to its

purported amendment by BAA).  In addition, the Home Rule Act provides that:

> [n]othing in this Act shall be construed as making any
> change in existing law, regulation, or basic procedure and
> practice *relating to the respective roles of the Congress*,
> the President, the federal Office of Management and
> Budget, and the Comptroller General of the United States
> in the preparation, review, submission, examination,
> authorization, and appropriation of the total budget of the
> District of Columbia government.

*Id.* § 603(a) (SA 46) (emphasis added).[5]

Nothing in the Home Rule Act suggests an appropriation – permanent or otherwise – by which the District legally may obligate or expend funds without further, affirmative congressional action.  Put another way, the District has no authority to obligate or expend funds, including locally-derived funds, without the enactment into law of an appropriations act through the normal constitutional processes of bicameralism and presentment.  Accordingly, any attempt by employees of the District to obligate or expend funds, absent an appropriation, would violate the Antideficiency Act.  *See* 31 U.S.C. § 1341(a)(1) (SA 5); *supra* pp. 7-9.

Furthermore, as the Mayor correctly has explained, this finely wrought procedure for proposing, transmitting, and adopting a budget, combined with the express reservation by Congress of its constitutional authority to appropriate funds, is not subject to amendment by the District.  *See* Br. for Appellees . . . at Argument, Part II (July 31, 2014) ("Appellees' Brief").  In contrast, Congress

---

[5]  The phrase "[n]othing in this Act shall be construed" in the HRA § 603(a) (SA 46) mirrors language that appears in the HRA § 602(b) (SA 46), which language clearly was intended to be a prohibition on the Council's power.  *See* H. Rep. No. 93-482, at 37 (1973) ("Subsection (b) [of § 602] *prohibits* the Council from exceeding its present authority . . . ." (emphasis added)).  The same phrase "appearing in several places in a statutory text is generally read the same way each time it appears."  *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *accord Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995); *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 225 (1992).

delegated greater legislative power to the District with respect to non-appropriations/budget measures, reserving to itself only the ability to review legislation after enactment at the District level. *See* HRA § 602(c)(1) (SA 46). If Congress does not disapprove of such other measures within a specified time, they become the law of the District. *See id.*

### III.    The Budget Autonomy Act.

The BAA purports, among other things, to amend the District Charter so as to allow the District to spend "local portion" funds without an affirmative congressional appropriation. BAA § 2(e) (SA 78-80). Specifically, the BAA purports to provide that the District may obligate and expend the "local portion" funds if (i) appropriate legislation is adopted by the Council "within 70 calendar days . . . after receipt of the [annual] budget proposal from the Mayor," (ii) such legislation is signed by the Mayor or in the event of his or her veto is adopted by a veto override, and (iii) such legislation is forwarded to Congress for a 30-day *passive* review period, meaning that the proposed legislation would take effect if Congress failed to adopt a joint resolution of disapproval within 30 days. *Id.*

In short, by transforming Congress's role in the District's budget process from one of active enactment to one of passive review and effectively shifting appropriations power from Congress to the Council, *see id.*, the BAA is an attempt to rework the Home Rule Act's carefully crafted distinction between the Council's

16

general legislative authority and its far more limited budget and appropriations authority.[6]

## DISCUSSION

We have reviewed the District Court's opinion, Appellant's Brief, and the Appellees' Brief. The House concurs with the Mayor's legal arguments, *see* Appellees' Br. at 17-61, and associates itself with those arguments.

The Council's position that the Home Rule Act provides it the power to amend its Charter to implement the form of budget autonomy it now claims to possess, *see generally* Appellant's Br. at 26-42 (contending that the Home Rule Act does not prevent amendments to the budget process), is belied by three additional considerations not discussed at length by Appellees. *First*, the Council's position is inconsistent with repeated efforts by the District and its supporters in Congress – both before the BAA purportedly "took effect" in July 2013, and after – to pass legislation *in Congress* to achieve the very budget autonomy the Council now says the District has had the power to confer on itself since 1973. *See infra* Discussion Part I. *Second*, the BAA is inconsistent with § 816(a) of the Financial Services and General Government Appropriations Act, 2014, *see* Division E of the Consolidated Appropriations Act, 2014, which was enacted after the BAA

---

[6] The BAA also amends the Home Rule Act to authorize the Council to change the District's fiscal year. *See* BAA § 2(d) (SA 78).

purportedly took effect.  As a result, the BAA fails under the Supremacy Clause,

U.S. Const. art. VI, at least through the end of FY 2015 (Sept. 30, 2015) and,

assuming the FY 2015 appropriations bill is signed into law, through the end of FY

2016 (Sept. 30, 2016).  *See infra* Discussion Part II.  *Third*, because the Home Rule

Act does not delegate to the Council the authority to appropriate its own locally-

derived revenue, any obligation or expenditure of funds by District employees,

absent an appropriation by Congress, violates the federal Antideficiency Act.  *See*

*infra* Discussion Part III.

