ORAL ARGUMENT SCHEDULED FOR OCTOBER 17, 2014

_____

**No. 14-7067**

_____

**In the**
**United States Court of Appeals**
**for the District of Columbia Circuit**

_____

COUNCIL OF THE DISTRICT OF COLUMBIA,

*Plaintiff-Appellant,*

v.

VINCENT C. GRAY, MAYOR OF THE DISTRICT OF COLUMBIA;
JEFFREY S. DEWITT, CHIEF FINANCIAL OFFICER
OF THE DISTRICT OF COLUMBIA,

*Defendants-Appellees.*

_____

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____

**BRIEF FOR CLAUDE E. BAILEY, FORMER LEGAL COUNSEL TO THE
MAYOR AND PRINCIPAL DEPUTY CORPORATION COUNSEL OF THE
DISTRICT OF COLUMBIA; LEONARD H. BECKER, FORMER
GENERAL COUNSEL TO THE MAYOR OF THE DISTRICT OF
COLUMBIA; FREDERICK D. COOKE, JR., FORMER CORPORATION
COUNSEL OF THE DISTRICT OF COLUMBIA; AND WAYNE C.
WITKOWSKI, FORMER DISTRICT OF COLUMBIA DEPUTY
ATTORNEY GENERAL, AS *AMICI CURIAE* IN SUPPORT OF
APPELLEES AND AFFIRMANCE**

_____

Mark L. Perlis
Charles M. English
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC  20006-3401
(202) 973-4200

*Counsel for Amici Curiae*

August 7, 2014

## CERTIFICATE OF PARTIES, RULINGS, AND
## RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1)

A.     <u>Parties and Amici</u>.  Except for the participants in this brief, all parties,

intervenors, and *amici* appearing before the district court and in this Court are

listed in the Brief for Defendants-Appellees.

B.     <u>Rulings Under Review</u>.  References to the rulings under review

appear in the Brief for Defendants-Appellees.

C.     <u>Related Cases</u>.  Counsel is unaware of any related cases currently

pending in this Court or in any other court.

i

## TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1) ............................................. i

STATEMENT OF *AMICI* INTEREST, CIRCUIT RULE 29(d) CERTIFICATION, AND INTRODUCTION ........................................... 1

SUMMARY OF ARGUMENT ...................................................... 3

ARGUMENT ............................................................................. 8

I.     CONGRESS'S PLENARY POWER TO APPROPRIATE FUNDS FOR THE DISTRICT MAY BE DISPLACED ONLY WITH A CLEAR STATEMENT IN AN ENACTMENT OF CONGRESS TO RELINQUISH APPROPRIATIONS AUTHORITY AND TO DELEGATE SUCH AUTHORITY TO THE DISTRICT ............................. 8

II.    THE STRUCTURE OF THE HOME RULE ACT MAKES CLEAR THAT CONGRESS DID NOT DELEGATE APPROPRIATIONS AUTHORITY TO THE DISTRICT AND THAT THE CHARTER COULD NOT BE AMENDED TO EFFECTUATE SUCH A DELEGATION ......................................................... 12

III.   THE CANONS OF CONSTRUCTION URGED BY THE COUNCIL AND *AMICUS* NICKLES SHOULD NOT BE APPLIED TO SAVE THE BUDGET AUTONOMY ACT ........................................... 13

IV.    THE ANTI-DEFICIENCY ACT IS NOT SATISFIED BY THE BUDGET AUTONOMY ACT ............................................... 23

V.     THE BUDGET AUTONOMY ACT IS PROHIBITED FROM ALTERING THE "FUNCTIONS OF THE UNITED STATES" THAT ARE NOT RESTRICTED IN THEIR APPLICATION EXCLUSIVELY IN OR TO THE DISTRICT ............................... 25

CONCLUSION ....................................................................... 28

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(5)-(7) ...................................... 29

CERTIFICATE OF SERVICE ................................................... 30

DWT 24573466v5 0085000-002462

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*American Fed'n of Gov't Employees v. Federal Labor Relations
   Auth.*,
   388 F.3d 405 (3d Cir. 2004) .............................................................9, 10, 11, 24

*Lamex Foods, Inc., v. Audeliz Lebron Corp.*,
   646 F.3d 100 (1st Cir. 2011).............................................................................28

*McCulloch v. Maryland*,
   17 U.S. (4 Wheat.) 316 (1819) ........................................................................19

*Nevada v. Department of Energy*,
   400 F.3d 9 (D.C. Cir. 2005).......................................................................10, 24

*Nield v. District of Columbia*,
   110 F.2d 246 (D.C. Cir. 1940)...........................................................................8

*Office of Personnel Mgmt. v. Richmond*,
   496 U.S. 414 (1990)............................................................................................9

*Palmore v. United States*,
   411 U.S. 389 (1973)............................................................................................8

*U.S. Dep't of Navy v. Federal Labor Relations Auth.*,
   665 F.3d 1339 (D.C. Cir. 2012)........................................................9, 10, 11, 24

**State Cases**

*Bergman v. District of Columbia*,
   986 A.2d 1208 (D.C. 2010) ..............................................................................20

*Bishop v. District of Columbia*,
   411 A.2d 997 (D.C. 1980) (*en banc*).................................................................21

*Brizill v. District of Columbia Bd. of Elections & Ethics*,
   911 A.2d 1212 (D.C. 2006) ....................................................................8, 27, 28

iii

*McConnell v. United States*,
    537 A.2d 211 (D.C. 1988) ....................................................................26, 27, 28