## I.    Legislative Efforts in Congress to Provide Budget Autonomy to the District Undercut the Council's Position.

### A.    Legislative Efforts That Pre-Date the Budget Autonomy Act.

District budget autonomy efforts began as early as 1981 when then-Delegate

Walter Fauntroy introduced the District of Columbia Budget Autonomy Act, H.R.

1254, 97th Cong. (1981), proposing to end the requirement that Congress annually

appropriate the District's locally-derived funds.  Similar bills were introduced in

nearly every Congress thereafter.  *See, e.g.*, District of Columbia Budget

Autonomy Act, H.R. 3708, 98th Cong. (1983); District of Columbia Budget

Autonomy Act, H.R. 3699, 98th Cong. (1983); District of Columbia Budget

Autonomy Act, H.R. 324, 99th Cong. (1985); District of Columbia Legislative and

Budget Autonomy Act of 1991, H.R. 3581, 102d Cong. (1991); District of

Columbia Legislative and Budget Autonomy Act of 1993, H.R. 2071, 103d Cong.

18

(1993); District of Columbia Legislative and Budget Autonomy Act of 1998,

H.R. 3920, 105th Cong. (1998); District of Columbia Budget Autonomy Act of

1998, H.R. 4054, 105th Cong. (1998); District of Columbia Budget Autonomy Act

of 1999, H.R. 1197, 106th Cong. (1998); District of Columbia Budget Autonomy

Act of 2003, H.R. 2472, 108th Cong. (2003); District of Columbia Budget

Autonomy Act of 2003, S. 1267, 108th Cong. (2003); District of Columbia Budget

Autonomy Act of 2005, H.R. 1629, 109th Cong. (2005); District of Columbia

Budget Autonomy Act of 2007, H.R. 733, 110th Cong. (2007); District of

Columbia Budget Autonomy Act of 2009, H.R. 1045, 111th Cong. (2009); District

of Columbia Budget Autonomy Act of 2011, H.R. 345, 112th Cong. (2011).

In the last Congress (the 112th), the Chairman of the House Committee on

Oversight and Government Reform proposed legislation that would have given the

District more autonomy over its local funds by (i) starting the fiscal year on July 1

rather than October 1, and (ii) "allow[ing] the District to begin spending its own

money after the council and mayor have approved the city's budget, without

having to wait for Congress to give its approval."  Ben Pershing, *Abortion ban

attached to D.C. budget bill*, Wash. Post, Nov. 14, 2011, *available at*

http://www.washingtonpost.com/local/dc-politics/issa-attaches-abortion-ban-to-dc-

budget-autonomy-bill/2011/11/14/gIQAsFW7LN_story.html.  That bill was

withdrawn after District leaders objected to other language in the bill.  *See* Ben

19

Pershing, *District leaders reject Issa's budget autonomy bill over abortion ban*, Wash. Post, Nov. 16, 2011, *available at* http://www.washingtonpost.com/blogs/dc-wire/post/district-leaders-reject-issas-budget-autonomy-bill-over-abortion-ban/2011/11/16/gIQAC4sGRN_blog.html.

In April 2012, a similar bill was introduced in the Senate. *See* District of Columbia Local Budget Autonomy Act of 2012, S. 2345, 112th Cong. (2012). That bill would have "permit[ted] the Government of the District of Columbia to determine the fiscal year period" and made "local funds of the District of Columbia for a fiscal year available for use by the District upon enactment of the local budget act for the year subject to a period of Congressional review." *Id.*, Preamble. That bill also was withdrawn at the request of city officials after amendments they disliked were proposed. *See* Ben Pershing, *GOP amendments scuttle D.C. budget autonomy bill*, Wash. Post, June 26, 2012, *available at* http://www.washingtonpost.com/local/dc-politics/gop-amendments-scuttle-dc-budget-autonomy-bill/2012/06/26/gJQAEKoN5V_story.html.