*Washington, D.C. Ass'n of Realtors, Inc. v. District of Columbia*,
    44 A.3d 299 (D.C. 2012) ...........................................................................20, 21

**Constitutional Provisions**

*U.S. Const. art. I, § 8, cl. 17.......................................................................8

*U.S. Const. art. I, § 9, cl. 7.........................................................................9

**Federal Statutes**

15 U.S.C. § 1175...........................................................................................27

31 U.S.C. § 1301(d) ................................................................................10, 11

*31 U.S.C. § 1341 ....................................... 1, 2, 6, 9, 16, 17, 23-25, 27

District of Columbia Home Rule Act,
    Pub. L. No. 93-198, 87 Stat. 774 ...............................................1-8, 11-25
 * § 302.................................................................................... 7, 12, 14-16
 * § 303(d)..........................................................7, 8, 12, 14, 15, 18
 * § 446................................................................... 15-18, 23, 26
   § 450.................................................................................................21
   § 601.................................................................................................7
   § 602.................................................................................................7
 * § 602(a)(3) ...................................................................6, 12, 25
   § 603............................................................................................7, 16
 * § 603(a) ..................................................... 5, 6, 12-16, 18, 23
 * § 603(e)...........................................................6, 12, 16, 17, 23
   Title III............................................................................................7
   Title IV............................................................................................7
   Title VI....................................................................7, 12, 13, 16

**Rules**

D.C. Cir. R. 29(d).........................................................................................1

DWT 24573466v5 0085000-002462

**Other Authorities**

*An Unlawful Proposal for D.C. Budget Autonomy*, Washington Post,
October 28, 2012, *available at*
http://www.washingtonpost.com/opinions/an-unlawful-proposal-
for-dc-budget-autonomy/2012/10/26/18e5adc2-1e26-11e2-ba31-
3083ca97c314_story.html...................................................................................1

District of Columbia Office of the Attorney General, Opinion of the
Attorney General, "Whether the Local Budget Autonomy Act of
2012 is Legally Valid" (Apr. 8, 2014), JA62-66...............................................19

Memorandum from Councilmember Phil Mendelson, Chairman,
Committee on Public Safety and the Judiciary, to All
Councilmembers, "Report on Bill 18-65, 'Attorney General for the
District of Columbia Clarification and Elected Term Amendment
Act of 2009'" (Dec. 16, 2009),
http://dcclims1.dccouncil.us/images/00001/20100409125838.pdf...................20

Opinion of the Corporation Counsel, "Authority of the Council of the
District of Columbia to limit the number of terms an individual can
serve in the Office of Mayor" (Feb. 8, 1989),
http://oag.dc.gov/sites/default/files/dc/sites/oag/publication/attach
ments/D.C.%20Council%2C%20mayoral%20term%20limits.pdf...................22

* Authorities upon which we chiefly rely are marked with an
asterisk.

DWT 24573466v5 0085000-002462

## STATEMENT OF *AMICI* INTEREST,[1]
## CIRCUIT RULE 29(d) CERTIFICATION, AND INTRODUCTION

The participating *amici,* cumulatively, have had decades of service as senior legal officials for the District of Columbia (the "District").[2]  In their former official capacities, *amici* were extensively involved with the District's budget and appropriations process and with application and interpretation of the Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774, and the federal Anti-Deficiency Act, 31 U.S.C. § 1341, which is applicable to the District.  *Amici* were responsible for giving legal advice to District officials in specific instances on the scope and proper interpretation of the District's home rule powers.  Two *amici* authored an op-ed article published in the October 28, 2012 edition of the *Washington Post* entitled, "An Unlawful Proposal for D.C. Budget Autonomy," *available at* http://www.washingtonpost.com/opinions/an-unlawful-proposal-for-dc-budget-autonomy/2012/10/26/18e5adc2-1e26-11e2-ba31-3083ca97c314_story.html.

---

[1]      This brief was not authored in whole or part by counsel for a party.  No person or entity other than *amici* or their counsel made a monetary contribution to preparation or submission of this brief.  All parties consented to filing of this brief.

[2]      The participating *amici* held the following senior legal positions in the District: Claude E. Bailey, former legal counsel to Mayor Sharon Pratt Kelly and Principal Deputy Corporation Counsel; Leonard H. Becker, former general counsel to Mayor Anthony A. Williams; Frederick D. Cooke, Jr., former Corporation Counsel; and Wayne C. Witkowski, former Deputy Attorney General for the Legal Counsel Division, D.C. Attorney General's Office.

*Amici* submit this brief in support of the Mayor and Chief Financial Officer of the District (for convenience, the "Mayor") to underscore the settled understanding that the Home Rule Act unambiguously withheld from the District the legislative power of appropriations of its own local funds, and, concomitantly, unambiguously denied District voters the authority to assume the "power of the purse" through an amendment of the District's Charter. So far as *amici* are aware, in the 40 or so years of exercising home rule, no legal official of the District of Columbia had ever suggested that the District, through a Charter amendment, could shirk off unilaterally Congress's control of the District's budget. As much as *amici* believe that the District government and its voters deserve full budgetary control over the District's local funds, *amici* also believe that this laudatory end cannot be achieved through the unlawful means of the Budget Autonomy Act.