Budget autonomy efforts have continued in the current Congress. For example, in January 2013, Delegate Eleanor Holmes Norton introduced the District of Columbia Budget Autonomy Act of 2013, H.R. 345, 113th Cong. (2013), which would give the District autonomy over its locally-derived funds without being subject to congressional approval.

20

In March 2013, after the proposed BAA appeared on a draft referendum ballot, Delegate Norton introduced the District of Columbia Local Funds Continuation Act, H.R. 1196, 113th Cong. (2013), which would permit the District to spend money from its General Fund in the event of a lapse in federal appropriations for the District.  *See also* 159 Cong. Rec. E298 (daily ed. Mar. 14, 2013) (statement of Del. Norton) (acknowledging that, "[a]lthough the District government raises and manages an $8 billion local budget, Congress technically appropriates these local funds back to the District government, a holdover and throwback to the pre-home-rule period").

In April 2013, shortly before the referendum took place, President Obama included in his FY 2014 budget a proposal to provide the District budget autonomy without congressional review – again, by way of congressional legislation.  *See* Executive Office of the President of the United States, Fiscal Year 2014 Budget of the U.S. Government – Other Independent Agencies, at 1232-33 (proposing to add following language to Home Rule Act:  "[U]pon the enactment by the District of Columbia of the annual budget, or any amendments or supplements thereto, for a fiscal year, officers and employees of the District of Columbia government may obligate and expend District of Columbia funds and hire employees in accordance with that budget."), *available at* http://www.whitehouse.gov/sites/default/files /omb/budget/fy2014/assets/oia.pdf.

21

And in July 2013 – during the purported BAA congressional review period – two more budget autonomy bills were introduced in Congress, one by the Chairman of the House Committee on Oversight and Government Relations. *See* District of Columbia Financial Efficiency Act of 2013, H.R. 2793, 113th Cong. (2013) (proposing to give District power to spend locally-derived revenues from General Fund in event of federal government shutdown, and to establish its own fiscal year); *see also* Financial Services and General Government Appropriations Act, 2014, S. 1371, 113th Cong. (2013) (containing language similar to that in President Obama's FY 2014 budget).

## B.      Legislative Efforts That Post-Date the Budget Autonomy Act.

Budget autonomy efforts continued apace *after* the BAA purported to become "effective" in July 2013. For example, in September 2013, Delegate Norton introduced the District of Columbia Government Shutdown Avoidance Act of 2013, H.R. 3100, 113th Cong. (2013), which would permanently authorize the District to spend locally-derived revenues in a given fiscal year in the event of a lapse in federal appropriations. *See also* 159 Cong. Rec. E1312 (daily ed. Sept. 12, 2013) (statement of Del. Norton) (again acknowledging that "[t]he District of Columbia raises and manages an $8 billion local budget, but Congress technically appropriates these funds back to the District, an anachronistic holdover and throwback from the pre-home-rule era").

In March 2014, President Obama submitted his FY 2015 budget which included language on District budget autonomy identical to that in his FY 2014 budget.  *See* Executive Office of the President of the United States, Fiscal Year 2015 Budget of the U.S. Government – Other Independent Agencies, at 1292, *available at* http://www.whitehouse.gov/sites/default/files/omb/budget/fy2015/assets/oia.pdf.  The President's budget stated that "it is the Administration's view that the District's local autonomy should be enhanced and increased," and that "[t]he Administration will work with Congress and the Mayor to provide the District local budget and legislative autonomy, as proposed in the Budget."  *Id.* at 1287.

Finally, on April 10, 2014, shortly before this action was commenced in Superior Court, Senator Mark Begich introduced in the Senate a bill that would accomplish precisely what the BAA, in Appellant's view, already has achieved: "[P]ermit the Government of the District of Columbia to determine the fiscal year period" and "to make local funds of the District of Columbia for a fiscal year available for use by the District upon enactment of the local budget act for the year subject to a period of Congressional review."  District of Columbia Budget Accountability Act of 2014, S. 2246, 113th Cong., Preamble (2014).

\*          \*          \*

In sum, it is very difficult, if not impossible, to square the Council's view that the District has had the power since 1973 to achieve budget autonomy on its own with this history of repeated efforts by the District itself and its supporters in Congress to achieve that very authority through federal legislation.

## II.    The Budget Autonomy Act Is Inconsistent with § 816(a) of the Financial Services and General Government Appropriations Act, 2014.

In January of this year, long after the BAA purportedly took effect, Congress enacted, and the President signed, the Consolidated Appropriations Act, 2014, which includes, at Division E, the Financial Services and General Government Appropriations Act, 2014.