The District Court correctly held the Budget Autonomy Act invalid, as being "contrary to the plain language of the Home Rule Act … [and a] separate federal statute, the Anti-Deficiency Act." JA411. The Council and *amicus* Peter Nickles, former D.C. Attorney General, seek reversal on the grounds that the statutory limitations on the Charter amendment process and in the Anti-Deficiency Act are ambiguous and should be construed narrowly, consistent with canons of construction of their own invention. The Mayor's brief demonstrates that the Home Rule Act's provisions and the Anti-Deficiency Act unambiguously prohibit

2

the District and the Council from exercising appropriations authority over even local funds and prohibit the use of the Charter amendment process to vest the very appropriations authority in the Council that Congress expressly withheld from the District.   The undersigned *amici* explain herein, that, even if there were any ambiguity in the pertinent Home Rule Act provisions – which there is not – the Council and Nickles misapprehend the lawful scope of Charter amendments and rely on misplaced canons of construction that would undo the fundamental structure of the District government created when Congress delegated limited home rule.

Counsel certifies that it would have been impracticable for participating *amici*, whose experience, perspective and legal arguments differ from others writing in support of the Mayor and affirmance, to have joined in a single *amicus curiae* brief.

## SUMMARY OF ARGUMENT

The Home Rule Act delegates to the District limited legislative powers, including limited power over its budget.   Congress expressly preserved its appropriations power over the District's total budget and withheld from the District the power to expend locally raised funds, without an appropriations enactment of Congress.   The Home Rule Act also continued the applicability to the District of the federal Anti-Deficiency Act, which prohibits District employees or officers

3

from expending or obligating funds without an appropriations enactment of Congress.

A foundational tenet of the Home Rule Act is that the limited legislative powers of the District are delegated outside the Charter and are non-amendable through the Charter amendment process. The Council, which is established under the Charter, is vested with exercising the limited legislative powers delegated to the District, but no more than that. The Charter is not the enabling source of the District's or the Council's legislative powers, nor is the Charter the source of limitations on those powers – the non-Charter provisions of the Home Rule Act are. In this fundamental sense, contrary to the suggestion of *amicus* Nickles, the Charter, being subordinate to the Home Rule Act's limited delegation of legislative power to the District, is not analogous to the federal or a state Constitution. The power to amend the Charter that Congress granted in the Home Rule Act cannot be the basis for unshackling Congress's supervening limitations of the District's legislative powers. More specifically, Charter amendments cannot effectuate a delegation to the Council of the all-important appropriations power, which Congress withheld from the District and the Council under the Home Rule Act.

The Council and *amicus* Nickles imagine ambiguities where the Home Rule Act's text, purpose and legislative history are precise and clear. Even assuming *arguendo* that there may be ambiguities in some aspects of the Home Rule Act,

4

those ambiguities would not support application of the canons of construction relied upon by the Council and Nickles.  They posit that the only question in this case is whether the Home Rule Act contains an express limitation on the Charter amendment authority that precludes the Budget Autonomy Act.  Council Br. at 1. To them, the operative canon of construction is that limitations on amendments of the constitution-like Charter, as with the District's powers generally, should be construed narrowly.

The Council and Nickles pose the wrong question and invoke the wrong canons of construction.  The Budget Autonomy Act, adopted through a Charter amendment, purports to displace Congress's plenary appropriations power over the District and substitute the Council's authority to appropriate local funds without an enactment by Congress.  The governing canon of construction in this case, which is dispositive as to the legality of the Budget Autonomy Act, is that Congress had to *clearly state* in the Home Rule Act that it was relinquishing its appropriations power and allowing such power to be assumed by the Council through the Charter amendment process.

Far from relinquishment, the Home Rule Act expressly retained Congress's nearly century-old control over the "appropriation of the total budget of the District of Columbia."  Home Rule Act § 603(a).  Such retention of control necessarily withheld from the District legislative authority to expend locally raised funds

5

without a congressional appropriation. In enforcement of Congress's appropriations power over the District's budget, Congress also explicitly confirmed "the applicability to the District government of the … Anti-Deficiency Act," which prohibits any District officer or employee from spending or obligating public monies without congressional appropriation. *Id.* § 603(e). Additionally, the Home Rule Act expressly denied the District any legislative authority to amend laws concerning the "functions … of the United States" that are not exclusive to the District. *Id.* § 602(a)(3). Those functions, which the Council is prohibited from amending, include the President's and the federal executive branch's functions in "the preparation, review, submission, examination, authorization and appropriation" of the District's total budget, the Congress's power of appropriation of such budget, and District employees' expenditure or obligation of District funds. *Id.* § 603(a).

The Council and Nickles point to no provision in the Home Rule Act or, more specifically, in the Charter – there being none – that clearly and unambiguously delegates or makes delegable to the District the legislative authority of appropriation of local funds, the authority to override the Anti-Deficiency Act, or the authority to alter the President's and the federal executive branch's historic functions of oversight and control of the District's budget. Never mind the absence of express Home Rule Act delegation, say the Council and Nickles, even though the U.S. Constitution gives Congress plenary legislative

6

power over the District, which is retained in the absence of congressional delegation of legislative authority to the District. They argue that each of these legislative powers has lain dormant for approximately 40 years after enactment of the Home Rule Act, until each somehow has sprung forth through the Charter amendment process. Effectively, the Council and Nickles contend that, even though the Home Rule Act did not authorize and, in fact, prohibited the Council from enacting the Budget Autonomy Act on its own, without a Charter amendment, the Charter amendment process allows the Council to assume legislative control over its budget, even absent a clear delegation of such authority by Congress.