Title IV of the Financial Services and General Government Appropriations Act, 2014 appropriated the District's locally-derived funds "for the current fiscal year out of the General Fund of the District of Columbia . . . for programs and activities set forth . . . in the Fiscal Year 2014 Budget Request Act of 2013 submitted to the Congress by the District of Columbia."  *Id.* at tit. IV.  And § 816(a) of that Act – responding to problems the District experienced as a result of the partial federal government shutdown in October 2013 – appropriated, on a contingent basis, the District's locally-derived revenues for FY 2015 (i.e., Oct. 1, 2014 – Sept. 30, 2015):

24

> During fiscal year 2015, during a period in which neither
> a District of Columbia continuing resolution or a regular
> District of Columbia appropriation bill is in effect, local
> funds are appropriated in the amount provided for any
> project or activity for which local funds are provided in
> the Fiscal Year 2015 Budget Request Act of 2014 as
> submitted to Congress (subject to any modifications
> enacted by the District of Columbia as of the beginning
> of the period during which this subsection is in effect) at
> the rate set forth by such Act.

*Id.* § 816(a).  Accordingly, if Congress fails to act by September 30, 2014, the

District's locally-derived revenues are automatically appropriated (in the amounts

provided in the District's budget).

Section 816(a) plainly manifests Congress's continuing plenary authority

over the District's locally-derived revenues.  *See also id.* § 816(c) (any contingent

appropriation pursuant to § 816 is "provided under the authority and conditions as

provided under this Act," and not any other enactment, including the BAA).

Equally importantly, however, this provision effectively affords to Congress a

period of time ending September 30, 2014, to appropriate the District's locally-

derived revenues for FY 2015 pursuant to Congress's normal processes.  During

that period of time, Congress is entitled to legislate in any manner it sees fit

regarding the District's locally-derived revenues.  (Section 816(a), of course, by

appropriating contingently as it does, protects the District from injury if Congress

fails to act during that period of time.)

25

The BAA is inconsistent with § 816(a) because the BAA purports to accelerate the date by which Congress must legislate regarding the District's locally-derived revenue from September 30 to the date 30 days after the District forwards its budget to Congress, *see* BAA § 2(e) (SA 79-80). As a result, the BAA runs afoul of the Supremacy Clause, at the very least through the end of this fiscal year and possibly through the end of FY 2016 (Sept. 30, 2016), assuming that the FY 2015 Financial Services and General Government Appropriations Act is adopted into law with similar language.

The principle that federal statutes preempt inconsistent local laws applies to "District of Columbia legislation no less than [to] state enactments." *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534 n.65 (D.C. Cir. 1980); *accord Biotech. Indus. Org. v. Dist. of Columbia*, 496 F.3d 1362, 1371 (Fed. Cir. 2007) ("[A]s between District statutes and superior enactments by Congress, the general principles of preemption from Supremacy Clause law apply."). Accordingly, District laws, like the BAA, that conflict with federal laws cannot stand. *See, e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 443-45 (D.D.C. 2012); *Levi v. Brown & Williamson Tobacco Corp.*, 851 F. Supp. 2d 8, 11 n.3 (D.D.C. 2012); *Savage v. Scales*, 310 F. Supp. 2d 122, 133-34 (D.D.C. 2004); *United States v. Dist. of Columbia*, 44 F. Supp. 2d 53, 59-60 (D.D.C. 1999).

### III.    The Budget Autonomy Act Violates the Federal Antideficiency Act.

In the District Court, the Council claimed that the Antideficiency Act, 31 U.S.C. § 1341(a)(1) (SA 5), was satisfied because § 450 of the Home Rule Act constituted a continuing or permanent appropriation, which provides the necessary legal authority for District employees to obligate and expend funds. *See, e.g.*, Mem. of P. & A. in Supp. of Mot. for Summ. J. or Remand at 21-22 (Apr. 25, 2014) (ECF No. 11-2); *see also* Tr. of May 14, 2014 Mot. Hr'g at 26 (JA 245) (Statement of Karen L. Dunn, counsel for Appellant) ("So the reason it's important that the money was taken out of the treasury and given to the District by § 450 of the Home Rule Act is because that constitutes the appropriation or fund.").