Appellant and Nickles invoke misplaced canons of construction to upend the structure of government prescribed in the Home Rule Act. That structure delegates the limited legislative power and the power to amend the Charter in non-amendable, non-Charter provisions of the Home Rule Act (including Title III and Title VI). The Charter (Title IV), which is amendable, is not the source of the Council's limited legislative power, which is derivative of Congress's express delegation, in non-Charter provisions. And, importantly, the Charter amendment process is expressly prohibited, in a non-Charter provision (Section 303(d)), from being used to enact any laws that are beyond the limited, delegated legislative power of the District (under Section 302, as limited by Sections 601, 602 and 603).

7

There is no provision in the Home Rule Act that can be construed to authorize the Charter to be amended to effectuate an expansion of the Act's limited delegation to the District of legislative authority, let alone to usurp a legislative power "jealously guarded," by Congress, such as its appropriations power over the total District budget. To the contrary, the Home Rule Act expressly imposes, in Section 303(d), the same limitations on the scope of Charter amendments relating to the District's budget as it imposes on the core delegation of legislative authority to the District.

## ARGUMENT

**I.      CONGRESS'S PLENARY POWER TO APPROPRIATE FUNDS FOR THE DISTRICT MAY BE DISPLACED ONLY WITH A CLEAR STATEMENT IN AN ENACTMENT OF CONGRESS TO RELINQUISH APPROPRIATIONS AUTHORITY AND TO DELEGATE SUCH AUTHORITY TO THE DISTRICT**

The U.S. Constitution vests in Congress exclusive and "plenary" legislative authority over the District. Art. I, § 8, cl. 17; *Palmore v. United States*, 411 U.S. 389, 397 (1973). Congress exercises "complete legislative control" of the District. *Nield v. District of Columbia*, 110 F.2d 246, 250 (D.C. Cir. 1940). Thus, the District may exercise only legislative authority that has been delegated to it by Congress. *See Brizill v. District of Columbia Bd. of Elections & Ethics*, 911 A.2d 1212, 1213 (D.C. 2006).

The U.S. Constitution also vests in Congress exclusive and plenary control over the expenditure of public money.  Art. I, § 9, cl. 7 ("Appropriations Clause").  This "straightforward and explicit command of the Appropriations Clause … means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress."  *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (internal quotation marks and citation omitted).  The appropriations authority is "one of the fundamental powers lodged by the Constitution in the Congress."  *American Fed'n of Gov't Employees v. Federal Labor Relations Auth.*, 388 F.3d 405, 408 (3d Cir. 2004).  Accordingly, this Court recognizes Congress's appropriations power as "absolute," "a bulwark of the Constitution's separation of powers," and as a "restraint" on the Executive Branch, by "prevent[ing] Executive Branch officers from even inadvertently obligating the Government to pay money without statutory authority."  *U.S. Dep't of Navy v. Federal Labor Relations Auth.*, 665 F.3d 1339, 1347, 1348 (D.C. Cir. 2012).

Since 1912, Congress has enforced its appropriations power through the Anti-Deficiency Act, which prohibits an officer or employee of the U.S. Government or of the District of Columbia from making or authorizing expenditures or obligations exceeding an amount appropriated by Congress.  31 U.S.C. § 1341.

DWT 24573466v5 0085000-002462

Underscoring the specificity with which Congress exercises its appropriations power, 31 U.S.C. § 1301(d) provides a rule of strict construction: "A law may be construed to make an appropriation only if the law *specifically states that an appropriation is made*." (Emphasis added.) This Court has applied this statutory rule of construction to mean that "all uses of appropriated funds must be affirmatively approved by Congress; the mere absence of a prohibition is not sufficient." *Dep't of Navy*, 665 F.3d at 1348. This canon of construction arises from a case where the issue was whether a particular statute *made* an appropriation (this Court held that federal bargaining laws were circumscribed by federal appropriations laws and that no appropriations act authorized the Navy to assume collective bargaining obligations to pay for its employees' personal expenses). *Id*. A similar strict construction of Congress's reservation of its appropriations power has been applied to find that an agency funded entirely by outside revenues remains subject to congressional appropriations, "so long as Congress has not *clearly stated* that it wishes to relinquish the control normally afforded through the appropriations process." *American Fed'n of Gov't Employees*, 388 F.3d at 410 (emphasis added). This Court reached a similar result in *Nevada v. Department of Energy*, 400 F.3d 9 (D.C. Cir. 2005), holding that the State of Nevada was not entitled to an unspecified, continuing appropriation from an external fund when it received a specific appropriation in a different statute.

The rationale underlying these precedents and 31 U.S.C. § 1301(d) is that Congress "jealously [] guards the appropriations prerogative," and "the broader principle that one should not lightly presume that Congress meant to surrender its control over public expenditures by authorizing an entity to be … outside the appropriations process." *American Fed'n of Gov't Employees*, 388 F.3d at 410. It is logical and consistent to apply the same strict construction to determine whether a particular statute *delegates* appropriations authority from Congress to another entity, such as the District. The mere absence of a prohibition on the exercise of appropriations authority should "not [be] sufficient," *Dep't of Navy*, 665 F.3d at 1348, to conclude that Congress had delegated appropriations authority to another entity. An opposite canon of construction should apply: Has Congress clearly stated in an enactment that it is relinquishing its appropriations authority and delegating it to another entity, such as the District, whether directly or contingent upon a vote by District residents to amend the Charter? When this canon of construction is applied to the Home Rule Act, it is plain that neither the Act's delegation of legislative authority to the District, its establishment of the District's Charter, nor its authorization of Charter amendments constitutes a clear statement of Congress's relinquishment and delegation to the Council (contingent on a Charter amendment) of Congress's appropriations authority over the total District budget.