That position has been resoundingly rejected by every entity that has considered it. *See, e.g.*, House Comm. on Appropriations, Financial Services and General Government Appropriations Bill, 2014, H. Rep. No. 113-172, at 39 (2013) (describing BAA as "an expression of the opinion of the residents, only, and without any authority to change or alter the existing relationship between Federal appropriations and the District"); GAO, B-324987, District of Columbia – Local Budget Autonomy Act of 2012, at 10 (Jan. 30, 2014) (JA 127) ("Congress could not have intended to provide a permanent appropriation to the District in the Home Rule Act where, in the very same act, it provided that funds would be available only with the approval of an Act of Congress."); *Council of D.C. v. Gray*, --- F.

Supp. 2d ---, No. 14-cv-655, 2014 WL 2025078, *13 (D.D.C. May 19, 2014) (JA

449) ("[N]othing in [§ 450 of the Home Rule Act] (or elsewhere in the Home Rule

Act) is a clear expression by Congress that the D.C. General Fund was not subject

to appropriations.").  Furthermore, the plain text of § 450 of the Home Rule Act

clearly does not provide for the obligation or expenditure of the District's locally-

derived revenues for any specified purpose.  *See* 1 GAO, Principles of Federal

Appropriations Law 2-17 (3d ed. 2004) (to be considered a continuing or

permanent appropriation a statutory provision must provide all of the following:

(i) the authority to collect revenues; (ii) the authority to deposit those revenues into

a particular fund; and (iii) the authority to make those funds available for

obligation or expenditure for a specified purpose).[7]

      The Council appears to have abandoned this argument on appeal; indeed it

now recognizes that Congress "did not give the District the authority to obligate or

expend [its locally-derived] funds."  Appellant's Br. at 56 n.49.  The Council's

new, and novel argument is that compliance with the procedures established by the

BAA provides the necessary legal authority for District employees to obligate and

---

[7]  This Circuit "regard[s] the assessment of the GAO as an expert opinion, which
[the courts] should prudently consider . . . ."  *Delta Data Sys. Corp. v. Webster*,
744 F.2d 197, 201 (D.C. Cir. 1984); *see also M. Steinthal & Co. v. Seamans*, 455
F.2d 1289, 1305 (D.C. Cir. 1971) (acknowledging GAO's "accumulated
experience and expertise").

expend funds consistent with the Antideficiency Act. *See* Appellant's Br. at 52 ("Thus, when the District's budget is approved by the Council and survives Congressional review, an amount in an appropriation or fund has been made available for expenditure or obligation, as required by the Anti-Deficiency Act.").

This unpreserved argument makes no sense because, for the Council to be correct, the Court would have to conclude that Congress delegated to the Council, through the Home Rule Act, the authority to make appropriations, something that the Home Rule Act expressly declined to do. *See supra*; HRA § 446 (SA 33) (prohibiting obligation and expenditure of funds unless "approved by an Act of Congress"). Put another way, for the Council to prevail in its argument, this Court must find that the Council properly has arrogated to itself, via the BAA, the constitutional function of appropriating District funds. Such a conclusion is impossible given the specific allocation of that power to Congress, *see* U.S. Const. art. I, § 9, cl. 7, as well as the plain text and legislative history of the Home Rule Act.

## CONCLUSION

The Court should affirm the decision of the District Court and declare the BAA invalid for the reasons given above and in the Mayor's Brief.

Respectfully submitted,

KERRY W. KIRCHER, D.C. Bar # 386816
General Counsel
WILLIAM PITTARD, D.C. Bar # 482949
Deputy General Counsel
*/s/ Todd B. Tatelman*
TODD B. TATELMAN, VA Bar # 66008
Assistant Counsel
MARY BETH WALKER, D.C. Bar # 501033
Assistant Counsel
ELENI M. ROUMEL, SC Bar # 75763
Assistant Counsel
ISAAC B. ROSENBERG, D.C. Bar # 998900
Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
Todd.Tatelman@mail.house.gov

*Counsel for Amicus Curiae*

August 7, 2014

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P.

    29(d) because it contains 6,755 words, excluding parts of the brief exempted

    by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

    it has been prepared in a proportionally spaced typeface using Microsoft

    Office Word 2010 in 14-point Times New Roman font.


*/s/ Todd B. Tatelman*
Todd B. Tatelman

## CERTIFICATE OF SERVICE

I certify that on August 7, 2014, I filed via the Court's CM/ECF system the foregoing Brief of the Bipartisan Legal Advisory Group of the U.S. House of Representatives as Amicus Curiae Supporting Affirmance and served via the CM/ECF system all parties for whom counsel has entered an appearance by operation of the Court's CM/ECF system.

*/s/ Todd B. Tatelman*
Todd B. Tatelman