DWT 24573466v5 0085000-002462

## II.   THE STRUCTURE OF THE HOME RULE ACT MAKES CLEAR THAT CONGRESS DID NOT DELEGATE APPROPRIATIONS AUTHORITY TO THE DISTRICT AND THAT THE CHARTER COULD NOT BE AMENDED TO EFFECTUATE SUCH A DELEGATION

Sections 603(a), 603(e), and 602(a)(3), being part of Title VI of the Home Rule Act, unmistakably apply as "limitations" on the delegated legislative powers of the District, *see* Home Rule Act § 302, and on the use of Charter amendments, which cannot be used to enact laws for the District that contravene its limited, delegated legislative powers, *see id.* § 303(d).  Given that the Home Rule Act places the delegated legislative powers of the District and their limitations in Title VI outside the Charter and given that those limited delegated powers cannot be expanded through a Charter amendment, it would be incongruous, to say the least, to construe the limitations in Sections 603(a), 603(e), and 602(a)(3) narrowly just because a Charter amendment was used to assert a novel and otherwise unsupported expansion of the delegated legislative power of the District.  The organic structure of the Home Rule Act necessitates that the Title VI limitations on the District's delegated legislative powers, which are non-amendable by the District, should be construed to effectuate Congress's intent.  Similarly, Congress's intent to withhold delegation of legislative appropriations authority from the District should not be subordinated to a Charter amendment.

The Mayor's Brief shows that Section 603(a) is a prospective limitation on the District's legislative power over all aspects of the District's budget, including the exercise of the appropriations power. The Mayor's Brief marshals the text and structure of the Act as a whole and its legislative history to refute the Council's contention that Section 603(a) is merely a "rule of construction" and not a limitation. Mayor Br. at 21-45. *Amici* will not here repeat the Mayor's arguments, which are sufficient to affirm the District Court and to demonstrate that the Budget Autonomy Act violates Section 603(a) of the Home Rule Act. Rather, even if we assume *arguendo* that some ambiguity remains, the canons of construction urged by Council and *amicus* Nickles to resolve this hypothetical statutory ambiguity are untenable.

## III. THE CANONS OF CONSTRUCTION URGED BY THE COUNCIL AND *AMICUS* NICKLES SHOULD NOT BE APPLIED TO SAVE THE BUDGET AUTONOMY ACT

The Council and Nickles characterize the Budget Autonomy Act as a change to the District's "budget process," that is amenable to Charter amendment. Council Br. at 20; Nickles Br. at 18. They contend that delegations of legislative authority to the District and the authority to amend the Charter should be construed broadly and restrictions construed narrowly. *Id*. Among other crimped readings of the Title VI limitations in the Home Rule Act, the Council and Nickles read Section 603(a) as a "rule of construction," that then-existing law relating to the

budget was not changed; they reject the reading of Section 603(a) as a prospective limitation on later changes to the law that might be effectuated through Charter amendment. Council Br. at 19-20; Nickles Br. at 12. We stress that the Mayor refutes this reading of Section 603(a) and establishes that Congress's clear intent in Section 603(a) was to deny the District, and, therefore, the Council, both appropriations authority over its total budget, including its local funds, and the use of the Charter amendment process to override this express Congressional limitation on the legislative powers delegated to the District. We demonstrate here that, even if, assuming *arguendo*, Section 603(a) were only a rule of construction as to the authority of the District in 1973, it is fundamentally a rule of construction on the limitation of the District's delegated legislative authority over appropriations under Section 302, and the co-extensive limitation under Section 303(d) on the use of a Charter amendment, which cannot authorize the Council to enact laws that are beyond the District's delegated legislative authority under Section 302.

The Council and Nickles do not dispute that, in 1973, after nearly 100 years of unbroken law and practice, Congress required that all District expenditures and obligations be approved in an appropriations enactment. As a corollary, Congress withheld in 1973 the District's legislative authority over its own appropriations. This is the "then-existing law" that Council concedes was unchanged by the Home Rule Act. Council Br. at 27; Nickles Br. at 18.

The Council and Nickles draw a misleading distinction between a "rule of construction" upon enactment and a prospective "limitation."  This distinction breaks down given the Home Rule Act's structure, under which Section 302, a non-amendable, non-Charter provision, withheld delegation of legislative power over appropriations from the District.  This means that, absent a Charter amendment, the Council could not have adopted the Budget Autonomy Act under the District's delegated legislative authority in 1973 or in future years, *by virtue of Sections 302 and 603(a)*, which are non-amendable.  As to the Council's original delegated legislative authority (which did not include appropriations authority given the continuation of "then-existing law"), Section 603(a) certainly had prospective effect.

The Council and Nickles argue that, under their "rule of construction" theory, the Charter can be amended to grant the Council appropriations authority that Congress originally withheld under non-amendable Section 302.  Section 446 is the only Charter hook that the Council and Nickles rely on to invoke the purported "broadly construed" use of Charter amendments to justify the Budget Autonomy Act.  If that Section were the sole statutory basis by which the Home Rule Act prohibited the Council from exercising, in 1973, legislative control over appropriations of the District's local funds, then, perhaps, the Budget Autonomy Act might be construed as only a modification of Section 446, rather than as a

contravention of Sections 302 and 303(d). However, based on the structure of the Home Rule Act, the withholding of the District's legislative authority to appropriate its local funds derives primarily from Section 603(a)'s continuation of "then-existing law" with respect to legislative authority delegated under Section 302, and from Section 603(e), which confirms that the Anti-Deficiency Act continues to apply to the District.

Section 446 is plainly not a delegation of legislative authority, or even a limitation on legislative authority. The Council's legislative authority derives entirely from the District's legislative authority, which is delegated to the District under Section 302 of the Home Rule Act and is subject to Title VI, including, for purposes of argument here, the rule of construction that Section 603(a) continued existing law that legislative appropriations authority was not delegated to the District and, therefore, was not exercisable by the Council in 1973 and prospectively.

Section 446, like most of the Charter, allocates and defines processes and responsibilities of the three branches of government in exercising powers delegated to the District under non-Charter provisions of the Home Rule Act. Thus, the first two sentences of Section 446 instruct the Council on the timing and process for its adoption of a budget. The third sentence prescribes transmittal of the budget from the Council to the Mayor and then to the President for transmission to Congress.

The latter transmissions to the President and Congress are the historical steps required in the enactment of appropriations legislation for the District. The fourth sentence of Section 446, which is the linchpin of the theory that this case turns on the breadth of construction of the Charter amendment authority, simply continues the already existing and unchanged federal Anti-Deficiency Act prohibition on executive branch employees of the District. The Anti-Deficiency Act applies to the District's officers and employees not by virtue of this sentence, but by virtue of its having remained in effect under the Home Rule Act and by virtue of Section 603(e), which confirmed that nothing in the Home Rule Act changed the applicability of the Anti-Deficiency Act to the District. Indeed, if Section 446 had omitted this sentence, the Anti-Deficiency Act would nonetheless remain applicable to the District, and there would be no hook in the Charter to alter the applicability of the Anti-Deficiency Act. The final sentence of Section 446 underscores the procedural nature of the provision, instructing the Mayor to ascertain that the prescribed budget procedures have been properly completed.

Under the structure of the Home Rule Act, the Charter is not the source of delegated legislative powers and Section 446 is not the source of the withholding from the District of delegated power over appropriations. Consequently, a Charter amendment of Section 446 cannot effectuate a modification or expansion of the Council's legislative powers with respect to appropriations. This is so for two

17

independent reasons. *First*, the Mayor's brief demonstrates that the legislative history, purpose and text of the Home Rule Act makes Sections 303(d) and 603(a) prospective limitations on the Charter amendment process. *Second*, even if there were ambiguity about these express limitations of the Charter amendment process, the Budget Autonomy Act must fail because the Charter provisions it amends in Section 446 are not themselves the source of the limitations on the legislative appropriations power of the District and, derivatively, of the Council. The proper canon of construction of limitations on Congress's delegation of its appropriations power, as explained above, is that Congress should be determined to have relinquished its appropriations power only if clearly stated in an Act of Congress, and if such Act also clearly delegates that power to the District and, contingently, to its voters exercising the Charter amendment process.

*Amicus* Nickles cloaks his invocation of a broad construction of Charter amendment authority and a narrow construction of limitations on such authority in constitutional garb. Nickles Br. at 3, 6-7, 20-23. But, he readily recognizes that "the District is not a state, and its Charter is not a true constitution – Congress retains plenary authority." *Id*. at 22. That being so, Congress's reservation of its plenary legislative authority under the actual Constitution deserves greater deference and broader construction than does the supposed grant of authority to the voters of the District to approve Charter amendments that derogate legislative

powers that Congress "jealously guards."  Indeed, it is particularly odd that Nickles cites the landmark *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), which is among the earliest Supreme Court cases construing the Constitution to vest in Congress broad legislative powers with which states in the exercise of their taxing powers may not interfere.

Nickles also misleadingly argues that the Budget Autonomy Act is filling "gaps" in the structure of the District's government, that it is "liquidating and settling" aspects of the District's governance through practice, and that it is somehow adapting and updating the Charter so that it might "endure" as the U.S. Constitution is meant to endure.  Nickles Br. at 20-22.  Congress has controlled the appropriations of the District for more than 140 years, and reiterated that control when it modernized the District government in the Home Rule Act.  The Charter that was adopted in the Home Rule Act can certainly adapt over time and, hopefully, will endure until Congress gives the District the full benefit of statehood.  However, there is no constitutional basis to read into the Charter amendment process Congress's relinquishment of its appropriations power over the District and Congress's delegation of such power to the Council, if authorized by a locally-adopted Charter amendment.  The Charter and the Home Rule Act of which it is a part should be construed as a statute, which is how the decisions and opinions of the District's Attorney General's Office have consistently treated them.

19

*See, e.g.*, District of Columbia Office of the Attorney General, Opinion of the Attorney General, "Whether the Local Budget Autonomy Act of 2012 is Legally Valid," at 2-6 (Apr. 8, 2014), JA62-66; and Memorandum from Councilmember Phil Mendelson, Chairman, Committee on Public Safety and the Judiciary, to All Councilmembers, "Report on Bill 18-65, 'Attorney General for the District of Columbia Clarification and Elected Term Amendment Act of 2009'" (Dec. 16, 2009) at 11-12 (noting that Peter Nickles, then interim Attorney General for the District of Columbia had testified at a Council committee hearing that the Council lacked the legal authority to adopt a bill that would vest removal authority over the Attorney General in the Council, violating the District's Charter), http://dcclims1.dccouncil.us/images/00001/20100409125838.pdf.

The Council and Nickles cite the same cases for the purported principle that "restrictions on the District government's authority to legislate under the Home Rule Act 'must be narrowly construed.'" Council Br. at 34-35; Nickles Br. at 18 (citing *Bergman v. District of Columbia*, 986 A.2d 1208, 1226, 1230 n.24 (D.C. 2010); *Washington, D.C. Ass'n of Realtors, Inc. v. District of Columbia*, 44 A.3d 299, 303 (D.C. 2012)). These cases are inapposite. *Bergman* held that the D.C. Court of Appeals' inherent authority to regulate the practice of law in the District was not exclusive and that the Council was not prohibited from exercising its police power to address matters within its legislative powers. Thus, that case

20

concerned the Charter's separation of powers between the legislative and judicial branches, and did not involve any ambiguity in the delegation of legislative power from Congress. *Washington, D.C. Ass'n of Realtors* held that the Council had legislative authority under the Charter to determine how to distinguish and balance different funds in connection with the General Fund of the District established under Section 450 of the Charter. While the D.C. Court of Appeals may have invoked the canon that it would construe limitations on the Council's legislative authority narrowly, it did so with respect to a Charter provision that allows the Council to reallocate by legislation the balances in special funds over which it has undisputed authority. *Washington, D.C. Ass'n of Realtors* has no precedential value as to the appropriate canon of construction to be used in considering whether non-Charter provisions of the Home Rule Act withhold legislative authority over appropriations from the District. Similarly, *Bishop v. District of Columbia*, 411 A.2d 997 (D.C. 1980) (*en banc*), cited by the Council, Br. at 35, construed purported limitations on a delegated legislative power of the Council. The applicable canon of construction with respect to Congress's relinquishment of its appropriations power and its claimed delegation of legislative authority to the District is the "clear statement" rule.

The suggestion by Nickles that a canon that narrowly construes limitations on the Charter's delegated legislative authority is a "settled practice," applicable in

all cases, Nickles Br. at 23-27, is misleading, to say the least.  In the participating *amici*'s experience, each case that raised questions regarding the scope of the Council's delegated legislative authority was addressed on its particular merits. There were noteworthy instances in which senior District legal officials, including the Attorney General or its predecessor, the Corporation Counsel, opined that the Council had exceeded its delegated legislative authority under the Charter.  *See, e.g.*, Opinion of the Corporation Counsel, "Authority of the Council of the District of Columbia to limit the number of terms an individual can serve in the Office of Mayor" (Feb. 8, 1989), (concluding that a Council bill that would establish term limits for the Mayor was unlawful, because it would violate the Council's legislative         authority         under         the         Charter), http://oag.dc.gov/sites/default/files/dc/sites/oag/publication/attachments/D.C.%20Council%2C%20mayoral%20term%20limits.pdf.

In any event, the participating *amici* are aware of no instances prior to adoption of the Budget Autonomy Act in which senior legal officials of the District of Columbia have ever opined that the Home Rule Act did not withhold the legislative appropriations power from the District or even raised the possibility that the Act could be construed to grant the District such power.  That view has been

"settled practice" for the 40 years in which the Home Rule Act has governed the Council's legislative actions and the District's budget process.[3]

## IV.    THE ANTI-DEFICIENCY ACT IS NOT SATISFIED BY THE BUDGET AUTONOMY ACT

The Council and Nickles seem to concede that the Council's exercise of appropriations powers under the Budget Autonomy Act must comport with the Anti-Deficiency Act.  That Act of Congress was surely not amended by the Charter amendment that replaced the fourth sentence in Section 446 of the Home Rule Act. Because the Anti-Deficiency Act has independent applicability to the Budget Autonomy Act, apart from Section 603(e) of the Home Rule Act, Council and Nickles resort to reliance on a construction of the Anti-Deficiency Act that is not based on the same canons of construction they advocate for applying to Sections 603(a) and 603(e).

The Mayor's brief demonstrates that the Council's statutory construction of the Anti-Deficiency Act is faulty in all respects.   An act of Council cannot substitute for an act of Congress in meeting the requirement under the Anti-

---

[3]    Nickles suggests, at page 22 and note 1 of his brief, that the specter of a congressional veto or political reprisal may explain why the District had not tried to amend the Charter's budget provisions prior to 2012.   A more logical explanation, and one that is more respectful of the conscientiousness of District officials, is that it was well settled among legal advisers and other officials that the Home Rule Act had reserved Congress's power of appropriation over the total District budget and had not delegated to the District the authority to amend the Charter to arrogate the power of appropriation.

DWT 24573466v5 0085000-002462

Deficiency Act that expenditures and obligations of the District of Columbia be subject to Congress's appropriations.  Even though the District's local revenues may not flow through the Treasury, and even though Congress can lawfully authorize a non-appropriated fund instrumentality ("NAFI") to expend its own revenues without an annual appropriation – arguments that the Council relies on – the precedent in this and other circuits requires that there be a "clear statement" that Congress is authorizing the expenditure of funds by a NAFI without an annual appropriation.  *See Dep't of Navy*, *Nevada*, and *American Fed'n of Gov't Employees*.  There has been no evident "clear statement" from Congress that the Council may approve obligations and expenditures out of local funds, as if it were a NAFI, without an appropriations act from Congress.

Nickles offers a policy argument that the Budget Autonomy Act "updates the Charter to create a new means of compliance with the Anti-Deficiency Act." He states that "[t]here is no indication … that Congress sought to freeze the District's ability to comply with the Anti-Deficiency Act in a different way, *i.e.*, by spending 'available resources' in a 'fund' filled by its own taxpayers, rather than through an appropriation."  Nickles Br. at 16.  He notes that the importance to the District of local revenues compared to annual federal appropriations has risen since enactment of the Home Rule Act.  These arguments may be sound policy, but they are inconsistent with the canons of construction that this Court and other circuit

24

courts have used to determine when NAFIs and unappropriated funds may be used

without an annual appropriation from Congress.  In all cases, there must be a clear

statement in an enactment by Congress, not merely an appeal to fiscal policy,

changed circumstances, or convenience.  The Budget Autonomy Act cannot itself

furnish that clear statement.

## V.      THE BUDGET AUTONOMY ACT IS PROHIBITED FROM ALTERING THE "FUNCTIONS OF THE UNITED STATES" THAT ARE NOT RESTRICTED IN THEIR APPLICATION EXCLUSIVELY IN OR TO THE DISTRICT

Section 602(a)(3) of the Home Rule Act expressly states that the Council has

no authority to pass or enact "any act to amend or repeal any Act of Congress,

which concerns the functions … of the United States or which is not restricted in

its application *exclusively* in or to the District."  (Emphasis added.)  The Mayor's

brief shows that budgeting and appropriations are "functions of the United States,"

within the meaning of the Home Rule Act.  Mayor Br. at 52-59.  Similarly, the

federal oversight of expenditure or obligation of funds by a District of Columbia

officer or employee is also a "function of the United States."  These functions are

not applied exclusively in or to the District.  Congress's appropriations authority

and the President and OMB's performance of their budget functions are exercised

nationally, not exclusively in or to the District.  The Anti-Deficiency Act applies

nationally to expenditures and obligations by both federal and District officers and

employees and not exclusively in or to the District.

25

The Budget Autonomy Act amends congressional acts that govern the performance of the respective "functions of the United States."  Plainly, Section 446 of the Home Rule Act is amended by the Budget Autonomy Act to replace Congress's performance of its appropriations enactment authority with performance by the Council.  Section 446, as amended, displaces the President's and the federal executive branch's performance of their administrative budget functions, by requiring that the local portion of the District budget be presented directly by the Council to the Speaker of the House of Representatives, without being first presented to the President.  Section 446 also purports to write out of the Charter the prohibition on District officers and employees expending or obligating funds without congressional appropriations.  All of these amendments in the budgeting and appropriations process represent amendments to federal functions that are not exclusive to the District, even though the amendments to Section 446 will effect only the District's budget and not other federal budgets.

This Court will not be writing on a blank slate with respect to the question of what constitutes an Act of Congress with exclusive application to the District. Two earlier initiative efforts have been found unlawful by the District of Columbia Court of Appeals because both attempted to amend congressional enactments applicable outside the District.  In *McConnell v. United States*, 537 A.2d 211 (D.C. 1988), a voter initiative would have altered the criminal mandatory sentencing

26

provisions by, *inter alia*, eliminating a sentencing alternative otherwise applicable under District law, but also applied to federal defendants in every other U.S. jurisdiction.  The Court of Appeals expressly rejected the District's argument that the reach of the sentencing alternative for offenders "convicted under District of Columbia law is limited in scope to the District."  *Id.* at 215.  Similarly, here, the Council would have this Court conclude that the budgeting and expenditure of local funds is exclusive to the District, even though the budgeting and appropriations processes and the Anti-Deficiency Act prohibitions apply nationally, just as did the sentencing alternatives that applied, before the mandatory sentencing amendment, in and outside the District.

In another rejected voter initiative, initiative supporters sought to grant limited rights to operate only within the District video lottery terminals that were otherwise barred by the Johnson Act.  15 U.S.C. § 1175.  Initiative supporters argued that the legislation would affect only (and thus exclusively) enforcement of the Johnson Act within the District of Columbia even though the Act was expressly made applicable to other possessions and territories of the United States.  Citing *McConnell*, the District of Columbia Court of Appeals concluded that the proposed voter initiative would unlawfully amend or repeal a federal law with non-exclusive application to the District.  *Brizill*, 911 A.2d at 1216.

DWT 24573466v5 0085000-002462

As in *McConnell* and *Brizill*, the Budget Autonomy Act is an unlawful attempt to amend federal laws relating to "functions of the United States" that have non-exclusive application to the District.[4]

## CONCLUSION

This Court should affirm the judgment of the District Court that the Budget Autonomy Act is unlawful.

August 7, 2014                              Respectfully Submitted,

                                           /s/ Mark L. Perlis
                                           * Mark L. Perlis
                                           Charles M. English
                                           DAVIS WRIGHT TREMAINE LLP
                                           1919 Pennsylvania Avenue, NW,
                                           Suite 800
                                           Washington, DC  20006-3401
                                           (202) 973-4200

                                           *Counsel for Amici Curiae*
                                           * Counsel of Record

---

[4]     Because important "functions of the United States" are implicated in this case, there is no merit to the suggestion, raised for the first time in the *amici* brief of D.C. Appleseed Center for Law & Justice, *et al.* in support of reversal, at 11, that this Court's abstention is appropriate. *See also Lamex Foods, Inc., v. Audeliz Lebron Corp.*, 646 F.3d 100, 112 n.15 (1st Cir. 2011) (abstention is "waivable defense," if not raised below).

28

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(5)-(7)

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(a)(1) because it contains 6,413 words, excluding exempted parts, as determined by the word-counting feature of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


*/s/ Mark L. Perlis*
Mark L. Perlis

29

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2014, I caused copies of the foregoing brief to be served by the Court's CM/ECF system, which will send a notice of the filing to all registered CM/ECF users.


*/s/ Mark L. Perlis*
Mark L. Perlis

August 7, 2014

30